No. 26-364

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

CHRISTIN KYUNGSIK CHO; RICHARD ELGAR LYON III

Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, LOS ANGELES

Respondent,

WALMART INC.,

Real Party in Interest.

_____

Petition for Writ of Mandamus from the United States District Court
for the Central District of California
Case No. 2:24-cv-08211-RGK-MAR
Hon. R. Gary Klausner, District Judge

_____

**ANSWER TO MANDAMUS PETITION**

_____

Teal Luthy Miller
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
Telephone: (206) 622-3150
Fax: (206) 757-7700
TealMiller@dwt.com

James R. Sigel
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Matthew E. Ladew
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Fl.,
Los Angeles, CA 90071-3487
Telephone: (213) 633-6800
JamesSigel@dwt.com

*Attorneys for Real Party in Interest Walmart Inc.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................... 1

II. BACKGROUND ........................................................................ 3

    A.  At least six months of litigation based on a material, false
    allegation lead to sanctions .................................................. 3

        1.  Cho files a complaint making a false allegation of
        material fact, and Lyon repeats that false allegation in an
        amended complaint. ................................................... 4

        2.  The court denies Walmart's motion to dismiss and
        certifies two classes with Golikov as their representative. ......... 6

        3.  Walmart learns that Golikov's November 14, 2021
        purchase was online and moves to compel arbitration;
        Golikov resists on the merits...................................... 7

        4.  The district court grants motion to compel arbitration. ............. 8

        5.  Walmart moves for decertification of the class in light of
        the arbitration order................................................ 9

        6.  Walmart seeks sanctions. ........................................ 10

III. ARGUMENT.......................................................................... 11

    A.  *Bauman* Factors One and Two: Cho and Lyon Fail to Show The
    Absence of Adequate Means of Relief and Prejudice Not
    Correctable on Appeal............................................... 12

    B.  *Bauman* Factor Three: Cho and Lyon Cannot Show Clear and
    Indisputable Error.................................................. 18

        1.  Cho and Lyon never timely moved to replead or to revise
        the certified class................................................. 19

        2.  The sanctions order rests on reckless maintenance after
        the contrary facts were known, not on the initial filing
        alone. .......................................................... 22

i

3. The district court correctly found causation based on the case Cho and Lyon actually pleaded and chose to defend....... 28

4. The fee amount awarded reflects a reasoned exercise of the district court's discretion.................................................... 29

C. *Bauman* Factors Four and Five: The Sanctions Present No Recurring Error and No Novel Issue Likely to Evade Review.......... 31

IV. CONCLUSION..................................................................................... 32

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995)...................................................................13

*Bauman v. U.S. Dist. Ct.,*
    557 F.2d 650 (9th Cir. 1977) ...............................................passim

*Caputo v. Tungsten Heavy Powder, Inc.,*
    96 F.4th F.4th 1111 (9th Cir. 2024)................................................23, 27

*Cheney v. U.S. Dist. Ct.,*
    542 U.S. 367 (2004)...................................................................11

*Cunningham v. Hamilton County,*
    527 U.S. 198 (1999)...................................................................12

*Demos v. U.S. Dist. Ct.,*
    925 F.2d 1160 (9th Cir. 1991) .....................................................14

*Ex parte Fahey,*
    332 U.S. 258 (1947)...................................................................11

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) .................................................19, 27

*Fox v. Vice,*
    563 U.S. 826 (2011)...................................................................29

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001) .....................................................18

*Goodyear Tire & Rubber Co. v. Haeger,*
    581 U.S. 101 (2017).............................................................28, 29, 30

*Howe v. City of Akron,*
    557 F. App'x 402 (6th Cir. 2014) .................................................16

*In re Bozic,*
    888 F.3d 1048 (9th Cir. 2018) ................................................15, 28

*In re Creech,*
    119 F.4th 1114 (9th Cir. 2024) ...............................................16, 17

iii

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010) ............................................................................11

*In re Grice*,
974 F.3d 950 (9th Cir. 2020) ...............................................................................18

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) (per curiam) ........................................................16

*In re Keegan Mgmt. Co., Sec. Litig.*,
78 F.3d 431 (9th Cir. 1996) .................................................................................22

*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023) ..............................................................................17

*In re Klamath Irrigation Dist.*,
69 F.4th 934 (9th Cir. 2023) ................................................................................18

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ..................................................................................16

*In re United States*,
884 F.3d 830 (9th Cir. 2018) ........................................................................14, 31

*In re United States*,
895 F.3d 1101 (9th Cir. 2018) .............................................................................14

*In re Van Dusen*,
654 F.3d 838 (9th Cir. 2011) ...............................................................................18

*In re Walsh*,
15 F.4th 1005 (9th Cir. 2021) ..............................................................................18

*In re Williams-Sonoma, Inc.*,
947 F.3d 535 (9th Cir. 2020) ...............................................................................16

*Lu v. United States*,
921 F.3d 850 (9th Cir. 2019) ...............................................................................30

*Rowland v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*,
142 F.4th 1169 (9th Cir. 2025) ............................................................................23

iv

*Sanford v. MemberWorks, Inc.*,
   483 F.3d 956 (9th Cir. 2007) ...................................................................13

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964).................................................................................14

*Smith v. Spizzirri*,
   601 U.S. 472 (2024).................................................................................13

*Stanley v. Woodford*,
   449 F.3d 1060 (9th Cir. 2006) .................................................................12

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) .................................................................26

*United States v. Tillman*,
   756 F.3d 1144 (9th Cir. 2014) ............................................................15, 16

*United States v. Washington*,
   969 F.2d 752 (9th Cir. 1992) ...................................................................19

**STATUTES**

9 U.S.C.
   § 3...........................................................................................................12
   §§ 16(b)(1)-(2) .......................................................................................12

18 U.S.C. § 3005........................................................................................15

28 U.S.C. § 1927 ..................................................................................passim

Cal. Civ. Code § 1783 ...............................................................................5

Cal. Civ. Proc. Code
   § 338(a) ....................................................................................................5
   §§ 1281.97–1281.98 ...............................................................................13

**RULES**

Fed. R. App. P. 10......................................................................................17

Fed. R. App. P. 10(a)(1)–(3) ......................................................................17

Fed. R. Civ. P. 7(b)(1)................................................................................22

v

Fed. R. Civ. P. 9(b) ...............................................................5, 6, 24

Fed. R. Civ. P. 11 ..........................................................................26

Fed. R. Civ. P. 11(b) .....................................................................25

Fed. R. Civ. P. 11(b)(3).................................................................26

Fed. R. Civ. P. 15 ......................................................................7, 22

Fed. R. Civ. P. 23(c)......................................................................22

Fed. R. Civ. P. 23(c)(1)(C) ...........................................................22

## I.    INTRODUCTION

The sanctions the district court imposed here were not simply about an "inaccurate allegation" or a pleading "mistake." *Contra* Petition for a Writ of Mandamus (Dkt. 1.1) ("Pet.") at 30. The district court did not sanction petitioners just because the initial complaint they filed included a false allegation of material fact. It sanctioned them because they recklessly continued to rely on that false allegation through a motion to dismiss, class certification, and discovery and then, after real party in interest Walmart Inc., eventually learned that the allegation was false, doubled down to resist arbitration instead of admitting their mistake. The district court acted well within its discretion when it concluded that petitioners, not Walmart, should bear some of Walmart's cost of defending against arguments that rested on that false allegation.

Five days before petitioner Christen Cho filed the initial complaint in this case, plaintiff Edie Golikov printed a Walmart.com receipt showing that she had purchased a bottle of avocado oil from Walmart.com, Walmart's online sales platform, on a specific date in November 2021. Petitioners' Appendix ("PA") 002. That purchase was subject to online terms of service that require dispute resolution in arbitration. But Cho filed a complaint alleging that Golikov purchased avocado oil "from a Walmart store" that same November day (*id.* at 1), a pleading that allowed them (at least initially) to avoid arbitration and proceed in federal court.

1

Cho and petitioner Richard Lyon repeated that false allegation in the First Amended Complaint they filed a few months later. And then through class certification and discovery, they continued to litigate on the premise that Golikov's avocado-oil purchase had been made in-store and thus was not subject to online terms requiring arbitration. The truth came out only when Walmart eventually obtained in discovery the online receipt that launched this case.

Cho and Lyon now say that their conduct was not sanctionable because they could have amended the complaint to allege other, in-store avocado oil purchases by Golikov. But Cho and Lyon never actually moved to amend the complaint, tendered a proposed amended complaint, or asked the district court for any similar relief.

Instead, they relied on a false allegation through the early stages of the case and then, at a critical moment, they doubled down and opposed Walmart's motion to compel arbitration on the merits. In doing so, they argued (1) that the allegation was not false because the receipt showing that Golikov made her November 2021 purchase online did not contradict the complaint's allegation that she made the purchase "from a Walmart store" and (2) that Walmart had waived its right to arbitration by being too credulous when it took that allegation at face value. Later, Cho and Lyon opposed class decertification notwithstanding their failure to amend their materially false complaint. The district court sanctioned them because they had neglected earlier opportunities to correct the false allegation and then recklessly

2

prolonged the litigation by opposing arbitration and decertification based on these arguments. That sanctions order lay well within the district court's discretion.

In launching a factbound attack on that discretionary determination, Cho and Lyon have not demonstrated the extraordinary circumstances necessary for mandamus relief. Most importantly, they cannot show the type of clear and indisputable error or clear abuse of discretion that this Court requires to grant mandamus review. But even if they could, they would still fail to meet the four other *Bauman* factors for mandamus relief. Cho and Lyon can obtain review of the sanctions award through ordinary appellate channels. They identify no prejudice beyond ordinary timing and cost concerns and the present consequences of an adverse sanctions order (concerns that apply to *any* sanctions order). And as they implicitly concede, their petition does not involve either a recurring, rules-disregarding district-court practice or a novel issue warranting supervisory intervention.

The petition for the extraordinary remedy of mandamus should be denied.

## II. BACKGROUND

### A. At least six months of litigation based on a material, false allegation lead to sanctions

Whether Golikov purchased avocado oil on Walmart.com or in a Walmart store was a material fact in this case: an online purchase was subject to arbitration and class-waiver; an in-store purchase was not. Real Party in Interest's Appendix

("RA") 078. The district court sanctioned Cho and Lyon because they persisted in litigating based on the allegation that the only avocado-oil purchase alleged in the complaint happened in a store long after it became clear that the purchase was actually made online.

### 1. Cho files a complaint making a false allegation of material fact, and Lyon repeats that false allegation in an amended complaint.

In September 2024, Golikov printed a receipt for a November 14, 2021 purchase of avocado oil that she made through Walmart.com, with the website circled in handwriting:

9/19/24, 6:53 AM           Order details - Walmart.com

**Nov 14, 2021 order** | Order# 5892143-705357

RA 165; PA 096.

The record suggests that Golikov printed the receipt for her November 14, 2021, purchase so that she could share it with counsel. As noted, Golikov printed the receipt five days before the complaint was filed. PA 002. Cho admits she was aware Golikov made both online and in-store purchases. RA 186 ¶¶ 3–4. But Golikov is "not in the practice of maintaining receipts" (*id.* 152–153), so the only way for counsel to allege a specific purchase from almost three years before the complaint was filed was based on this printed receipt. But Golikov did not provide Walmart with this receipt until May 2025, over six months later. *Id.* 142 ¶ 4.

4

Even though "Walmart.com" was circled by hand on the receipt, Golikov's complaint did not indicate that her November 14, 2021 avocado-oil purchase occurred online. Instead, the complaint alleged that Golikov "purchased a bottle of Great Value Refined Avocado Oil *from a Walmart store while living in Tarzana, California*" on that day. PA 038 ¶ 6 (emphasis added). It also alleged that the package prominently stated "Avocado Oil" and that Golikov "read and relied on this statement" from the packaging when she made the purchase and "believed she was purchasing pure avocado oil." *Id.*

Pleading specific details of the purchase was key to stating her claim under Federal Rule of Civil Procedure 9(b), and it was also relevant to the limitations period. The statute of limitations for several of Golikov's central claims, including claims under the False Advertising Law and the California Consumer Legal Remedies Act, is three years. *See* Cal. Civ. Proc. Code §§ 338(a) (three-year limit for "action[s] upon a liability created by statute"); Cal. Civ. Code § 1783. A purchase in November 2021 would start the clock for the limitations period almost three years before the September 2024 complaint.

Petitioner Cho signed the complaint. PA 054. Within the week, petitioner Lyon appeared as additional counsel for Golikov. RA 002–003.

A few months later, in December 2024, Golikov filed the First Amended Complaint. PA 057. The FAC repeats the allegation that Golikov purchased the

5

product on November 14, 2021 "from a Walmart store while living in Tarzana, California" and "read and relied" on the packaging when she did so.  PA 060 ¶ 6.  The amended (and operative) complaint again alleges only this single purchase.  Cho remained on the caption and in the signature block and was joined there by Lyon.  PA 057, 078.

**2.      The court denies Walmart's motion to dismiss and certifies two classes with Golikov as their representative.**

Before Walmart or the district court knew the allegation was false, the district court denied Walmart's motion to dismiss, except as to punitive damages.  RA 044–051.  In opposing Walmart's motion, Golikov contended she had met Rule 9(b)'s heightened pleading standard by alleging the specific November 14, 2021 "Walmart store" purchase.  RA 024–026.

The district court also certified two classes, with Golikov as the sole representative of each.  RA 030–042.  In support of her class-certification motion, Golikov submitted a declaration stating that she had "purchased bottles of Great Value Avocado Oil from a Walmart store" and had paid $8.23 (the price listed on the November 14, 2021 Walmart.com receipt) for each bottle.  RA 006 ¶ 2.  Notably, that specific price had not been pleaded in either complaint.  *See* PA 043 ¶ 26, 067 ¶ 26.  Golikov's declaration did not acknowledge that she had purchased avocado oil from Walmart.com for that price.

6

### 3. Walmart learns that Golikov's November 14, 2021 purchase was online and moves to compel arbitration; Golikov resists on the merits.

In April 2025, in response to Walmart's interrogatories, Golikov disclosed for the first time that she used a Walmart.com online account to purchase avocado oil on November 14, 2021; she had not purchased it in store. PA 083–084. Walmart immediately moved to compel arbitration based on the newly revealed fact that Golikov had made the only purchase alleged in the operative complaint online. RA 053–074.

Golikov opposed, contending that she had made in-store purchases that were not subject to Walmart's online arbitration provision. PA 108–110. While the opposition attached a declaration by Golikov averring that she had purchased avocado oil in a Walmart store, she did not identify any specific date associated with those alleged purchases or provide any receipts or other documentation to confirm them. PA 090. She also did not seek leave to amend her complaint to allege an in-store purchase, did not invoke Rule 15, and did not attach a proposed amended complaint.

Instead of admitting the mistake, Golikov's opposition contended that Walmart had waived arbitration by failing to move for arbitration at the outset of the case. PA 111–114. Golikov argued that Walmart was on notice from the outset of the case that the purchase pleaded in the complaint might be online because there

7

was "no contradiction" between the allegation that Golikov purchased avocado oil "from a Walmart store while living in Tarzana" and the receipt showing that she made the purchase was online. PA 112. According to Golikov, the complaint's allegation that Golikov purchased avocado oil "from a Walmart store while living in Tarzana" could include an online purchase from Walmart. *Id.* Golikov also argued that Walmart should have searched its own records to determine whether the November 14, 2021 purchase was online or in store. PA 113.

### 4. The district court grants motion to compel arbitration.

In June 2025, the district court granted Walmart's motion to compel arbitration and stayed the proceedings pending completion of the arbitration. RA 076–080. The court explained that Golikov could not avoid arbitration by submitting a declaration stating that she had purchased avocado oil in store because the facts pleaded "*in the operative complaint* are those which the claims arise out of; this is a basic legal principle" that prevented Golikov from "retroactively bas[ing] her claims on a different purchase that was never mentioned in the" complaint. *Id.* 078. Because the complaint "consistently refers to [Golikov's] November 14, 2021 purchase of avocado oil" and "[d]oes not mention or assert any claims based on any other purchases," and because Golikov "now admits" that the November 14, 2021 purchase "was purchased online and is thus subject to" an arbitration agreement and class action waiver, the court granted Walmart's motion to compel arbitration. *Id*.

8

The district court rejected as "unreasonable" Golikov's argument that Walmart had waived arbitration by not moving to compel arbitration at the outset because it could have discovered that Golikov's purchase was online from its own records. *Id.* 079. The court found that Walmart "did not know it had a right to compel arbitration until Plaintiff responded to its interrogatory on April 17, 2025," because Golikov alleged in the complaint "that she purchased avocado oil 'from a Walmart store'" and did not "indicate that she had purchased the avocado oil online." *Id.* The court rejected Golikov's contention that the complaint could reasonably be understood to allege an online purchase, concluding that the complaint's use of the phrase "'from a store'[ ] suggests a physical store," not a website. *Id.* For this reason, the phrasing of the FAC meant that Walmart had no reason to suspect that the purchase might have been online and no duty to investigate the question. *Id.* Instead, it "appear[ed] reasonable for Defendant to presume that opposing counsel is not misrepresenting the facts." *Id.* Thus, because "each of the actions Plaintiff labels as inconsistent with the right to compel arbitration occurred *before* [Walmart] had reasonable notice of its right to compel arbitration," the court granted the motion to compel. *Id.* (emphasis in original).

### 5. Walmart moves for decertification of the class in light of the arbitration order.

In June 2025, as Golikov was the sole class representative, Walmart moved for clarification of class status or to decertify the class. RA 082–107. In opposition,

9

Golikov suggested in passing that, "[a]s part of the clarification" of class status sought by Walmart, the court should allow Golikov to add allegations about a substitute representative or her in-store purchases. PA 133–134. But Cho and Lyon still did not separately move to amend or submit a proposed complaint.

The district court decertified the class. It held that Golikov "never had a valid claim" arising from the November 14, 2021 purchase alleged in the complaint and "was never eligible to represent the class before this Court." RA 111.

### 6.     Walmart seeks sanctions.

Walmart moved for sanctions against Golikov, Cho, and Lyon under both the court's inherent power and under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying proceedings. RA 114–139.

In November 2025, the district court granted Walmart's sanctions motion as to Cho and Lyon. PA 002. The court recognized that Cho and Lyon could not be sanctioned for the "filing of the complaint alone," but found that their conduct was unreasonable and vexatious because they "continued to represent to the Court, in proceedings beyond the complaint, that Plaintiff purchased the avocado oil in a Walmart store." PA 005; *see, e.g.*, Dkt. 41 at 11 (opposition to motion to dismiss) ("On November 14, 2021, Plaintiff . . . purchased a bottle of Great Value Refined Avocado Oil from a Walmart *store*.") (emphasis added). By failing "to verify the initial fact," Cho and Lyon "led the Court to resolve unnecessary disputes that would

10

not have occurred had they simply stopped to check whether Plaintiff actually purchased the avocado oil on November 14, 2021." PA 005. Even "after it was revealed that Plaintiff purchased the avocado oil on Walmart.com instead of in a Walmart store," Cho and Lyon did not correct the error and instead "continued to advance [Golikov's] litigation position through an Opposition to a Motion to Compel Arbitration (DE No. 69) and an Opposition to a Motion to Decertify the Class (DE No. 86.)" *Id.* The court concluded that "[t]his again unreasonably multiplied proceedings and 'violated § 1927's duty to correct or withdraw litigation positions after it becomes obvious that they are meritless.'" *Id.* (quoting *In re Girardi*, 611 F.3d 1027, 1064 (9th Cir. 2010)).

After supplemental briefing, the district court set the sanctions award at $623,738.70, having excluded 15% of Walmart's requested hours for work done in seeking the sanctions. PA 008, 010.

Cho and Lyon's petition for mandamus followed.

## III.    ARGUMENT

"Mandamus is a 'drastic and extraordinary' remedy, 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)). "[O]nly exceptional circumstances amounting to a judicial 'usurpation of power,' or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Id.* (citations omitted).

Under the familiar *Bauman* test, the Court considers five factors: (1) the absence of another adequate means of relief; (2) prejudice not correctable on appeal; (3) clear and indisputable legal error; (4) a recurring or rules-disregarding district-court practice; (5) and a novel or first-impression issue warranting supervisory intervention. *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977). Cho and Lyon cannot satisfy that demanding standard.

### A. *Bauman* Factors One and Two: Cho and Lyon Fail to Show The Absence of Adequate Means of Relief and Prejudice Not Correctable on Appeal

The first two *Bauman* factors do not justify extraordinary relief here. Cho and Lyon do not lack a path to review. They object to waiting for the ordinary one—appeal from a final judgment. And the purported prejudice they describe would be true of *any* sanctions order; it cannot justify this Court's immediate intervention. *See Cunningham v. Hamilton County*, 527 U.S. 198, 208 (1999) (a sanctioned attorney "by and large suffers no inordinate injury from a deferral of appellate consideration of the sanction"); *Stanley v. Woodford*, 449 F.3d 1060, 1065 (9th Cir. 2006) (*Cunningham* rule applies to § 1927 sanctions).

Cho and Lyon may obtain review of the sanctions order when the arbitration is complete and the district court lifts the stay that followed its arbitration order.[1]

---

[1] The district court stayed proceedings after ordering arbitration because the Federal Arbitration Act requires a stay when requested and expressly forbids direct appeals from orders either granting a stay or compelling arbitration. 9 U.S.C. §§ 3,

Even if Golikov prevails in the arbitration, an appeal from the sanctions order would not be moot because her challenge to the sanctions order would be a live controversy. *See, e.g., Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 960 n.4 (9th Cir. 2007) (reviewing a district court's order compelling arbitration after the plaintiff received an arbitration award on a restitution claim but "[t]he arbitrator found for [defendant] on [plaintiff's] other claims").

Cho and Lyon might prefer not to arbitrate Golikov's claims. But arbitration is commonplace and not particularly onerous—indeed, arbitration is generally faster and less costly than litigation. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995) (noting that Congress found that "arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation"). Cho and Lyon cannot credibly argue that their failure to pursue arbitration is justified by its costs, which, other than an initial filing fee of either $225 or $250, would be borne by Walmart. *See* https://www.adr.org/rules-forms-and-fees/consumer/; https://www.jamsadr.com/arbitration-fees; Cal. Civ. Proc. Code §§ 1281.97–1281.98 (defendant's failure to timely pay fees waives arbitration and permits consumer to proceed in court and

---

16(b)(1)–(2); *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). But an appeal lies from an order compelling arbitration after a litigant loses in arbitration, is dissatisfied with the arbitration award, or, as here, has some ongoing injury from a ruling that predated the arbitration order. *Sanford*, 483 F.3d at 960 n.4.

recover fees). And Cho and Lyon might make short work of the arbitration requirement by commencing arbitration and then agreeing to dismiss the claim. Cho and Lyon's preference to avoid arbitrating the case they pleaded means that any delay in obtaining an appealable final judgment will result from their own choices, not any legal barrier to eventual review. Party-created delay does not strengthen a claim of extraordinary necessity. *Cf. Demos v. U.S. Dist. Ct.*, 925 F.2d 1160, 1161 n.3 (9th Cir. 1991) (rejecting attempt to seek mandamus after missing deadline to appeal).

This Court often denies mandamus when the claimed injury is the burden of continuing through ordinary litigation. The first *Bauman* factor "ensures that a writ of mandamus will not 'be used as a substitute for appeal even though hardship may result from delay and perhaps unnecessary trial.'" *In re United States*, 884 F.3d 830, 834 (9th Cir. 2018) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964)). Relatedly, the second factor requires Cho and Lyon to "demonstrate some burden . . . other than the mere cost and delay that are the regrettable, yet normal, features of our imperfect legal system." *Id.* at 835–36. Mandamus is therefore inappropriate where later review remains available, absent some strong showing of irreparable injury—which does not include "cost and delay." *Id.* at 835; *In re United States*, 895 F.3d 1101, 1104–06 (9th Cir. 2018) (per curiam) (holding government continued to fail to meet first and second *Bauman* factors despite continued costs of

14

"engaging in discovery or trial"); *see also In re Bozic*, 888 F.3d 1048, 1055 (9th Cir. 2018) (declining to grant mandamus despite clear legal error because other *Bauman* factors, especially the first two, were "not satisfied").

Cho and Lyon's argument that they satisfy the first two *Bauman* factors relies on cases that are different than this one because they involve a right or injury that ordinary review could not protect or resolve. *United States v. Tillman*, 756 F.3d 1144 (9th Cir. 2014), in fact, held that an order disqualifying defense counsel was *not* reviewable under mandamus because "other avenues exist to protect [a criminal defendant's] right to particular counsel," including direct appeal. *Id*. at 1150. While *Tillman* did review an associated order sanctioning defense counsel for violating ethics rules, it did so for reasons not present here: the district court had imposed the sanction without notice or hearing and referred counsel to the State Bar, creating a credible threat of disciplinary action based on a no-process order. *Id.* at 1151. Moreover, the order implicated the requirements for serving as counsel in a capital case, 18 U.S.C. § 3005, in a way that would cause courts to "think twice" before appointing the petitioner in capital cases despite his qualifications. *Id.*

Cho and Lyon contend that the damage to their professional reputations is similar to the damage to counsel's reputation in *Tillman*. But the district court here did not question Cho and Lyon's *competence*; it sanctioned them for unreasonably multiplying litigation, so the reputational effect is different and less significant.

15

Dkt. 98 at 4. If the reputational effects of a sanction on counsel were sufficient to qualify for mandamus, then any sanctions award would be reviewable on mandamus. *Cf. Howe v. City of Akron*, 557 F. App'x 402, 405 (6th Cir. 2014) ("[W]ere we to hold the risk of a damaged reputation sufficient to warrant immediate review, we would make every sanction order immediately reviewable."). And in any event, unlike in *Tillman*, the district court here sanctioned Cho and Lyon only after giving them notice and an opportunity to be heard.

Cho and Lyon's other cited decisions likewise fail to support their argument that this is the sort of case in which an appeal is unavailable to them or that prejudice is unavoidable. In *Henson*, compelling arbitration threatened to moot the named plaintiff's claim and leave him with "no opportunity to challenge" the order later as a class representative. *In re Henson*, 869 F.3d 1052, 1058–59 (9th Cir. 2017) (per curiam) (citation omitted). In *Mersho*, petitioners would lose a presumptive statutory PSLRA right to direct and oversee the litigation with their chosen counsel before appeal, so "the harm to Petitioners [would] not be meaningfully corrected on appeal." *In re Mersho*, 6 F.4th 891, 903 (9th Cir. 2021). In *Williams-Sonoma*, disclosure would have completed the harm before review, as petitioner was ordered to produce a list of customers solely so opposing counsel could find a lead plaintiff. *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 537, 540–42 (9th Cir. 2020). In *Creech*, the concern was structural taint from failure to recuse, which could infect the record

16

and public confidence in the judicial process. *In re Creech*, 119 F.4th 1114, 1125–26 (9th Cir. 2024) ("[A] judge who must recuse should do so sooner rather than later in order to mitigate questions concerning her judgment."). And in *Kirkland*, the court confronted compelled testimony, which raised the specter of a contempt sanction absent mandamus, and the harm of complying with an invalid subpoena "cannot be fully remedied post-judgment." *In re Kirkland*, 75 F.4th 1030, 1048, 1051 (9th Cir. 2023). Nothing comparable is present here.

Cho and Lyon's January 13, 2026 declarations, submitted with their petition, do not change that conclusion. The declarations were not before the district court. Petitioners' inclusion of them in the appendix to the mandamus petition violates Federal Rule of Appellate Procedure 10, which provides that the record includes only "[o]riginal papers and exhibits filed in the district court," any "transcript of proceedings," and the "[c]ertified copy of the docket entries prepared by the district clerk." Fed. R. App. P. 10(a)(1)–(3). This Court should thus not consider these extra-record materials. And even if the declarations were properly before this Court, they would not show that Cho and Lyon satisfy the second *Bauman* factor. The declarations describe alleged current reputational and professional fallout from the sanctions, internet search results, and generalized downstream consequences, not a disappearing right or irreparable prejudice.

17

Cho and Lyon fall far short of showing the kind of extraordinary necessity the writ requires on the first two *Bauman* factors.

**B.** ***Bauman* Factor Three: Cho and Lyon Cannot Show Clear and Indisputable Error**

"[C]lear and indisputable" error is a necessary condition for the writ, and its absence is alone dispositive. *In re Grice*, 974 F.3d 950, 954 (9th Cir. 2020) (quoting *In re Van Dusen*, 654 F.3d 838, 840–41 (9th Cir. 2011)); *In re Klamath Irrigation Dist.*, 69 F.4th 934, 937 (9th Cir. 2023) ("A requirement for obtaining mandamus relief is a determination by us that the district court's order was clearly erroneous as a matter of law."). Clear and indisputable error "is a highly deferential standard of review"; this Court "do[es] not issue a mandamus 'merely because the petitioner has identified legal error.'" *In re Walsh*, 15 F.4th 1005, 1008–09 (9th Cir. 2021) (citations omitted). Instead, the clear and indisputable error standard "requires of us a 'firm conviction' that the district court misinterpreted the law ... or committed a 'clear abuse of discretion.'" *Id.* (citations and quotation marks omitted).

Cho and Lyon fail to show that the district court committed the sort of "clear abuse of discretion" required for mandamus. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (sanctions order is reviewed for an abuse of discretion). Their petition should be denied.[2]

---

[2] When it moved for sanctions under § 1927, Walmart also sought sanctions under the court's inherent authority. RA 115. The standard for imposing sanction under a

### 1. Cho and Lyon never timely moved to replead or to revise the certified class.

Cho and Lyon try to establish a clear abuse of discretion based on what they say they *could* have done below. But the district court sanctioned them based on what they actually did—and did not—do. And that decision was well within its discretion.

The most egregious example is Cho and Lyon's choice to oppose arbitration on the merits after it was clear to all that Golikov's only pleaded purchase was online. Instead of dismissing or amending the complaint or seeking leave to substitute plaintiffs, Cho and Lyon opposed the motion to compel by arguing that Walmart had waived its right to arbitration by not moving to compel arbitration earlier (PA 111–114), even though their false allegation that Golikov purchased avocado oil "from a Walmart store" on November 14, 2021, had obscured the fact that Golikov's claim was subject to arbitration. Omitting the words "from a" in the phrase "from a Walmart store," Cho and Lyon argued that the complaint could be

---

court's inherent authority gives the court more discretion than under § 1927, and it is met on the facts here. *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (sanctions under inherent authority available when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons). That alternative grounds for affirmance provides yet another reason this Court should not conclude the district court committed a clear abuse of discretion: the court could have imposed the same sanction based on its inherent authority. *See United States v. Washington*, 969 F.2d 752, 755 (9th Cir. 1992) (court may affirm on any basis supported by the record, even if it differs from the reasoning of the district court).

19

read to allege an online purchase because the complaint "referred generally to a 'Walmart store,' which encompasses both physical in-person Walmart stores and the online Walmart store." PA 112. And they tried to shift blame from themselves to Walmart by arguing that Walmart should have searched its own records to determine whether the purchase was in store or online instead of believing that they had conducted a reasonable inquiry before alleging in the complaint that Golikov purchased avocado oil from a Walmart store on November 14, 2021. By fighting the motion to compel on these grounds instead of conceding their mistake, Cho and Lyon attempted to justify all their prior litigation behavior, regardless of when they supposedly learned about the mistake. Their contention (Pet. 25–26) that their opposition to arbitration was made in good faith ignores some of the actual arguments that they made.[3]

_____

[3] The petition argues that Walmart's decision not to seek fees for the motion to compel arbitration means that the only conduct that the district court could have considered as vexatious and prolonging was their opposition to Walmart's motion to clarify or decertify the class. Pet. 25 n.2. That is wrong. Walmart's decision not to seek fees for the motion to compel arbitration does not show that petitioner's positions in opposing arbitration did not vexatiously multiply proceedings. A decision not to seek a fees for a particular pleading is not a concession that the pleading was not sanctionable. Also, as explained in the next section, while Cho and Lyon's opposition to the motion to compel arbitration was the most egregious instance of vexatiously multiplying proceedings, Cho and Lyon also prolonged the litigation by missing earlier opportunities to correct the false allegation in the complaint. *See* pp. 22–28, *infra*.

In their petition, Cho and Lyon again suggest Walmart played a role in prolonging the class-certification proceedings because it should have not trusted their twice-pleaded allegation of an in-store purchase and should have instead "searched its records." Pet. 5. But the district court expressly found that it was reasonable for Walmart to take Golikov's pleading at face value (RA 0079), and Cho and Lyon do not even attempt to argue that the district court's finding reflects clear error. And in any event, as Cho and Lyon argue elsewhere (Pet. 6), if Golikov did, in fact, make an in-store purchase on that date, the fact that she also made an online purchase that day would not be a basis for compelling arbitration. Walmart had no way of knowing from "its records" whether Golikov made an in-store purchase on November 14, as she twice averred.

Under Cho and Lyon's own formulation of recklessness, there can be no doubt that they "disregard[ed] a known or obvious risk of falsity" when they persisted in litigating the case as if the complaint correctly alleged that Golikov purchased avocado oil in store on November 14, 2021. Pet. 11. And in so persisting, they revealed that their "mental state" satisfied the requirements for sanctions under § 1927. *Id.* at 17. Cho and Lyon argue that they had no reason to multiply the litigation and "would have simply amended the complaint to rely instead on one of [Golikov's] many in-store purchases." *Id.* at 25. But that is not what they did. Cho and Lyon cannot obtain mandamus based on counterfactuals.

Instead of seeking leave to amend or conceding arbitrability, Cho and Lyon waited months—until after the parties engaged in extensive discovery, after class certification, and after the court had granted the motion to compel arbitration over their opposition—to do anything about the false allegation. Even then, they did not move to amend the complaint or substitute a different plaintiff. Instead, they included in their opposition to Walmart's motion to clarify the status of class certification a passing request that the court, "[a]s part of the clarification," give Golikov leave to amend to substitute a representative or plead her purported in-store purchases. PA 133. The district court did not clearly abuse its discretion in treating that post-arbitration request in an opposition brief as insufficient to invoke Rule 15 or Rule 23(c). *See* Fed. R. Civ. P. 7(b)(1) (requirements for a proper motion); Fed. R. Civ. P. 15 (amended and supplemental pleadings); Fed. R. Civ. P. 23(c)(1)(C) (class certification order may be amended before final judgment). Cho and Lyon's late efforts to make the district court aware that they might have pleaded in-store purchases did not retroactively convert Cho and Lyon's opposition to the motion to compel into a timely motion to amend. Mandamus does not lie on this record.

## 2. The sanctions order rests on reckless maintenance after the contrary facts were known, not on the initial filing alone.

Contrary to Cho and Lyon's framing, the sanctions were not the result of the filing of the complaint alone. *See* Pet. 21 (citing *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)). A false allegation does not automatically make a

22

case frivolous. But a materially false allegation can make the continued litigation position frivolous when the allegation supplied the factual premise necessary to keep the case in court.

In *Rowland*, this Court affirmed sanctions where counsel acted with "reckless disregard for providing an accurate and truthful accounting of facts" in an affidavit, thereby multiplying proceedings regarding personal jurisdiction for seventeen months. *Rowland v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 142 F.4th 1169, 1170–71 (9th Cir. 2025). And in *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th F.4th 1111, 1119 (9th Cir. 2024), this Court affirmed the imposition of sanctions under § 1927 based on counsel's decision to "'recycle' an earlier draft of [a] motion for reconsideration," the "failure independently to assess the legal and factual basis" of an argument, and the failure to correct misstatements of fact and law. *Id.* at 1119. Both decisions show that the district court acted well within its discretion in finding that Cho and Lyon acted recklessly within the meaning of § 1927 by persisting in making arguments based on the false claim in the complaint.

Cho admits that she knew Golikov had made online purchases, that staff inserted the November 14 date as an in-store purchase, and that she did not verify that allegation—even though the record suggests that she or someone working for her had in hand the receipt that Golikov printed out shortly before filing the

23

complaint. RA 185 ¶¶ 3–4; *see supra* pp. 4–6. Lyon then re-pleaded the same November 14 transaction in the FAC. RA 189–190 ¶¶ 2–4; PA 060 ¶ 6.

While Cho and Lyon contend (Pet. 17) that the date of the purchase was "immaterial, so long as [it] occurred during the limitations period," that is not correct. It was useful to Golikov and her counsel to identify a purchase as early as possible within the three-year limitations period, and a purchase in November 2021 started the clock almost three years before the complaint. Separately, Lyon restated and relied on the false allegation about a specific in-store purchase on November 14, 2021, in Golikov's opposition to Walmart's motion to dismiss in order to show that Golikov had satisfied Rule 9(b)'s pleading standards. RA 024–026. Lyon also submitted a declaration from Golikov in support of the class-certification motion in which she averred that she made in-store purchases, conspicuously omitted any purchase date, but used the same $8.23 price from the November 14, 2021 receipt. RA 006 ¶ 2. Throughout, Cho and Lyon must have either reviewed the receipt and knew this key allegation—that Golikov had purchased avocado oil on November 14, 2021 from a "Walmart store"—was false, or else they repeatedly neglected to verify Golikov's purchase. Critically, as just explained, once discovery revealed to Walmart that the pleaded November 14 purchase was online, Cho and Lyon then opposed arbitration on the merits instead of retracting the false allegation and seeking leave to amend. PA 108–115. The district court did not clearly err in

24

concluding that this combination of pre-suit receipt possession, non-verification, repleading, and continued merits opposition reflected reckless maintenance of the litigation rather than an isolated pleading mistake caused by a staff member's error.

Cho and Lyon are thus wrong to suggest (Pet. 9–16) that the court sanctioned them merely because it found that they acted recklessly when they filed the false allegation in the complaint and refiled it in the FAC. While the court did find that that it was reckless for Cho and Lyon to file pleadings containing a material allegation that they did not check, it actually sanctioned them for recklessly and vexatiously prolonging the case by litigating based on that false material allegation even after doing so became unreasonable: "Cho and [ ] Lyon continued to represent to the Court, in proceedings beyond the complaint, that Plaintiff purchased the avocado oil in a Walmart store." PA 005. So Cho and Lyon's arguments that their conduct was inadvertent rather than reckless, that attorneys must be able to trust and rely on their colleagues' work without fear of sanction (*but see* Fed. R. Civ. P. 11(b)), and that the district court's finding that they recklessly filed the false allegation applied the wrong standard for recklessness under § 1927 are all beside the point.

Cho and Lyon's efforts to show (Pet. 21–24) that each bore little blame for filing the pleading with the false allegation because a staff member actually included the November 14, 2021 purchase date are also beside the point for the same reason: these initial filings are not the reason that the court sanctioned them. Their

arguments are also unconvincing. A lawyer who signs a pleading certifies under Federal Rule of Civil Procedure 11(b)(3) that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." A reasonable inquiry is "an inquiry reasonable under all the circumstances of a case," which takes account of which party has access to relevant facts, the difficulty of acquiring those facts, and their significance to the case as a whole. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (citation and quotation marks omitted).

Cho is the only attorney on the complaint. PA 034. Cho, Lyon, and a third attorney from their firm are the only attorneys on the amended complaint. PA 057. Yet on their view, Cho can escape the obligations of Rule 11 by pointing to a staff member, and Lyon can escape responsibility by pointing to Cho. PA 016, 026. Whether the only purchase alleged in the complaint was online or instore was a dispositive fact as to whether Golikov's claims were subject to arbitration, so Cho and Lyon should have checked it themselves.

Cho and Lyon are also wrong to suggest (Pet. 17) that the court erred by confusing recklessness with prolonging litigation. The court was not confused. Section 1927 provides for sanctions when counsel "multiplies the proceedings in any

26

case unreasonably and vexatiously." 28 U.S.C. § 1927. This Court has held that "unreasonably and vexatiously" requires at least recklessness. *Fink*, 239 F.3d at 991–93. But the statute does not require *separate* acts of prolonging and recklessness; a reckless course of prolonging litigation based on factual misstatements can warrant sanctions. *Caputo*, 96 F.4th at 1119. The district court thus did not abuse its discretion—let alone commit the sort of clear error that could warrant mandamus—when it found that Cho and Lyon acted recklessly when they "continued to advance" litigation positions that depended on Golikov having made an in-store purchase on November 14, 2021, after it became obvious that her purchase was online and thus obvious that the legal positions Cho and Lyon were advancing were meritless. PA 005.

Finally, Cho's claim that her only role in this case was filing the initial complaint, Pet. 21–22, was not even presented to the district court until supplemental briefing on the amount of sanctions. PA 019 ¶¶ 2–4. Because the opposition to the motion for sanctions did not include this argument (*see* RA 167–183), this argument could establish error—if at all—only as to the amount of the sanction award against Cho, an alleged error that fails *Bauman* factors one, two, four, and five and thus does not warrant mandamus. And in any event, Cho—a partner at her firm who has practiced for over two decades (PA 021)—is one of two names listed as counsel for Golikov on the opposition to the motion to compel arbitration (PA 115) and the

opposition to the motion to clarify or decertify the class (PA 117), which shows that she remained as counsel to Golikov.

> **3.** **The district court correctly found causation based on the case Cho and Lyon actually pleaded and chose to defend.**

Cho and Lyon's argument that "the same proceedings would have occurred" anyway (Pet. 23) avoids the question presented and does not establish a clear abuse of discretion. The issue is not whether Walmart might have incurred comparable fees in some different case based on a different complaint or transactions. *Cf. In re Bozic*, 888 at 1053 (rejecting the argument that venue was proper for a class action based on allegations about "putative class members" not before the court). The question is whether the fees awarded here were incurred because of Cho and Lyon's maintenance in this case of the false November 14 in-store-purchase premise. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (sanctions awards under inherent power are properly "framed as a but-for test" that asks what fees were caused by the sanctionable conduct).

On that question, the district court's analysis was correct—or at least not clearly and indisputably wrong. Both pleadings alleged one purchase, on one date, "from a Walmart store." PA 038, 043 ¶¶ 6, 26; PA 060, 067 ¶¶ 6, 26. The litigation that followed—motion-to-dismiss practice, class certification, discovery, 23(f) proceedings, and decertification—unfolded around that theory. In decertifying the class, the district court observed that Golikov "never had a valid claim to represent

28

the class in court" "arising out of her November 14, 2021 purchase." RA 111. Even assuming, for the sake of argument, that Golikov could in fact have pleaded specific in-store purchases but for some reasons never sought to amend the complaint once the false allegation was revealed, Cho and Lyon's assertion that the same proceedings would have occurred anyway is based on a hypothetical complaint that they never timely or properly pursued.

### 4. The fee amount awarded reflects a reasoned exercise of the district court's discretion.

The amount awarded also does not justify mandamus. The district court identified the sanctionable conduct, excluded all fees incurred seeking sanctions and litigating the fee application, and reduced Walmart's request by 166.7 hours. PA 010–013.

The district court correctly applied *Goodyear Tire & Rubber Co.'s* but-for test for awarding legal fees. 581 U.S. at 110. The court awarded reasonable rates for reasonable hours expended caused by petitioners' maintaining the false allegation. *Goodyear* requires but-for causation, not "auditing perfection." *Goodyear*, 581 U.S. at 110 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Trial courts need not become "green-eyeshade accountants"; the goal is to achieve "rough justice." *Id.* (quoting *Fox*, 563 U.S. at 838). They may therefore use estimates, categories, and set percentages in allocating fees. *Id.*

29

The district court issued a carefully reasoned fee order. It did not award Walmart every dollar it spent on the case. It excluded two entire categories of time, accepted rates Cho and Lyon did not challenge, rejected generalized duplication and overstaffing objections, and found no evidentiary basis for inability to pay. *See* PA 009–013. Cho and Lyon's contrary theory again depends on a different case they say they could have filed. *See, e.g.*, Pet. 18 ("Plaintiff could have simply amended the complaint to correct the mistaken date."); *id.* at 24–25 (similar). But *Goodyear* asks whether Walmart would have incurred the awarded fees in the absence of the sanctionable conduct in this case. On this record, the district court could permissibly determine that Walmart would not have incurred fees litigating, and then untangling the consequences of, a class action built around a false November 14 in-store purchase.

*Lu v. United States*, 921 F.3d 850 (9th Cir. 2019), on which petitioners rely, does not show clear and indisputable error or a clear abuse of discretion here. In *Lu*, the district court adopted a fee declaration "[w]ithout undertaking any independent analysis." *Id.* at 858. That did not happen here, where the district court entered a fee order that reflects its independent review and trimming over 15% of the requested fees—not the wholesale, uncritical acceptance condemned in *Lu*. Petitioners demonstrate no clear and indisputable error.

30

**C.** ***Bauman* Factors Four and Five: The Sanctions Present No Recurring Error and No Novel Issue Likely to Evade Review**

This Court is not being asked to halt an oft-repeated district court practice, remedy a persistent violation of federal law, or resolve a legal issue likely to evade review absent immediate intervention. Instead, this petition presents a fact-bound sanctions dispute, with petitioners requesting case-specific error correction in advance of final judgment.

As a result, Cho and Lyon do not even try to show that they can satisfy *Bauman* factors four and five—and they thereby forfeit any argument that they could. Factor four requires a petitioner to show the challenged decision reflects a recurring or rules-disregarding district-court practice. *Bauman*, 557 F.2d at 655 (inquiry is whether "the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules."); *see In re United States*, 884 F.3d at 837. Factor five requires that a case should present "issues of first impression" or "issues [that] will evade appellate review." *Id.* This petition raises nothing of the sort: it seeks case-specific error correction in advance of final judgment, not supervisory intervention to settle a recurring, evasive, or novel legal problem. Cho and Lyon thus cannot satisfy the fourth and fifth *Bauman* factors.

31

## IV. CONCLUSION

The petition should be denied.

Dated: April 13, 2026                    Respectfully submitted,


                                         DAVIS WRIGHT TREMAINE LLP

                                         *s/ Teal Luthy Miller*

                                         Teal Luthy Miller
                                         920 Fifth Avenue, Suite 3300
                                         Seattle, WA 98104-1640
                                         Telephone: (206) 622-3150
                                         Fax: (206) 757-7700
                                         TealMiller@dwt.com

                                         James R. Sigel
                                         Jacob M. Harper
                                         James H. Moon
                                         Heather Canner
                                         Joseph Elie-Myers
                                         Matthew E. Ladew
                                         350 South Grand Avenue, 27th Floor
                                         Los Angeles, California 90071
                                         JamesSigel@dwt.com

                                         *Attorneys for Real Party in Interest*
                                         *Walmart Inc.*

32

## CERTIFICATE OF COMPLIANCE

I hereby certify that this *Answer to Mandamus Petition* complies with the word limit of Circuit Rules 21-2(c) and 32-3(2) because it contains 7,635 words, excluding the documents listed at Rule 21(a)(2)(C) and Rule 32(f). I further certify that this motion complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface, 14-point Times New Roman.

Dated: April 13, 2026

*/s/Teal Luthy Miller*

33

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 26-364

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

United States District Court for the Central District of California, Los Angeles
Hon. R. Gary Klausner
Edward R. Roybal Federal Building and United States Courthouse
Los Angeles Courtroom 850, 8th Floor
255 East Temple Street Los Angeles, CA 90012-3332

**Description of Document(s)** *(required for all documents)*:

Real Party in Interest Walmart, Inc.'s Answer to Mandamus Petition

**Signature** | Teal Luthy Miller | **Date** | 4/13/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*

No. 26-364

UNITED STATES COURT OF
APPEALS

FOR THE NINTH CIRCUIT

CHRISTIN KYUNGSIK CHO; RICHARD ELGAR LYON III,

Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, LOS ANGELES

Respondent,

WALMART INC.,

Real Party in Interest.

Petition for Writ of Mandamus from the United States District Court
for the Central District of California
Case No. 2:24-cv-08211-RGK-MAR
Hon. R. Gary Klausner, District Judge

**REAL PARTY IN INTEREST WALMART INC'S SUPPLEMENTAL
EXCERPTS OF RECORD**

Teal Luthy Miller
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
Telephone: (206) 622-3150
Fax: (206) 757-7700
TealMiller@dwt.com

James R. Sigel
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Matthew E. Ladew
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Fl.,
Los Angeles, CA 90071-3487
Telephone: (213) 633-6800
JamesSigel@dwt.com

*Attorneys for Real Party in Interest Walmart Inc.*

## SUPPLEMENTAL EXCERPTS OF RECORD TABLE OF CONTENTS

*In re Christin Cho and Richard Lyon v. USDC-CDCA, Walmart Inc.*

| Exhibit | Description | Page |
|---|---|---|
| A | Dkt. 010 – September 30, 2024 Notice of Appearance or Withdrawal of Counsel | RA0001 |
| B | Dkt. 036-1 – January 9, 2025 Declaration of Plaintiff E. Golikov in support of Plaintiff Motion for Class Certification | RA0004 |
| C | Dkt. 041 – January 17, 2025 Plaintiff opposition to Defendant's Motion to Dismiss | RA0008 |
| D | Dkt. 062 – February 27, 2025 Order re: Plaintiff's Motion for Class Certification | RA0029 |
| E | Dkt. 063 - February 27, 2025 Order re Motion to Dismiss Case | RA0043 |
| F | Dkt. 066 – May 9, 2025 Walmart Inc.'s Notice of Motion and Motion to Compel Arbitration and Stay Case; Memorandum of Points and Authorities | RA0052 |
| G | Dkt. 081 – June 10, 2025 Order re Walmart Inc.'s Motion to Compel Arbitration and Stay Proceedings | RA0075 |
| H | Dkt. 082 – June 30, 2025 Walmart Inc.'s Notice of Motion and Motion to Clarify, or to Decertify Classes; Memorandum of Points and Authorities | RA0081 |
| I | Dkt. 092 - August 12, 2025 Order re Defendant's Motion to Decertify Class | RA0108 |
| J | Dkt. 094 – September 29, 2025 Walmart Inc.'s Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority; Memorandum of Points and Authorities | RA0113 |
| K | Dkt. 094-1 - September 29, 2025 Walmart Inc.'s Declaration of J. Harper in support of Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority; Memorandum of Points and Authorities | RA0140 |
| L | Dkt. 094-4 - September 29, 2025 Exhibit C to Declaration of J. Harper – Plaintiff's Response to Walmart Inc.'s Second Set of Interrogatories | RA0147 |
| M | Dkt. 094-5 - September 29, 2025 Exhibit D to Declaration of J. Harper - Order details | RA0162 |

| | | |
|---|---|---|
| N | Dkt. 095 – October 10, 2025 - Plaintiff's opposition to Walmart Inc.'s Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority | RA0166 |
| O | Dkt. 095-1 - October 10, 2025 – Plaintiff's Declaration of C. Cho in opposition to Walmart Inc.'s Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority | RA0184 |
| P | Dkt. 095-2 - October 10, 2025 – Plaintiff's Declaration of R. Lyon in opposition to Walmart Inc.'s Motion for Sanctions Pursuant to 28 U.S.C. 1927 and the Court's Inherent Authority | RA0187 |

# EXHIBIT A

Name and address:
Richard Lyon
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EDIE GOLIKOV, individually and on behalf of all others similarly,

PLAINTIFF(S)

v.

WALMART INC.,

DEFENDANT(S)

CASE NUMBER:

2:24-cv-08211-RGK-MAR

## NOTICE OF APPEARANCE OR WITHDRAWAL OF COUNSEL

### INSTRUCTIONS

*Appearance of Counsel*:

Attorneys may use this form to enter an appearance in a case, or to update the docket of a case to reflect a prior appearance. To do so, complete Sections I, II, and IV of this form, then file and serve the form in the case. (Using an attorney's CM/ECF login and password to file this form will expedite the addition of that attorney to the docket as counsel of record.)

*Withdrawal of Counsel*:

This form may be used to terminate an attorney's status as counsel of record for a party in three situations: (1) the attorney being terminated has already been relieved by the Court, but the docket does not yet reflect that fact; (2) at least one member of the attorney's firm or agency will continue to represent that party and the withdrawing attorney is not the only member of the Bar of this Court representing that party; or (3) the represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing. For any of these situations, complete Sections I, III, and IV of this form, then file and serve the form in the case.

**Note:** *In situations not covered above, attorneys seeking to withdraw from a case must first obtain permission from the Court. In such circumstances, attorneys should complete and file a "Request for Approval of Substitution or Withdrawal of Counsel" (Form G-01) rather than this "Notice of Appearance or Withdrawal of Counsel" (Form G-123). See Form G-01 for further information.*

### SECTION I - IDENTIFYING INFORMATION

*Please complete the following information for the attorney you wish to add or remove (if removing an attorney, provide the information as it currently appears on the docket; if appearing pro hac vice, enter "PHV" in the field for "CA Bar Number"):*

Name: Richard Lyon   CA Bar Number: 229288

Firm or agency: Dovel & Luner LLP

Address: 201 Santa Monica Blvd., Suite 600, Santa Monica, CA, 90401

Telephone Number: 310-656-7066   Fax Number: (310) 656-7069

Email: rick@dovel.com

Counsel of record for the following party or parties: Plaintiff Edie Golikov

RA0002

## SECTION II - TO ADD AN ATTORNEY TO THE DOCKET

*Please select one of the following options:*

☐ The attorney listed above has already appeared as counsel of record in this case and should have been added to the docket.  The date of the attorney's first appearance in this case: _____ .

☒ The filing of this form constitutes the first appearance in this case of the attorney listed above.  Other members of this attorney's firm or agency have previously appeared in the case.

☐ The filing of this form constitutes the first appearance in this case of the attorney listed above.  No other members of this attorney's firm or agency have previously appeared in the case.

☐ By order of the court dated _____ in case number _____ (see attached copy), the attorney listed above may appear in this case without applying for admission to practice *pro hac vice*.

☐ This case was transferred to this district by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 from the _____ District of _____, where it was assigned case number _____.  The attorney listed above is counsel of record in this case in the transferee district, and is permitted by the rules of the JPML to continue to represent his or her client in this district without applying for admission to practice *pro hac vice* and without the appointment of local counsel.

☐ On _____, the attorney listed above was granted permission to appear in this case *pro hac vice* before the Bankruptcy Court, and L.Bankr.R. 8 authorizes the continuation of that representation in this case before the District Court.

*In addition, if this is a criminal case, please check the applicable box below. The attorney listed above is:*

☐ USAO   ☐ FPDO   ☐ CJA Appointment   ☐ Pro Bono   ☐ Retained

## SECTION III - TO REMOVE AN ATTORNEY FROM THE DOCKET

***Notices of Electronic Filing will be terminated***. *Please select one of the following options:*

☐ The attorney named above has already been relieved by the Court as counsel of record in this case and should have been removed from the docket.  Date of the order relieving this attorney: _____.

☐ Please remove the attorney named above from the docket of this case; at least one member of the firm or agency named above, and at least one member of the Bar of this Court, will continue to serve as counsel of record for the party or parties indicated.

   *(Note:  if you are removing yourself from the docket of this case as a result of separating from a firm or agency, you should consult Local Rules 5-4.8.1 and 83-2.4 and Form G-06 ("Notice of Change of Attorney Business or Contact Information"), concerning your obligations to notify the Clerk and parties of changes in your business or contact information.)*

☐ The represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing.  Date party was dismissed: _____.

☐ The attorney named above was appointed on appeal and the appeal has been adjudicated.  Date the mandate was filed: _____.

## SECTION IV  - SIGNATURE

I request that the Clerk update the docket as indicated above.

Date: September 30, 2024 _____

Signature: /s/ Richard Lyon _____

Name:    Richard Lyon _____

RA0003

# EXHIBIT B

RA0004

Docusign Envelope ID: 3C40214F-B86E-4613-A6E6-6BE71198CF09

Case 2:24-cv-08211-RGK-MAR    Document 36-1    Filed 01/09/25    Page 1 of 3   Page ID #:368

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>WALMART INC.,<br><br>                              Defendant. | Case No. 24-cv-08211-RGK-MAR<br><br>**DECLARATION OF PLAINTIFF EDIE GOLIKOV IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Compl. filed:        September 24, 2024<br><br>Assigned to the Hon. R. Gary Klausner<br>Dept.: Courtroom 850 |

_____
GOLIKOV DECL. ISO MOTION FOR CLASS CERTIFICATION

RA0005

Docusign Envelope ID: 3C40214F-B86E-4613-A6E6-6BE71198CF09

Case 2:24-cv-08211-RGK-MAR   Document 36-1   Filed 01/09/25   Page 2 of 3   Page ID #:369

## <u>DECLARATION OF EDIE GOLIKOV</u>

I, Edie Golikov, declare and state as follows:

1.      I am the named Plaintiff in this action.  I live in Los Angeles County, California.  I make this declaration from my own personal knowledge and could competently testify to the following facts.

2.      I purchased bottles of Great Value Avocado Oil from a Walmart store while living in Tarzana, California.  I paid approximately $8.23 for each bottle.

3.      The labels of the Great Value Avocado Oil stated that the product was "Avocado Oil," contained pictures of avocados, and listed "Avocado Oil" as the sole ingredient.  I read and relied on these statements when purchasing Great Value Avocado Oil.  I believed that Great Value Avocado Oil contained unadulterated avocado oil.

4.      Had I known that the products were adulterated, I would not have purchased them or would not have paid the price I paid for them.

5.      I am willing to serve as a class representative in this case.  I understand that, as a class representative, my duty is to represent other California consumers who, like me, purchased misleadingly labeled Great Value Avocado Oil.  I do not know of or foresee any conflicts of interest between myself and any other class members.

6.      I have actively participated in this case and will continue to do so.  I have discussed this case with my lawyers to stay updated, and I have reviewed the Complaint and Amended Complaint before they were filed.

7.      I want Walmart to fix its practices and sell avocado oil with accurate labeling.  Because of Walmart's past failure to do so, however, I cannot rely on Walmart's word alone that it has fixed the problem, and I will thus not be able to purchase Great Value Avocado Oil.  But if the Court issued an order forbidding Walmart from claiming that Great Value Avocado Oil contains only avocado oil unless it actually contains unadulterated avocado oil, then I could trust Walmart's

1

GOLIKOV DECL. ISO MOTION FOR CLASS CERTIFICATION

RA0006

representations. With the security of such a Court order, I would consider buying Great Value Avocado Oil again.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: 12/27/2024

By: _Edie Golikov_
DocuSigned by:
4599E24D18334C2...
Edie Golikov

2
GOLIKOV DECL. ISO MOTION FOR CLASS CERTIFICATION

# EXHIBIT C

RA0008

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Stephen D. Andrews (CBN 354327)
stephen@dovel.com
Christin Cho (CBN 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>       *Defendant*. | Case No. 2:24-cv-08211-RGK-MAR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: February 10, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Complaint filed:  September 24, 2024 |

Motion for Class Certification              Case No. 2:24-cv-08211-RGK-MAR

RA0009

**Table of Contents**

I.     Introduction. ...................................................................................................1

II.    Plaintiff's allegations exceed the pleading standard for the reasonable consumer test. ...............................................................................................2

    A.    Defendant's "insufficient testing" argument fails.....................................3

    B.    Defendant's cited authority does not apply. ..............................................8

    C.    Defendant's "sufficient notice" argument fails because Plaintiff explains how and why its label is misleading. .......................................10

    D.    Defendant's materiality argument fails.....................................................11

III.   Defendant's claim-specific arguments fail.................................................12

    A.    Plaintiff properly pleads her intentional misrepresentation claim...........12

    B.    Plaintiff properly pleads her request for punitive damages. ....................13

IV.    Conclusion. .................................................................................................14

Opposition to Motion to Dismiss                i         Case No. 2:24-cv-08211-RGK-MAR

**Table of Authorities**

**Cases**

*Ashton v. J.M. Smucker Co.,*
    2020 U.S. Dist. LEXIS 250428 (C.D. Cal. Dec. 16, 2020) .......................................5

*Bell v. Dave,*
    2022 U.S. Dist. LEXIS 121646 (D.N.J. July 11, 2022)..........................................5

*Carrol v. S.C. Johnsons & Son, Inc.,*
    2018 U.S. Dist. LEXIS 57052 (N.D. Ill. Mar. 29, 2018)............................................5

*Ebner v. Fresh, Inc.,*
    838 F.3d 958 (9th Cir. 2016)...................................................................................2

*Fishon v. Mars Petcare US, Inc.,*
    501 F. Supp. 3d 555 (M.D. Tenn. 2020) ...................................................................5

*Freedline v. O Organics LLC,*
    445 F. Supp. 3d 85 (N.D. Cal. 2020) .......................................................................5

*Great Am. All. Ins. Co. v. Vill. Gardens Hoa,*
    2023 U.S. Dist. LEXIS 55729 (C.D. Cal. Feb. 8, 2023).........................................12

*Gubala v. CVS Pharmacy, Inc.,*
    2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016)..........................................6

*Gunaratna v. Dennis Gross Cosmetology LLC,*
    2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023)..........................................3

*In re Herbal Supplements Mktg. & Sales Practices Litig.,*
    2017 U.S. Dist. LEXIS 76207 (N.D. Ill. May 19, 2017) ..........................................5

*Koller v. Med Foods, Inc.,*
    2015 WL 13653887 (N.D. Cal. Jan. 6, 2015) .....................................................4, 10

*Kowalsky v. Hewlett-Packard Co.,*
    2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10, 2011).......................................12

*Kumar v. Salov N. Am. Corp.,*
    2015 U.S. Dist. LEXIS 12790 (N.D. Cal. Feb. 3, 2015).......................................4, 10

*Lazy Y. Ranch Ltd. v. Behrens,*

   546 F. 3d 580 (9th Cir. 2008)............................................................................6

*McConnon v. The Kroger Co.,*

   2024 U.S. Dist. LEXIS 110016 (C.D. Cal. June 21, 2024) ....................................8, 9

*McCrary v. Elations Co., LLC,*

   2013 U.S. Dist. LEXIS 173591 (C.D. Cal. Apr. 24, 2013)........................................3

*Naimi v. Starbucks Corp.,*

   798 F. App'x 67 (9th Cir. 2019) ........................................................................4, 10

*Oppenheimer v. Sw. Airlines Co.,*

   2013 U.S. Dist. LEXIS 85633 (S.D. Cal. June 17, 2013)........................................13

*Overholt v. CarMax Auto Superstores Cal., Ltd. Liab. Co.,*

   2014 U.S. Dist. LEXIS 49142 (E.D. Cal. Apr. 7, 2014)...........................................13

*Rice-Sherman v. Big Heart Pet Brands, Inc.,*

   2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar. 16, 2020).........................................5

*Robinson v. J.M. Smucker Co.,*

   2019 U.S. Dist. LEXIS 78069 (N.D. Cal. May 8, 2019) ....................................10, 11

*Shimy v. Wright Med. Tech., Inc.,*

   2014 U.S. Dist. LEXIS 101479 (C.D. Cal. July 23, 2014) ......................................13

*Swingless Golf Club Corp. v. Taylor,*

   679 F. Supp. 2d 1060 (N.D. Cal. 2009) ...............................................................12

*Williams v. Gerber Prods. Co.,*

   552 F.3d 934 (9th Cir. 2008)..............................................................................2

*Woodard v. Labrada,*

   2017 U.S. Dist. LEXIS 124546 (C.D. Cal. July 31, 2017) ........................................5

**Statutes**

21 U.S.C. § 342(b)(4) .......................................................................................9

**Rules**

Fed. R. Civ. P. 54(c) .......................................................................................13

Fed. R. Civ. P. 9(b) .................................................................................................... 12

Opposition to Motion to Dismiss                iv        Case No. 2:24-cv-08211-RGK-MAR

RA0013

## I.    Introduction.

Defendant Walmart Inc. makes and sells Great Value brand avocado oil.  The Great Value Avocado Oil bottle is labeled "Avocado Oil," bears pictures of avocados, and lists avocado oil as the sole ingredient ("INGREDIENTS: AVOCADO OIL").  But Great Value Avocado Oil does not, in fact, contain only avocado oil.  Testing has shown that it is adulterated with other, cheaper cooking oils.

Defendant does not meaningfully dispute that a reasonable consumer would interpret the label's avocado oil representations to mean that Great Value Avocado Oil contains unadulterated avocado oil.  Instead, Defendant's opposition principally rests on its disbelief of the facts alleged in the complaint.  According to Defendant, the laboratory testing Plaintiff cites in her complaint is inadequate, because it does not conclusively prove Plaintiff's claims.

But Plaintiff need not conclusively prove her claims at this stage.  Plaintiff plausibly alleges that Great Value Avocado Oil is adulterated with cheaper cooking oils.  At the motion-to-dismiss stage, this allegation must be accepted as true.  Plaintiff's citation to laboratory testing merely reinforces the plausibility of her allegations.  Researchers at the University of California, Davis tested several samples of Great Value Avocado Oil using "the most effective way to determine [avocado oil] purity" and found them to be adulterated with cheaper cooking oils.  Dkt. 31, First Amended Complaint ("FAC"), ¶¶16, 20; Dkt. 37-1 at 4.  Defendant attempts to poke holes in those results, but "adjudicating what those studies do or do not *prove* is beyond the appropriate scope of inquiry at the pleading stage." *Koller v. Med. Foods, Inc.*, 2015 WL 13653887, at *1 (N.D. Cal. Jan. 6, 2015).

Plaintiff plausibly alleges that Defendant's labeling caused consumers to believe its product was unadulterated avocado oil, when in truth it is adulterated with other, cheaper cooking oils.  At this stage, those allegations are sufficient.  Defendant's motion to dismiss should be denied.

Opposition to Motion to Dismiss                1        Case No. 2:24-cv-08211-RGK-MAR

RA0014

**II.    Plaintiff's allegations exceed the pleading standard for the reasonable consumer test.**

The asserted claims apply "the 'reasonable consumer test,' which requires a plaintiff to allege facts showing consumers 'are likely to be deceived.'" Mot. 6 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)); *see* Dkt. 36 (Plaintiff's class certification brief) at 6-8 (citing authority showing that reasonable consumer test applies for each asserted claim). Here, Plaintiff's Complaint plausibly alleges this requirement: "Defendant's labels prominently state that the Product is avocado oil. The front of the bottle prominently states 'Avocado Oil,' and includes images of avocados." FAC, ¶17. And "the ingredients lists only a single ingredient: Avocado Oil." *Id.*, ¶18; *id.*, ¶¶17-18 (showing labels). The Complaint further alleges that "[n]o reasonable consumer expects that a bottle labeled 'Avocado Oil,' featuring photos of avocados, and listing only 'avocado oil' as its ingredient contains other, cheaper, non-avocado oils." *Id.*, ¶19. And yet "scientific testing shows" that it does: "Defendant's Great Value Avocado Oil" is "adulterated" with "other oils … that are less expensive than avocado oil and that have different health and culinary properties." *Id.*, ¶20. Accordingly, Defendant's "labeling is likely to deceive, and did deceive reasonable consumers like Plaintiff." *Id.*, ¶70.

Despite this, Defendant argues that "Ms. Golikov's Claims Fail Under the Reasonable Consumer Test" and should be dismissed on the pleadings. Mot. 5. But the Ninth Circuit has explained that "[w]hether a practice is deceptive" under the reasonable consumer test "is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made [on a motion to dismiss]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (internal citations and quotations omitted). "[D]ismissal" of false advertising claims, like those in this case, applies in "rare situation[s]" where "it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939; *see McCrary v. Elations Co., LLC*, 2013 U.S. Dist. LEXIS 173591, at *16-17

Opposition to Motion to Dismiss          2          Case No. 2:24-cv-08211-RGK-MAR

(C.D. Cal. Apr. 24, 2013) (because defendant's "advertising claim[] [did] not make it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived," "the parties should be able to submit evidence to demonstrate whether a reasonable consumer would find Defendant's advertising to be deceptive or misleading.") (citation and quotations omitted).

This case is not one of those rare situations where it is clear at the pleadings stage that it will be impossible to prove deception at the merits stage. To the contrary, since the time of the Complaint, Plaintiff has already developed evidence showing that Plaintiff will prevail at the merits stage. Indeed, Plaintiff's allegation that Defendant's "labeling is likely to deceive … reasonable consumers" (FAC, ¶71) assuredly cannot be deemed implausible given that evidence now shows that Defendant's labeling deceived 69.7% of Defendant's target consumers into believing that its product "contains only avocado oil and no other cooking oils." Dkt. 36 at 4; Dkt. 36-2 (Declaration of Professor Thomas Maronick) ¶ 15; *see Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 U.S. Dist. LEXIS 60796, at *48-49 (C.D. Cal. Apr. 4, 2023) (listing cases finding reasonable consumer test satisfied where 37.1%, 41.5%, 24%, and 25% of consumers were misled).

Defendant makes several additional arguments in support of its argument that Plaintiff's claims fail under the reasonable consumer test at the pleadings stage. We rebut each argument in turn.

### A.    Defendant's "insufficient testing" argument fails.

Defendant argues that rather than test the Great Value Avocado Oil "product [she] actually purchased," Plaintiff improperly relied on "third-party" testing of other bottles of Walmart's Great Value Avocado Oil. Mot. 8-9, 12; *id*. at 1-2 (asserting that the cited studies "do not establish that Great Value Avocado Oil" purchased by Plaintiff "was adulterated" because she "failed to test [the] product she allegedly purchased").

Opposition to Motion to Dismiss          3      Case No. 2:24-cv-08211-RGK-MAR

Defendant's argument is routinely rejected at the motion-to-dismiss stage.  For example, in *Naimi*, the plaintiffs alleged that Starbucks' "'Doubleshot Espresso' product label makes a false representation" by implying that the "beverage contains two shots of espresso brewed from the same beans Starbucks uses in its cafés." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69 (9th Cir. 2019).  Plaintiffs did not test the quantity of espresso in the products they actually purchased, and instead tested the amount of caffeine in other Doubleshot Espresso products and used that as a "proxy for [the] quantity of espresso" in their own products.  *Id*.  The Ninth Circuit held that the district court erred in dismissing the case because Plaintiffs' "allegations, which must be accepted as true at this stage of the litigation, plausibly suggest that the canned beverage does not contain two shots of Starbucks brand espresso." *Id*.

Similarly, in *Koller*, plaintiff alleged that he was deceived because he purchased a product labeled "Extra Virgin Olive Oil" that was not actually "extra virgin" because it was "mixed with refined oil." *Koller v. Med Foods, Inc.*, 2015 WL 13653887, at *1, *3 (N.D. Cal. Jan. 6, 2015).  Like here, plaintiff "d[id] not allege he tested that particular bottle" and instead cited "studies" testing the oil contents in other bottles. *Id*.  And, like here, defendant argued that plaintiff "has not alleged sufficient facts to show that the particular bottle of [] oil he purchased" was adulterated.  *Id*.  The court rejected the argument:  Plaintiff "has alleged as a factual matter without equivocation that the oil in question does not meet the applicable standards, and there is nothing implausible about that assertion.  Whether he can prove it remains to be seen, but dismissal at the pleading stage is not warranted." *Id*.  This is because, although "a plaintiff must plead sufficient facts to support a reasonable inference of liability, there is still no requirement that a plaintiff include evidence in a complaint, much less prove the case at that stage." *Id*.

These holdings align with a long line of cases rejecting the same argument Defendant makes here. *See, e.g.*, *Kumar v. Salov N. Am. Corp.*, 2015 U.S. Dist. LEXIS 12790, at *12-13 (N.D. Cal. Feb. 3, 2015) (denying motion to dismiss when

Opposition to Motion to Dismiss          4       Case No. 2:24-cv-08211-RGK-MAR

RA0017

plaintiff "tested" "some olive oil … to find that it did not meet the extra virgin standard" but did "not allege that the bottle she purchased was tested"); *Ashton v. J.M. Smucker Co.*, 2020 U.S. Dist. LEXIS 250428, at *14-15 (C.D. Cal. Dec. 16, 2020) (denying motion to dismiss because, "without measuring their own [ground coffee] and finding [it] lacking," Plaintiff's allegations are nonetheless sufficient); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 U.S. Dist. LEXIS 46197, at *24 (N.D. Cal. Mar. 16, 2020) (denying motion to dismiss and holding that plaintiffs need not specifically allege that they independently tested the products they purchased); *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 90 (N.D. Cal. 2020) (rejecting defendant's argument that plaintiff had to test their own bottle of Kombucha); *Bell v. Dave*, 2022 U.S. Dist. LEXIS 121646, at *11 (D.N.J. July 11, 2022) (The "Court's independent research uncovered comparable consumer product cases holding that" pleaded claims are sufficient "notwithstanding that the allegedly misrepresented product is not the one actually purchased by the plaintiff"); *Woodard v. Labrada*, 2017 U.S. Dist. LEXIS 124546, at *22-23 (C.D. Cal. July 31, 2017) (plaintiffs sufficiently alleged that their own weight loss products were mislabeled by testing similar products from a different lot); *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 U.S. Dist. LEXIS 57052, at *8 (N.D. Ill. Mar. 29, 2018) (plaintiff sufficiently alleged that their own sunscreen bottles did not provide the claimed SPF by citing tests of other bottles); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 76207, at *48 (N.D. Ill. May 19, 2017) ("[c]ourts have permitted consumer claims in … class actions regarding product mislabeling to move forward based on limited testing, including a single test on a single sample of the product at issue") (collecting authority); *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 566 (M.D. Tenn. 2020) (sufficient that plaintiff cited "one independently tested bag of IAMS Grain-Free Recipe"); *Mack v. Amazon.Com, Inc.*, 2023 U.S. Dist. LEXIS 44677, at *5 (W.D. Wash. Mar. 16, 2023) ("Nor need Plaintiffs test the actual product purchased … as

Opposition to Motion to Dismiss          5          Case No. 2:24-cv-08211-RGK-MAR

RA0018

Defendant asserts … An allegation that Defendant is consistently selling the product purchased with false information suffices") (citation and quotations omitted).

Courts routinely find these types of allegations sufficient because, at the pleading stage, all reasonable inferences must be drawn in favor of plaintiff. *See Lazy Y. Ranch Ltd. v. Behrens*, 546 F. 3d 580, 588 (9th Cir. 2008). It is reasonable to infer that, if comparable products are inaccurately labeled, then the same is true of the specific products that plaintiff purchased. *Gubala v. CVS Pharmacy, Inc*., 2016 U.S. Dist. LEXIS 32759, at *27 (N.D. Ill. Mar. 15, 2016) ("[p]laintiff does not need to prove his case at the pleading stage of the case" and if testing of a sample product shows that it is inaccurately labelled, this nudges plaintiff's claims "across the line from conceivable to plausible") (internal quotations omitted). This principle is especially strong here. This is not a case where it is alleged that only some of Defendant's tested avocado oil was adulterated, while other oil was unadulterated. To the contrary, the allegations and evidence show that all tested Walmart Avocado Oil was adulterated. FAC, ¶¶16, 20. And further eliminating any doubt, Plaintiff has obtained additional evidence from another independent laboratory confirming that Defendant's avocado oil is adulterated. *See* Declaration of Imel Courtland ("Courtland Decl.") ¶¶ 1-7; *id*., ¶ 7 ("the testing that my laboratory conducted … reveals that the sample is adulterated with oils other than avocado oil").

Moreover, in this case, it would be especially unjust to accept Defendant's position that Plaintiff must test the exact product she purchased. Plaintiff cannot test the exact bottle of avocado oil she purchased because Defendant misled her into buying and consuming the product. Yet Defendant demands that Plaintiff do what Defendant's own alleged misconduct has made impossible (test a product that Plaintiff already consumed, in reliance on Defendant's inaccurate labels). This would allow Defendant's own alleged wrongful conduct to insulate itself from any possible liability.

Opposition to Motion to Dismiss          6          Case No. 2:24-cv-08211-RGK-MAR

Defendant's other challenges to the laboratory testing fail for similar reasons. *See* Mot. 11-12. Defendant argues that Plaintiff's testing suffers from "statistical flaws" because the study tested "only three Great Value Avocado Oil bottles," Mot. 11, and that Plaintiff "fails to allege the requisite 'nexus or connection' between the avocado oils tested by the U.C. Davis research in 2020 and 2023 and the Avocado Oil she purchased in 2021," Mot. 12. Yet, as the authorities cited above demonstrate, "while a plaintiff must plead sufficient facts to support a reasonable inference of liability, there is no requirement that a plaintiff include evidence in a complaint, much less prove the case at that stage." *Koller*, 2015 WL 13653887, at *3; *see, e.g.*, *In re Herbal Supplements*, 2017 U.S. Dist. LEXIS 76207, at *48 ("product mislabeling" cases routinely "move forward based on limited testing, including a single test on a single sample of the product at issue") (collecting authority).

The same reasoning forecloses Defendant's arguments that the test results "show, at most, that the tested oils do not all match a *proposed* standard not even adopted by international standards bodies" and that the studies indicate that "multiple causes *other than adulteration* could have led to their test results." Mot. 11. To begin, the alleged misrepresentation—labeling that causes consumers to believe the product contains only avocado oil when it actually includes other cheaper oils—stands independent of, and need not be tied to, any "standard." The claims depend on allegations that consumers were deceived, not compliance with a proposed standard. And the Ninth Circuit's *Starbucks* decision rejected these same arguments. *See Starbucks Corp.*, 798 F. App'x at 69. There, plaintiffs' testing did not rely on *any* standard; instead, plaintiffs compared the caffeine content of Starbucks' espresso shots with other canned beverages. *Id.* The Ninth Circuit found this testing method acceptable because plaintiffs' allegations, "which must be accepted as true at this stage of the litigation, plausibly suggest that the canned beverage does not contain two shots of Starbucks brand espresso." *Id.* As Defendant attempts here, Starbucks argued that plaintiffs' testing could be explained by other causes: "the difference in caffeine

Opposition to Motion to Dismiss         7       Case No. 2:24-cv-08211-RGK-MAR

content [found in plaintiff's testing] is attributable to differences in the processes used to brew the espresso." *Id.*  The Ninth Circuit rejected this argument.  "[W]hen there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss." *Id.* (internal quotations omitted).

Here, the testing plausibly shows that Great Value Avocado Oil is adulterated with cheaper cooking oils.  As Plaintiff alleges, the researchers noted that "the most effective way to determine [avocado oil] purity is to use both sterols and fatty acid profile" tests.  FAC, ¶16.  Walmart's Great Value Avocado Oil failed both tests, and the researchers concluded that "Defendant's Great Value Avocado Oil contains high levels of other oils, including oleic sunflower or safflower oils—two oils that are less expensive than avocado oil and that have different health and culinary properties." *Id.*, ¶20.  These allegations are sufficient to plausibly allege that Defendant's avocado oil is adulterated with cheaper oils.  *See Koller*, 2015 WL 13653887, at *3 ("there is no requirement that a plaintiff include evidence in a complaint, much less prove the case at that stage.").

**B.    Defendant's cited authority does not apply.**

Defendant relies primarily on *McConnon*, a different case brought by different counsel against a different manufacturer of avocado oil, and argues that "McConnon compels dismissal."  Mot. 7-8 (discussing *McConnon v. The Kroger Co.*, 2024 U.S. Dist. LEXIS 110016, at *7 (C.D. Cal. June 21, 2024)).  Not true.  *McConnon* does not apply here.  In *McConnon*, the court held that the "allegations that the avocado oil was advertised as 'pure' were 'conclusory.'"  Mot. 7 (quoting *McConnon*, 2024 U.S. Dist. LEXIS 110016, at *7).  The court explained that "Plaintiff fails to define" the term "'pure,'" which "warrants dismissal" because, "[w]ithout a definition," "the pleading provides insufficient detail from which Defendant can discern how its label is allegedly misleading," and "neither Defendant nor the Court can evaluate the merits of the claim." *McConnon,* 2024 U.S. Dist. LEXIS 11016, at *7-8.  The court "granted

Opposition to Motion to Dismiss          8          Case No. 2:24-cv-08211-RGK-MAR

[Plaintiff] leave to amend" to "cure" this deficiency by adding the missing detail about what constitutes purity. *Id.*, *11.

This deficiency is not present here. The misleading term on Walmart's label is not "pure." Instead, the representation on the label is that the Product is "Avocado Oil" and the only listed ingredient is avocado oil ("INGREDIENTS: AVOCADO OIL"). FAC, ¶¶17-18. Based on these representations, "reasonable consumers believe that the bottle contains avocado oil, and only avocado oil" instead of being "adulterated" with "other, cheaper, non-avocado oils." FAC, ¶19. Defendant cannot claim ignorance as to the meaning of "adulterated" because this term is objectively defined by the United States Code: "A food shall be deemed to be adulterated … if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is." 21 U.S.C. § 342(b)(4). And this definition is reiterated throughout the Complaint. FAC, ¶4 (bad actors, like Walmart "substitute other oils, or mix avocado oil with cheaper seed oils" and thus sell "avocado oil that is adulterated"); *id.*, ¶15 ("it costs a lot more to make unadulterated avocado oil than an adulterated oil" and "bad actors" like Walmart "increase their profits by selling impure or mixed oils as unadulterated avocado"); *id.*, ¶53 ("Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils."); *id.* ¶¶4, 5, 6, 15, 16, 19, 20, 21, 22, 23, 24, 27, 54 (alleging adulteration by Walmart of its avocado oil).

Walmart also asserts that "*Meyer v. Colavita, Inc.* is instructive." Mot. 9 (citing *Meyer v. Colavita USA Inc.*, 2011 U.S. Dist. LEXIS 162814 (S.D. Fla. Sep. 13, 2011)). It is not. In *Meyer*, "Plaintiffs allege that Defendants' products consist of 'fake' extra virgin olive oil," but this was not plausible because the alleged testing showed the opposite. *Meyer*, 2011 U.S. Dist. LEXIS 162814, at *12. All of the tested samples "passed … the objective criteria … as meeting the standards for extra virgin olive oil," and "some of Defendants' samples passed both the objective criteria and more subjective organoleptic criteria as meeting the standards for extra virgin olive oil." *Id.*

Opposition to Motion to Dismiss          9          Case No. 2:24-cv-08211-RGK-MAR

at *18.  In stark contrast, the allegations of testing in this case concern purely objective criteria, i.e., "the fatty acid profile and sterol test" of the Class Products.  FAC, ¶20.  And all Great Value Avocado Oil samples failed the objective test.  And to be sure, since this case was filed, Plaintiff has since engaged another third-party lab that implemented the same objective tests, and the results were the same: Defendant's Great Value Avocado Oil failed the same objective tests.  *See* Courtland Decl., ¶¶1-7.  Moreover, Defendant cannot rely on *Meyer* for the premise that a plaintiff cannot "extrapolat[e] from [a] study [of like products] to the products plaintiffs had purchased," Mot. 10, because that premise is contrary to Ninth Circuit law.  *See Naimi*, 798 F. App'x at 69 (discussed *supra* at § II.A).  And the olive-oil cases in this Circuit have consistently rejected this premise.  *See, e.g., Koller*, 2015 WL 13653887, at  *3; *Kumar*, 2015 U.S. Dist. LEXIS 12790, at *12-13 (discussed *supra* at § II.A).

**C.    Defendant's "sufficient notice" argument fails because Plaintiff explains how and why its label is misleading.**

Defendant argues that Plaintiff's "allegations … fail to provide mandatory notice to Walmart of the claims" because they do not explain "*how* or *why*" its "Avocado Oil is impure."  Mot. 12-13 (asserting that "what the Avocado Oil [Plaintiff] purchased was adulterated with, or how much of any adulterant is in the product" is "critical to place Walmart on notice of her claims").  This argument fails for the same reasons addressed above.  The Complaint repeatedly puts Defendant on notice that its labeling is misleading because it gives consumers the false impression that avocado oil is the only ingredient in its oil when, in truth, it is adulterated with other cheaper oils.  *See supra* at § II.B; *see, e.g.*, FAC, ¶53 ("Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils.").

Plaintiff need not detail the types or quantities of these other oils to sufficiently put Defendant on notice.  *See Robinson v. J.M. Smucker Co.,* 2019 U.S. Dist. LEXIS 78069, at *9 (N.D. Cal. May 8, 2019).  For example, in *Robinson*, "Plaintiffs allegations … state the who, what, when, where, and how in enough detail" by

Opposition to Motion to Dismiss            10      Case No. 2:24-cv-08211-RGK-MAR

"alleg[ing] that she purchased Crisco EVOO from a Wal-Mart in Antioch multiple times in 2017 and 2018 in reliance on the packaging's purportedly false claim that it was entirely extra virgin olive oil …. These allegations are sufficient to withstand a motion to dismiss." *Id.* Similarly, here, the Complaint alleges that "[o]n November 14, 2021, Plaintiff Edie Golikov purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Tarzana, California," and "relied" on the misrepresentation on the packaging to form the belief that she was "purchasing unadulterated avocado oil," which "is not true" because "Defendant's avocado oil is adulterated" with "cheaper oils." FAC, ¶¶6, 21. "These allegations are sufficient to withstand a motion to dismiss." *Robinson,* 2019 U.S. Dist. LEXIS 78069, at \*9.

### D.    Defendant's materiality argument fails.

Defendant argues that Plaintiff's "allegations preclude a showing of materiality" because Plaintiff (a) "fail[s] to identify what renders the avocado oil 'adulterated'" and (b) "provides no indication that the [alleged misrepresentation] plays a substantial part in the reasonable consumer's decision to purchase the product." Mot. 14-15. Both parts of this argument are wrong. <u>First</u>, as detailed above, the Complaint repeatedly explains what renders the avocado oil adulterated: the fact that Defendant mixed in cheaper, non-avocado oils. *See, e.g.,* FAC, ¶53 ("Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils."). <u>Second</u>, the Complaint plausibly alleges that the "inaccurate labeling of Defendant's product is highly material to reasonable consumers." FAC, ¶21. The Complaint explains that "[c]onsumers who purchase avocado oil attach importance to the representation that the products contain only avocado oil, because they believe avocado oil has benefits over other oils." *Id.* "That importance is reflected in the fact that consumers choose to pay more for avocado oil products, because they believe that the products that they are receiving are unadulterated avocado oil, and not an oil that is adulterated with cheaper oils." *Id.* Also, not only are these allegations plausible, but as shown in Plaintiff's Motion for Class Certification, they are also now supported by substantial evidence.

Opposition to Motion to Dismiss            11       Case No. 2:24-cv-08211-RGK-MAR

Based on a survey of 152 consumers of avocado oil performed by Professor Maronick, 73.0% of consumers indicated that whether the product "contains only avocado oil and no other cooking oils" is either "extremely important" or "very important" to their purchasing decision.  Dkt. 36 at 4; Dkt. 36-2 (Maronick Decl.) ¶16.

## III.    Defendant's claim-specific arguments fail.

Defendant makes two arguments specific to particular claims.  Both fail.

### A.    Plaintiff properly pleads her intentional misrepresentation claim.

Defendant argues that "[Plaintiff]'s intentional misrepresentation claim … fails because she does not allege the requisite fraudulent intent."  Mot. 15.  But "knowledge and intent need only be alleged generally to state a valid claim." *Kowalsky v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 89379, at *7 (N.D. Cal. Aug. 10, 2011).  Here, the Complaint includes the required allegations. *See* FAC, ¶97 ("When Defendant made these misrepresentations, it knew that they were false at the time that it made them"); *id.*, ¶98 ("Defendant intended that Plaintiff and class members rely on these representations.").  No more is required at this stage. *Great Am. All. Ins. Co. v. Vill. Gardens Hoa*, 2023 U.S. Dist. LEXIS 55729, at *18 (C.D. Cal. Feb. 8, 2023) ("While the [] allegation as to intent or knowledge of falsity does not contain accompanying facts supporting this element, such factual allegations are unnecessary to overcome a motion to dismiss."); *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009) ("Rule 9(b)'s heightened pleading requirements do not apply to allegations regarding an accused's state of mind—thus, knowledge need only be alleged generally to state a valid claim for fraud."); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

The Complaint nonetheless provides more than what is required.  It provides factual support for Defendant's knowledge and intent, detailing why Defendant had every reason to know its avocado oil was adulterated with other oils.  For example, "Since at least 2020, the avocado oil industry has been aware that there are problems

Opposition to Motion to Dismiss          12      Case No. 2:24-cv-08211-RGK-MAR

RA0025

with adulteration and purity of avocado oils." FAC, ¶22 (citing news coverage of the problem). "As a distributor and seller of cooking oils, Defendant is aware of industry studies and trends" and would therefore be "aware of the problems with adulteration in the avocado oil market." *Id.*, ¶23. "Indeed, if Defendant tested its own avocado oils before putting them on the market, it would know that its avocado oils are adulterated. Given the pervasive problems with avocado oil adulteration, any reasonable maker, seller, or distributor of avocado oil would test its own products." *Id.*

### B.   Plaintiff properly pleads her request for punitive damages.

Defendant's motion to dismiss Plaintiff's request for punitive damages should be denied because "a request for punitive damages is not a 'claim' and is not the proper subject of a motion to dismiss." *Shimy v. Wright Med. Tech., Inc.*, 2014 U.S. Dist. LEXIS 101479, at *10 (C.D. Cal. July 23, 2014). "Fed. R. Civ. P. 54 underscores the impropriety of dismissing requests for punitive damages under Fed. R. Civ. P. 12(b)(6)" because "Rule 54(c) states: 'final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'" *Oppenheimer v. Sw. Airlines Co.*, 2013 U.S. Dist. LEXIS 85633, at *12 n.1 (S.D. Cal. June 17, 2013) (quoting Fed. R. Civ. P. 54(c)). "It thus makes little sense to require detailed factual allegations to support a demand for certain damages when such damages may ultimately be awarded even if they were never pled in the complaint." *Id.*

Moreover, when, like here, a Complaint states a viable claim for intentional misrepresentation, punitive damages are available for that claim. *Overholt v. CarMax Auto Superstores Cal., Ltd. Liab. Co.*, 2014 U.S. Dist. LEXIS 49142, at *16 (E.D. Cal. Apr. 7, 2014) (refusing to dismiss punitive damages claim "since Plaintiff's fraud claim survives Defendant's dismissal motion"); *Shimy*, 2014 U.S. Dist. LEXIS 101479, at *10-11 ("Because the Court rejects [defendant's] contention that plaintiffs' fraud claims are not pled with particularity, the Court would also find that plaintiffs' request for punitive damages should not be stricken.").

Opposition to Motion to Dismiss          13          Case No. 2:24-cv-08211-RGK-MAR

## IV.    Conclusion.

For the foregoing reasons, Defendant's motion should be denied in its entirety.

Dated: January 17, 2025                    Respectfully submitted,

By: /s/ *Richard Lyon*
Richard Lyon (CBN 229288)
rick@dovel.com
Stephen D. Andrews (CBN 354327)
stephen@dovel.com
Christin Cho (CBN 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

Opposition to Motion to Dismiss            14        Case No. 2:24-cv-08211-RGK-MAR

RA0027

**<u>CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION</u>**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,503 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

Dated: January 17, 2025

By: */s/ Richard Lyon*
Richard Lyon

RA0028

# EXHIBIT D

RA0029

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order Re: Plaintiff's Motion for Class Certification [DE 36]**

## I.   INTRODUCTION

On December 30, 2024, Eddie Golikov ("Plaintiff") filed the operative First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant"), asserting claims for violations of California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), and Unfair Competition Law ("UCL"), as well as breach of express warranty, negligent misrepresentation, intentional misrepresentation, and quasi-contract. (ECF No. 31.) She thereby seeks damages, as well as an injunction prohibiting Defendant from further deceptive conduct.

Presently before the Court is Plaintiff's Motion to Certify Class. (ECF No. 36.) For the following reasons, the Court **GRANTS** the Motion.

## II.   FACTUAL BACKGROUND

Plaintiffs allege the following in the FAC:

Avocado oil has become a popular culinary product due to its mild flavor, nutritional benefits, and ease of use in cooking. Consumers are often willing to pay a premium for avocado oil, particularly if it has not been adulterated with other, less desirable cooking oils. However, avocado oil is significantly more expensive to produce. As a result, manufacturers and retailers have an incentive to increase their profits by selling adulterated avocado oil that has been blended with poor quality or cheaper oils to unknowing customers. Indeed, since at least 2020, the industry has been aware of issues with adulteration.

Defendant is a retail chain that markets, distributes, and sells Great Value Avocado Oil (the "Product"). The front-label states, "Refined Avocado Oil" and includes graphics of avocados. The back-label lists "Avocado Oil" as the sole ingredient contained.

RA0030

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |



Plaintiff, a resident of Tarzana, California, purchased the Product on November 14, 2021. Plaintiff read and relied on the labels before making the purchase believing that the Product contained unadulterated avocado oil without any other ingredients. Plaintiff would not have purchased the Product or would have paid less for it if the she knew or believed that other ingredients were present.

But in October of 2023, almost two years after Plaintiff purchased and used the Product, researchers at the University of California, Davis ("UC Davis") published a scientific study concluding that the Product was likely adulterated. The researchers analyzed a few bottles of the Product produced around 2020 or 2021 and found that their fatty acid and sterol profiles were consistent with high levels of other cheaper oils. Though the researchers acknowledged that there were possible alternative explanations for these results, they ultimately concluded that the Product was likely adulterated, and thus, its labeling was inaccurate.

Defendant knew, or reasonably should known that the Product was adulterated. Given the widespread awareness of adulteration in the industry, Defendant tested, or reasonably should have tested the Product for adulteration. In so doing, it learned, or reasonably should have learned that the Product was adulterated, yet failed to address the problem.

RA0031

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

### III.  JUDICIAL STANDARD

As a threshold to class certification, the proposed class must satisfy four prerequisites under Federal Rule of Civil Procedure ("Rule") 23(a). First, the class must be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class as a whole. Fed. R. Civ. P. 23(a)(3). Finally, the proposed class representatives and proposed class counsel must be able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a)(4).

If all four prerequisites of Rule 23(a) are satisfied, a court must then determine whether to certify the class under one of the three subsections of Rule 23(b). Rule 23(b) sets forth three types of class actions: (1) prejudice class actions, when prosecuting separate actions would risk prejudice through inconsistent rulings or the impairment of other members' interests; (2) injunction class actions, when the class seeks injunctive relief as a whole; and (3) damages class actions, when common questions of law or fact that predominate over individual issues, and a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b).

A district court should permit a class action to proceed only if the court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). However, while some inquiry into the substance of a case may be necessary, it is improper to decide on the merits at the class certification stage. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). In analyzing whether the proposed class meets the requirements for certification, a court must take the substantive allegations of the complaint as true and may consider extrinsic evidence submitted by the parties to holistically evaluate the merits of class certification. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

### IV.  DISCUSSION

The crux of Plaintiff's claims is that Defendant falsely advertised that the Product contained only avocado oil, but was in fact, adulterated with cheaper oils. Plaintiff thereby contends that anyone who purchased the Product in the state of California within the applicable statute of limitations period may assert the same claims as her. Accordingly, she seeks to certify a class comprising "all persons who, while in the state of California and within the applicable statute of limitations period, purchased [the Product]." (Mot. at 4.) And because she seeks both injunctive relief and damages, she seeks to divide the class into two subclasses: a Rule 23(b)(2) injunction class and a Rule 23(b)(3) damages class. The Court first considers whether Plaintiff's proposed class satisfies the requirements of Rule 23(a).

RA0032

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

### A.    Rule 23(a)

1.    *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, "[t]he Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement." *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 232 (C.D. Cal. 2018) (citing *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003)).

According to Plaintiff, Defendant has sold the Product in more than two hundred stores across California for several years. Thus, it can be reasonably inferred that at least fifteen, if not forty, people purchased the Product and would therefore belong to the proposed class. Accordingly, Plaintiff argues that the numerosity requirement is satisfied.

Defendant disagrees, arguing that Plaintiff fails to provide evidence that the Product was adulterated. And absent that evidence, the only reasonable conclusion is that no one has any actionable claims against Defendant, and thus, the proposed class would have zero members. Defendant misses the mark. Defendant's argument is, in essence, that Plaintiff must establish liability before seeking class certification. This is plainly incorrect, as the ultimate question of liability is not an issue at the class certification stage. *Staton*, 327 F.3d at 954.

Defendant alternatively argues that even if the Product was adulterated, Plaintiff has failed to provide evidence establishing the number of people who purchased it. Indeed, Plaintiff does not provide any figures or estimates as to the number of people who purchased the Product. Instead, Plaintiff simply infers that at least fifteen people purchased the Product based on the number of Defendant's stores and the length of time the Product was sold. However, numerous courts have recognized that "common-sense assumptions and reasonable inferences" like these are sufficient to establish numerosity. *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Tr.*, 2016 WL 314400, at *6 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017)) (collecting cases). And it is reasonable to infer from these facts that the proposed class would have at least fifteen members, if not significantly more.

To be sure, Defendant argues that at least one court in this district has held that "[a] plaintiff cannot satisfy numerosity with mere 'common-sense [assumptions] and reasonable inferences.'" (Opp'n at 14–15, ECF No. 44 (citing *Wang v. Defense Tax Grp. Inc.*, 2020 WL 6204578, at *2 (C.D. Cal. Aug. 10, 2020)).) However, Defendant mischaracterizes that court's holding. In *Wang*, the court simply found that the plaintiff relied on baseless assumptions and speculations, thereby falling short of common sense and reason. *Wang*, 2020 WL 6204578, at *2 ("[T]his case is nothing like those Plaintiff cites applying 'common sense' and 'reasonable inferences' to conclude that the requirement of numerosity is met."). It

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

did not, as Defendant suggests, state that common sense assumptions and reasonable inferences are never sufficient.

Accordingly, the Court finds that the numerosity requirement is satisfied.

    2.    *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirements of Rule 23(a)(2) are "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Not *all* questions of fact or law need be common to the class; the existence of shared legal issues with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies is sufficient to satisfy commonality. *Id.* Rather, members of a putative class must share a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. In short, the requirements for finding commonality are minimal. *Hanlon*, 150 F.3d at 1020.

Plaintiff argues that the commonality requirement is satisfied because Defendant's liability to each class member turns on the same contention: whether the Product's labeling is likely to mislead a reasonable consumer into believing that avocado oil is the only cooking oil in the Product. And according to Plaintiff, this contention is common among all class members and would not require individual determinations, particularly given that consumer protection claims apply a "reasonable consumer" standard that does not "require the court to investigate class members' individual interaction with the product." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 290–91 (N.D. Cal. 2017) (internal quotations omitted).

Defendant disagrees, arguing that the commonality requirement is not satisfied because Plaintiff does not "prove" common adulteration, deception, and reliance. (Opp'n at 4–8.) Defendant misses the mark yet again.

At the class certification stage, Plaintiff need only present common questions of fact or law that are "*capable* of classwide resolution." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (emphasis added). Plaintiff need not prove that these questions of fact or law will have common resolutions in the class's favor; she need only establish that they may have common resolutions in the class's favor. *See id.* (holding that a plaintiff asserting class claims of employer misconduct need not provide proof of a company-wide policy at the class certification stage). Plaintiff has met this burden, as she has adequately alleged that the Product was adulterated through a common manufacturing process, a reasonable person would be deceived by the Product's labeling, and a reasonable person would have relied on the deceptive labeling to her detriment.

RA0034

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

Accordingly, the Court finds the commonality requirement satisfied.

      3.    *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). This does not require that the claims of the representative parties be identical to the claims of the proposed class members. *Hanlon*, 150 F.3d at 1020. Typicality requires only that "representative claims . . . [be] reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020. Rather, typicality focuses on whether the unnamed class members have injuries similar to those of the named plaintiffs, and whether those injuries result from the same injurious course of conduct. *Armstrong v. Davis*, 275 F.3d 849, 869 (2001). In practice, the commonality and typicality requirements of Rule 23 "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon.*, 457 U.S. 147, 158 n.13 (1982).

Plaintiff argues that the typicality requirement is satisfied because Plaintiff asserts the same claims as the proposed class—namely, for damages and injunctive relief against Defendant for purchasing falsely labeled adulterated avocado oil. Defendant disagrees, arguing that the typicality requirement is not satisfied because Plaintiff has not provided sufficient evidence of common adulteration so as to establish that her claims would be typical of her class. Defendant's argument appears to be a slight rephrasing of its commonality argument, which as explained above, fails because Plaintiff has adequately alleged that the Product was adulterated through a common manufacturing process. While it remains to be seen whether Plaintiff's common adulteration theory is correct, Plaintiff need not prove the theory at this stage.

Accordingly, the Court finds the typicality requirement satisfied.

      4.    *Adequacy*

Rule 23(a)(4) requires the Court to determine if the named plaintiffs and proposed class counsel will fairly and adequately protect the interests of the entire class. The adequacy requirement is satisfied if the named plaintiffs and their counsel (1) will prosecute the action vigorously on behalf of the class, and (2) do not have interests adverse to unnamed class members. *Hanlon*, 150 F.3d at 1020. "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Plaintiff argues that the adequacy requirement is satisfied because Plaintiff and her counsel assert that they have no conflicts of interest. (Golikov Decl. ¶ 5, ECF No. 36-1; Lyon Decl. ¶ 14, ECF No. 36-3.) Defendant disagrees, arguing that: (1) Plaintiff's assertions are insufficient; (2) Plaintiff failed to comply with discovery requests; and (3) Plaintiff's counsel violated the Local Rules by failing to meet and confer. Each of Defendant's arguments fail.

RA0035

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

Defendant first argues that Plaintiff and her counsel's assertions are insufficient because, according to Defendant, a court in the Western District of Washington held that there is "no adequacy where plaintiffs 'baldly assert' lack of conflicts." (Opp'n at 17 (quoting *Angulo v. Providence Health & Servs. – Wash.*, 2024 WL 3744258, at *11 (W.D. Wash. Aug. 9, 2024)).) But there are two issues with this argument. First, a lone district court case from the Western District of Washington is of little persuasive authority. Second, and perhaps most importantly, Defendant conveniently omits that the plaintiffs' assertions in that case were "baseless" because they "d[id] not cite evidence." *Angulo*, 2024 WL 3744258, at *11. Here, Plaintiff provided evidence through two declarations. Defendant does not argue or cite any authority suggesting that these declarations are in any way insufficient.

Defendant next argues that Plaintiff is inadequate for failing to comply with discovery requests. According to Defendant, Plaintiff "refus[ed] to appear for a properly noticed deposition [] without serving objections or obtaining a protective order." (Opp'n at 17–18.) Defendant argues that this refusal not only demonstrates Plaintiff's inadequacy, but also caused substantial prejudice that independently mandates denial of her Motion. *See Kandel v. Brother Intern. Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) ("[F]ailure to comply with . . . discovery requests . . . suggest[s] that the class representative is inadequate."); *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) (finding class certification inappropriate when defendant is deprived of opportunity to conduct pre-certification discovery). However, Defendant appears to grossly misrepresent the facts. Defendant gave only three business days' notice of Plaintiff's deposition. (Andrews Decl. ¶ 3, ECF No. 51-1.) Plaintiff objected, noting that this was insufficient notice. (Andrews Decl., Ex. 2, ECF No. 51-1.[1]) And Defendant not only acknowledged these objections, but seemingly agreed that Plaintiff was not obligated to appear, writing: "We absolutely understand and appreciate the objections. We will work with [counsel] to try to get a more appropriate schedule." (*Id.*)

Defendant finally argues that Plaintiff's counsel is inadequate for failing to meet and confer in compliance with the Local Rules, and this failure also justifies outright denial of the Motion. Under Local Rule 7-3, at least seven days prior to filing a calendared motion, the parties' counsel must meet and confer to discuss the substance of the motion and potential resolution. C.D. Cal. L.R. 7-3. The purpose of this rule is to promote judicial economy and the administration of justice, as it offers the parties an off-ramp by which they may "reach a resolution [and] eliminate[] the necessity for a hearing." *R.H. v. Cnty. of San Bernadino*, 2019 WL 10744836, at *1 (C.D. Cal. Sept. 25, 2019) (quoting *James R. Glidewell Dental Ceramics, Inc. v. Phila. Indem. Ins. Co.*, 2016 WL 9223782, at *1 (C.D. Cal. Sept. 12, 2016)). If the requirements of Local Rule 7-3 are not met, "[t]he Court may decline to consider [the] motion." C.D. Cal. L.R. 7-4; *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129

---

[1] Because Plaintiff filed Andrews' declaration and exhibits as a single document, citations to his exhibits share the same ECF number. Plaintiff is advised to comply with the Court's Standing Order requiring each exhibit to be filed as a separate attachment in the future.

RA0036

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

(9th Cir. 2002) ("The district court has considerable latitude in . . . enforcing local rules that place parameters on briefing.").

The Court originally struck Plaintiff's Motion for failing to include a meet and confer certification. Plaintiff refiled the Motion with a statement that the Motion was "made following the conference of counsel . . . which was conducted by email between January 7 and January 9, 2025." (Notice of Mot. at 1.) Defendant contends that this was "fabricated," as no such conferrals ever occurred. (Opp'n at 17.) There appears to be some dispute over the exact timing and substance of the parties' discussions about the Motion. But even if no meet and confer took place between January 7 and January 9, it does not appear that Defendant was prejudiced as a result. Defendant knew from the outset of the case the grounds that Plaintiff would seek class certification, as she stated them in her original Complaint. (Compl. ¶¶ 31–37, ECF No. 1.) And Defendant also knew when the Motion would be filed, as it engaged with discussions with Plaintiff about continuing the class certification deadline. (Stipulation for Extension, ECF No. 29.) To label Plaintiff's counsel inadequate or otherwise deny the Motion under these circumstances would be inappropriate.

Accordingly, the Court finds that the adequacy requirement is satisfied. Having found that each of the Rule 23(a) requirements are satisfied, the Court next considers whether the requirements are met for either a Rule 23(b)(2) injunction subclass or a Rule 23(b)(3) damages subclass.

### B.    Rule 23(b)(2)

A class is proper under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 564 U.S. at 360 (quoting another source). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360–61.

Plaintiff seeks to certify an injunction subclass that would seek injunctive relief "forbidding [Defendant] from claiming that its avocado oil contains only 'avocado oil,' unless the avocado oil actually is unadulterated and not contaminated with other oils." (Mot. at 17.) Plaintiff argues that this relief is appropriate for an injunction subclass because the requested injunction would apply uniformly to all members. Defendant disagrees, arguing that the injunction would only benefit future purchasers, not the past purchasers belonging to the injunction subclass. Defendant's argument fails.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

Defendant chiefly relies on *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014), a consumer protection action in which a district court found that an injunction class could not be certified because it solely comprised past purchasers that would not benefit from an injunction to eliminate deceptive labeling that targeted future purchasers. However, *Algarin* is readily distinguishable. In *Algarin*, the plaintiff alleged that a cosmetic product falsely stated that it lasted more than 24 hours. *Id.* But unlike "products such as dietary supplements where the purported benefits are hard to ascertain or take time to actualize," the duration of a cosmetic product is "readily discern[able]." *Id.* As a result, the class of past purchasers had all become aware that the product was deceptive and "[could] not be further deceived." *Id.* And because the past purchasers could not be further deceived, they could not benefit from an injunction eliminating that deceptive labeling. *Id.* Here, however, there is no indication that the Product's alleged adulteration is immediately discernable. If anything, the Product is similar to a dietary supplement whose benefits are hard to ascertain. Indeed, Plaintiff did not bring this action until she was made aware of potential adulteration by a scientific study years after her purchase. It stands to reason that past purchasers have bought the Product on multiple occasions, and without injunctive relief, may continue to purchase the Product not knowing that they may have been deceived. Thus, this argument fails.

Defendant alternatively argues that injunctive relief is inappropriate because Plaintiff and the proposed subclass primarily seek monetary damages. When a class seeks monetary damages, it may only be certified under Rule 23(b)(2) if the damages sought are "merely incidental to their primary claim for injunctive relief." *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). However, this is only applicable when the *same* class seeks both monetary damages and injunctive relief. It does not apply when a class is divided into injunctive and damages subclasses, as is the case here. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) (collecting Ninth Circuit cases upholding the certification of two separate classes). Thus, this argument also fails.

Having found the Rule 23(a) requirements satisfied, and both of Defendant's arguments against Rule 23(b)(2) certification unconvincing, the Court **GRANTS** Plaintiff's Motion as to Rule 23(b)(2) certification and certifies the proposed injunction subclass.

### C.    Rule 23(b)(3)

A damages class is proper under Rule 23(b)(3) if: (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). When evaluating whether common issues predominate, the operative question is whether a putative class is "sufficiently cohesive"

RA0038

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

to merit representative adjudication. *Id.* at 623. Though common issues need not be "dispositive of the litigation," *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001), they must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication" so as to justify "handling the dispute on a representative rather than on an individual basis" *Hanlon*, 150 F.3d at 1022.

As for superiority, courts consider several factors to determine whether a class action is superior to other methods of adjudication. These factors include: (1) the interest of each member in "individually controlling the prosecution or defense of separate actions"; (2) the "extent and nature of any litigation concerning the controversy already begun"; (3) the "desirability or undesirability of concentrating the litigation of the claims"; and (4) the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "This list is not exhaustive and other factors may be considered." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.* (internal citations and quotation marks omitted).

Plaintiff seeks to certify a damages subclass, seeking, among other things, damages and restitution. The Court addresses each predominance and superiority in turn.

      1.    *Predominance*

"In many consumer fraud cases, the crux of each consumer's claim is that a company's mass marketing efforts, common to all consumers, misrepresented the company's product." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234 (9th Cir. 2024). These cases are "well suited to class treatment under Rule 23(b)(3)," and "predominance is . . . readily met." *Id.*

As noted above, Defendant's liability to each subclass member turns on the same contention: whether the Product's labeling is likely to mislead a reasonable consumer into believing that avocado oil is the only cooking oil in the Product. The crux of each proposed subclass member's claim is that the Product labeling, common to all consumers, misrepresented the Product. In this manner, Plaintiff appears to bring a prototypical consumer fraud case that would easily meet the predominance requirement.

However, it is not enough that a plaintiff demonstrates that liability turns on common questions of law or fact. A plaintiff must also demonstrate that those common questions are not overshadowed by "individualized calculations" of damages. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017). To do so, a plaintiff must propose a model that identifies the damages stemming from the defendant's alleged wrongdoing that is "susceptible of measurement across the entire class." *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). "That some individualized calculations may be

RA0039

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

necessary does not defeat finding predominance." *Id.* And the "[c]alculations need not be exact." *Comcast*, 569 U.S. at 35.

Plaintiff proposes two damages models: a full refund model and a price-premium model. Defendant argues that neither model meets the predominance standard. The Court addresses each model in turn.

### a. *Full Refund Model*

Plaintiff proposes damages or restitution equal to the full purchase price of the Product, or in other words, the full refund value. Defendant argues that this model is inappropriate because it fails to account for the value of the Product received. Plaintiff disagrees, arguing that while a refund may not be appropriate for restitution, *see, e.g.*, *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014), it may be appropriate for damages. However, Plaintiff does not cite any authority on this point.[2] Thus, this model does not meet the predominance requirement.

### b. *Price-Premium Model*

Plaintiff alternatively proposes damages or restitution based on a price-premium model measured by calculating the price premium that Defendant charged consumers based on the Product's misrepresented label. Plaintiff suggests that this premium may be calculated by comparing the Product price to the price of Defendant's cheaper oils and submits expert testimony setting forth a proposed methodology for calculating that premium. Defendant argues that the expert's methodology is flawed and does not account for factors apart from the alleged mislabeling that may account for the difference in prices. Defendant misses the mark.

At the class certification stage, the plaintiff need not have a precise model; she need only propose one that is "susceptible of measurement across the entire class." *Just Film, Inc. v. Buono*, 847 F.3d at 1121. While Defendant quibbles over some of the finer points of Plaintiff's proposed model, Defendant does not dispute that the model is in fact capable of measuring damages or restitution for the entire subclass. Thus, this model meets the predominance requirement.

---

[2] To be sure, Plaintiff cites this Court's decision in a similar consumer protection case, *Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113, at *12 (C.D. Cal. Jan. 27, 2021), in which the Court allowed a plaintiff to proceed with a full refund model. However, *Amavizca* is distinguishable. In *Amavizca*, the plaintiff alleged that the defendant had falsely labeled a nutritional supplement as containing one compound, when it actually contained a completely different, non-interchangeable compound with different health properties. *Id.* at *1. The plaintiff thereby argued that the product was "worthless," justifying a full refund. *See Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *7 (C.D. Cal. Nov. 5, 2014) (allowing a full refund based on allegations that the flu-relief product at issue was actually a "worthless" "sugar pill"). Here, Plaintiff does not allege that the Product was mislabeled to the same extent. She alleges that the Product did contain avocado oil, just not as much as was promised. She therefore cannot argue that the product was "worthless" so as to justify a full refund in the same manner.

RA0040

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

2.    *Superiority*

Rule 23(b)(3) also requires the Court to assess whether class action is superior to other methods of adjudication. The requirement involves four subfactors: (1) the interest of each member in "individually controlling the prosecution or defense of separate actions"; (2) the "extent and nature of any litigation concerning the controversy already begun"; (3) the "desirability or undesirability of concentrating the litigation of the claims" here; and (4) the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Plaintiff argues that each of the four subfactors are met. Defendant disagrees, appearing to argue that only the third subfactor—the desirability of concentrating the litigation—is not met because the claims would require bottle-by-bottle testing, and the proposed subclass members would stand to recover less from a class action than if they pursued full refunds via Defendant's full "money-back guarantee." (Opp'n at 16 n.4.) Neither of Defendant's arguments are convincing.

First, there is no indication that bottle-by-bottle testing would be necessary in this case, because as noted above, Plaintiff's claims turn on allegations of common adulteration through a common process. Proving or disproving Plaintiff's claims would not require testing every single proposed subclass member's bottle as Defendant suggests. Second, there is no indication that the proposed subclass members would be able to get a full refund outside of the litigation. For starters, without the litigation, the vast majority of proposed subclass members presumably might never learn that the Product was potentially adulterated and would never seek a refund. And even if they did seek a refund, there is no indication that they would actually receive one. Defendant does not explain how its return policy would apply to the Product, particularly to proposed subclass members who may have purchased the Product years ago. Thus, Plaintiff meets the superiority requirement.

Having found the Rule 23(a) and Rule 23(b)(3) requirements satisfied, the Court **GRANTS** Plaintiff's Motion as to Rule 23(b)(3) certification and certifies the proposed damages subclass.

RA0041

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion. The Court certifies a Rule 23(b)(2) injunction subclass and a Rule 23(b)(3) damages subclass comprising "all persons who, while in the state of California and within the applicable statute of limitations period, purchased [the Product]."

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                     JRE/sf

RA0042

# EXHIBIT E

RA0043

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**         (IN CHAMBERS) Order Re: Motion to Dismiss Case [DE 37]

## I.    INTRODUCTION

On December 30, 2024, Eddie Golikov ("Plaintiff") filed a First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant") alleging: (1) violation of California's False Advertising Law ("FAL"); (2) violation of California's Consumer Legal Remedies Act ("CLRA"); (3) violation of California's Unfair Competition Law ("UCL"); (4) breach of express warranty; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) quasi contract. (ECF No. 31.) Plaintiff seeks injunctive relief, restitution, damages, and punitive damages.

Presently before the Court is Defendant's Motion to Dismiss. (ECF No. 37.) For the following reasons, the Court **GRANTS** Defendant's Motion **in part**.

## II.    FACTUAL BACKGROUND

Plaintiff alleges the following:

Avocado oil has become a popular culinary product due to its mild flavor, nutritional benefits, and ease of use in cooking. Consumers are often willing to pay a premium for avocado oil, particularly if it has not been adulterated with other, less desirable cooking oils. However, avocado oil is significantly more expensive to produce. As a result, manufacturers and retailers have an incentive to increase their profits by selling adulterated avocado oil that has been blended with poor quality or cheaper oils to unknowing customers. Indeed, since at least 2020, the industry has been aware of issues with adulteration.

Defendant is a retail chain that markets, distributes, and sells Great Value Avocado Oil (the "Product"). The front-label states, "Refined Avocado Oil" and includes graphics of avocados. The back-label lists "Avocado Oil" as the sole ingredient contained.

---

RA0044

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |



Plaintiff, a resident of Tarzana, California, purchased the Product on November 14, 2021. Plaintiff read and relied on the labels before making the purchase believing that the Product contained unadulterated avocado oil without any other ingredients. Plaintiff would not have purchased the Product or would have paid less for it if the she knew or believed that other ingredients were present.

But in October of 2023, almost two years after Plaintiff purchased and used the Product, researchers at the University of California, Davis ("UC Davis") published a scientific study concluding that the Product was likely adulterated. The researchers analyzed a few bottles of the Product produced around 2020 or 2021 and found that their fatty acid and sterol profiles were consistent with high levels of other cheaper oils. Though the researchers acknowledged that there were possible alternative explanations for these results, they ultimately concluded that the Product was likely adulterated, and thus, its labeling was inaccurate.

Defendant knew, or reasonably should known that the Product was adulterated. Given the widespread awareness of adulteration in the industry, Defendant tested, or reasonably should have tested the Product for adulteration. In so doing, it learned, or reasonably should have learned that the Product was adulterated, yet failed to address the problem.

RA0045

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

### III.   JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If a complaint fails to adequately state a claim for relief, the defendant may move to dismiss the claim under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges enough facts to allow the court to draw a reasonable inference that the defendant is liable. *Id.* A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Additionally, a plaintiff alleging a claim sounding in fraud must meet the more exacting pleading requirements of Rule 9(b), which require a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

### IV.   DISCUSSION

Plaintiff alleges that Defendant misrepresented that the Product contained unadulterated avocado oil when it was in fact adulterated with other, cheaper oils. Plaintiff thereby asserts seven claims: (1) violation of FAL; (2) violation of CLRA; (3) violation of UCL; (4) breach of express warranty; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) quasi contract.

Defendant moves to dismiss. Specifically, Defendant argues that the FAC should be dismissed in its entirety because Plaintiff fails to adequately allege falsity or materiality as required for each claim. Defendant further argues that, to the extent that the FAC should not be dismissed in its entirety, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

Court should dismiss Plaintiff's intentional misrepresentation claim and request for punitive damages for other, claim-specific deficiencies. The Court first considers falsity and materiality.

**A.    Falsity**

At the heart of a claim for violation of California consumer protection statutes, as well any related tort claim, is a misrepresentation or false statement. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).

Here, Plaintiff alleges that the Product label falsely stated that it contained only avocado oil when it was actually adulterated with other, cheaper oils, as confirmed by a UC Davis study. Defendant argues that Plaintiff fails to adequately allege that the Product label was actually false. Specifically, Defendant argues that: (1) Plaintiff's allegations are identical to allegations that were deemed insufficient in *McConnon v. Kroger Co.*, 2024 WL 3941340 (C.D. Cal. June 21, 2024); (2) Plaintiff's reliance on the UC Davis study is improper; and (3) Plaintiff has not provided sufficient details about the alleged adulteration. The Court addresses each argument in turn.

**1.    *McConnon v. Kroger Co.***

Defendant argues that *McConnon*, in which a district court dismissed similar consumer protection claims against a retailer for mislabeled avocado oil, "compels dismissal" in this case. (Mot. at 7.) Defendant's reliance on *McConnon* is misplaced.

For starters, *McConnon* is not binding authority, and therefore cannot "compel" this Court to do anything. But even putting that faux pas aside, *McConnon* is readily distinguishable and inapplicable to this case. The only relevant similarity between these cases is that both involve claims based on the alleged mislabeling of an avocado oil product. Beyond that, the allegations are significantly different. In *McConnon*, the plaintiff alleged that the product falsely implied that the avocado oil was "pure." *Id.* at *1. The district court found that these allegations were deficient for two reasons. First, the term "pure" was "nowhere to be found on the bottle." *Id.* at *3. And second, even if the term "pure" had been on the bottle, it appeared to be susceptible to multiple, widely varying definitions. *Id.* Without a set definition, "neither Defendant nor the Court [could] evaluate the merits of the claim[.]" *Id.*

Here, these deficiencies are not present. First, Plaintiff does not rely on any implied terms. Plaintiff challenges exactly what the label says: that the Product contains only one ingredient—avocado oil. Second, there is no credible dispute or ambiguity as to the meaning of the allegation. Plaintiff claims that, despite the label listing only one ingredient, there are other cheaper oils mixed in with the avocado

RA0047

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

oil. Both Defendant and the Court can easily evaluate the merits of such a claim. Thus, this argument fails.[1]

> 2.     *The UC Davis Study*

As noted above, the FAC heavily relies on a UC Davis study which found that a few bottles of the Product were likely adulterated. Defendant argues that Plaintiff's reliance on this study is improper and insufficient to establish falsity because: (1) the study is insufficient to plausibly establish that the exact bottle Plaintiff purchased in 2021 was adulterated; and (2) the study suggests alternative explanations for the results other than adulteration that render adulteration implausible. Both arguments fail.

Defendant first argues that Plaintiff must plausibly allege that the exact bottle of the Product she purchased was adulterated, and that her reliance on the UC Davis study which tested other bottles is insufficient. There are two problems with this argument. First, Defendant does not cite any authority suggesting that Plaintiff must test the particular bottle she purchased. Second, courts routinely allow plaintiffs in consumer protection cases to draw reasonable inferences that the particular item they purchased was defective or mislabeled based on tests of other samples. *See, e.g., Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69 (9th Cir. 2019) (finding laboratory testing of samples sufficient to plausibly allege that each item of a product line was misrepresented); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 WL 2215025, at *12 (N.D. Ill. 2017) (collecting cases).

Defendant alternatively argues the study does not plausibly show adulteration because the study acknowledges possible alternative explanations for its results. But the mere existence of alternative explanations is immaterial unless the explanations are "so likely to be true" as to render the plaintiff's theory implausible. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Naimi*, 798 F. App'x at 69 (declining to dismiss claims based on alternative explanations); *Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing claim based on a study that yielded "somewhat inconclusive" results). Defendant does not explain why these alternative explanations are more likely than the study's conclusion that the Product was adulterated, let alone so likely as to render adulteration implausible. Thus, these arguments fail.

---

[1] The Court notes that Defendant submitted via a Notice of Supplemental Authorities an order from the Eastern District of California, *Hawkins v. Walmart*. (Notice of Supplemental Authorities, ECF No. 61.) Defendant argues that this case also warrants dismissal, as that court dismissed a class action against Defendant over the same Product at issue here. But this case is similarly distinguishable. Much like in *McConnon*, the plaintiff in that case similarly relied on an implied representation of "purity," which the plaintiff neglected to define. Indeed, *Hawkins* relied on *McConnon* to conclude that the allegations were insufficient due to these defects. Again, these defects are not present here. Thus, *Hawkins* is of no moment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

3.    *Adulteration*

Defendant argues that Plaintiff's allegations are not pled with particularity as required by Rule 9(b) or provide adequate notice as required by Rule 8(a). Specifically, Defendant argues that Plaintiff alleged "only the conclusory fact that the [Product] is impure," but not "*how* and *why* it is impure," thereby failing to put Defendant on notice of any particular misconduct. (Mot. at 12.) Defendant misses the mark.

Contrary to Defendant's mischaracterizations, Plaintiff does not ambiguously allege that the Product is "impure." Rather, she unambiguously alleges that the Product was adulterated with other oils not disclosed on the label, citing the UC Davis study for support. This allegation is sufficient to state with particularity that the Product was adulterated, and put Defendant on notice of its alleged misconduct. While Defendant insists that Plaintiff should provide further details, such as the exact type of oil the Product was adulterated with, the amount of oil that was added, and how it was added to the Product, Defendant provides no authority suggesting that this level of detail is necessary. Thus, this argument also fails.

Having found that Defendant's arguments regarding falsity fail, the Court next considers Defendant's arguments regarding materiality.

**B.    Materiality**

It is not enough that a plaintiff allege that a misrepresentation was made; to state claims under California's consumer protection statutes and related torts, the plaintiff must also allege that the misrepresentation was material, meaning that "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (internal quotes omitted).

Plaintiff alleges that the mislabeling is material because consumers are willing to pay a higher price for avocado oil not adulterated with other oils, and consumers rely on the representation of the product packaging before making a purchase. Defendant argues that is insufficient, as Plaintiff's "failure to identify what renders the avocado oil 'adulterated' also precludes materiality." (Mot. at 14.) Defendant's argument appears to rest entirely on the flawed falsity argument that Plaintiff has failed to meticulously detail how, and to what extent the Product was adulterated. Because this argument fails, as described above, Defendant's materiality argument also fails.

Having found each of Defendant's arguments for dismissing the FAC in its entirety unconvincing, the Court considers Defendant's remaining claim-specific arguments for dismissal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

### C.    Intentional Misrepresentation

Under California law, the elements of an intentional representation claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 910–11 (E.D. Cal. 2020). In her sixth cause of action, Plaintiff alleges that Defendant intentionally misrepresented that the Product contained only avocado oil. Defendant argues that this claim fails because Plaintiff does not adequately allege that Defendant knowingly made the misrepresentation. The Court disagrees.

Here, Plaintiff meets the requirement by alleging that Defendant was aware, or reasonably should have been aware of industry-wide problems with adulteration of avocado oil, and accordingly conducted, or reasonably should have conducted tests on the Product through which it learned that the Product was adulterated, yet failed to act. Thus, the Court finds Plaintiff's intentional misrepresentation claim sufficiently pled.

### D.    Punitive Damages

Plaintiff requests punitive damages in her prayer for relief. To seek punitive damages, a plaintiff must allege that the defendant has been guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294. A corporate entity cannot commit willful and malicious conduct; therefore, punitive damages can only be sought if the plaintiff alleges that the wrongful conduct was committed, authorized, or ratified by an officer, director, or managing agent of the corporation. *Id.*; *Roper*, 510 F. Supp. 3d at 926.

Defendant argues that Plaintiff does not allege an "officer, director, or managing agent" of Defendant authorized or ratified the alleged misconduct which is requisite for punitive damages against an entity. Plaintiff's prayer for punitive damages merely rests on her consumer protection claims. Though, as discussed above, these allegations are sufficient to state her claims, they are insufficient for punitive damages, as Plaintiff makes no reference to any officer, director, or managing agent whatsoever. Accordingly, the Court **dismisses** Plaintiff's request for punitive damages.

RA0050

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

**V.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss **in part**. The Court **DISMISSES** Plaintiff's request for punitive damages.

**IT IS SO ORDERED.**

| | : | |
|---|---|---|
| Initials of Preparer | | JRE/sf |

RA0051

# EXHIBIT F

JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
JOSEPH ELIE-MEYERS (State Bar No. 325183)
  josepheliemeyers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
WALMART INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 2:24-CV-08211-RGK-MAR<br><br>Assigned to Honorable R. Gary Klausner<br><br>**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   June 9, 2025<br>Time:   9:00 a.m.<br>Ctrm.:  850<br><br>[*Declarations of Jacob M. Harper, Stacey Krsulic, and Kartikay Sahay; and Proposed Order filed concurrently*]<br><br>Action Filed: September 24, 2024 |

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0053

**TO THE COURT, PLAINTIFF, AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 9, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable R. Gary Klausner of the above-titled Court, located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, defendant Walmart Inc. (Walmart) will and hereby does move this Court for an order compelling plaintiff Edie Golikov to arbitrate her claims individually against Walmart and staying this case pending completion of the arbitration.

Walmart learned from Ms. Golikov's discovery responses, served on April 17, 2025, that she purchased Great Value Avocado Oil on Walmart's website, not in store as pleaded in her complaints. In making her online purchase, Ms. Golikov agreed to Walmart.com's Terms of Use. Those Terms of Use include an arbitration agreement that covers the claims at issue in this case. Walmart respectfully requests that the Court grant this Motion and enter an order compelling Ms. Golikov to arbitrate her claims individually and staying this action pending completion of the arbitration.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 24, 2025.

DATED:  May 9, 2025

DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper
    Jacob M. Harper

*Attorneys for Defendant*
*Walmart Inc.*

1

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0054

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 2

A.  Ms. Golikov Sues Walmart Based on a Purported In-Store Purchase .. 2

B.  The Court Certifies Two Related Classes. ........................................... 2

C.  Walmart Learns Ms. Golikov Purchased the Product Online. .............. 3

D.  Ms. Golikov Agreed to Walmart's Terms of Use. ............................... 3

1.  Walmart.com Provided Clear Notice ........................................ 4

2.  Ms. Golikov Unequivocally Assented. ..................................... 5

E.  The Terms of Use Require Arbitration of Disputes ............................. 5

III.  ARGUMENT ........................................................................................... 8

A.  The Court Should Compel Ms. Golikov to Arbitrate Her Claims. ........ 8

1.  Ms. Golikov Agreed to Arbitrate Her Claims. .......................... 9

2.  This Dispute Falls Within the Scope of the Terms of Use. ....... 12

B.  The Parties Delegated Any Issues Regarding Arbitrability. ............... 13

C.  This Action Should Be Stayed Pending Arbitration. .......................... 14

IV.  CONCLUSION ...................................................................................... 15

WALMART'S MOTION TO COMPEL ARBITRATION

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0055

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Amazon.com, Inc.,*
490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ...............................................1, 10, 12

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ...............................................................................................8

*Boardman v. Pac. Seafood Grp.,*
822 F.3d 1011 (9th Cir. 2016) ...............................................................................9

*Brennan v. Opus Bank,*
796 F.3d 1125 (9th Cir. 2015) ........................................................................8, 13

*Britton v. Co-Op Banking Grp.,*
4 F.3d 742 (9th Cir. 1993) ...................................................................................13

*Brown v. Walmart Inc.,*
2025 WL 400729 (W.D. Ark. Jan. 31, 2025)....................................................1, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
207 F.3d 1126 (9th Cir. 2000)......................................................................8, 9, 12

*Crawford v. Beachbody, LLC,*
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)......................................................11

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ...............................................................................................9

*Dlugolecki v. PeopleConnect, Inc.,*
2020 WL 13587803 (C.D. Cal. Nov. 9, 2020) ...................................................13

*Dohrmann v. Intuit, Inc.,*
823 F. App'x 482 (9th Cir. 2020).......................................................................11

*Duval v. Costco Wholesale Corp.,*
2023 WL 3852694 (N.D. Cal. June 5, 2023) ........................................................8

*First Options of Chi., Inc. v. Kaplan,*
514 U.S. 938 (1995) ...............................................................................................9

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.,*
97 F.4th 1190 (9th Cir. 2024)..............................................................................14

ii

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0056

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases (cont'd)**

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) .................................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ...............................................................................................13

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024)..................................................................9, 10, 11

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020).........................................................................11

*Maynez v. Walmart*,
  479 F. Supp. 3d 890 (C.D. Cal. 2020)..............................................................1, 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ................................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ..................................................................................................13

*Nail v. Lens.com, Inc.*,
  2024 WL 3723912 (C.D. Cal. June 20, 2024)......................................................10

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023)........................................................................8, 10, 11

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024) ............................................................................10, 14

*Preston v. Ferrer*,
  552 U.S. 346 (2008) ................................................................................................8

*Rogolino v. Walmart Inc.*,
  2025 WL 396453 (S.D. Fla. Feb. 4, 2025).........................................................1, 12

*Slaten v. Dick's Sporting Goods, Inc.*,
  2024 WL 1136399 (C.D. Cal. Feb. 2, 2024)........................................................14

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ..............................................................................................14

iii

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0057

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases (cont'd)**

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011)................................................................ 11

**Statutes**

9 U.S.C.
   § 2 ..................................................................................................................... 8, 9
   § 3 ......................................................................................................................... 14
   § 4 ........................................................................................................................... 9

iv

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0058

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Edie Golikov brought this action against defendant Walmart Inc. (Walmart), alleging its Great Value Avocado Oil is "adulterated." She claimed that she purchased the avocado oil on November 14, 2021, "from a Walmart store." Dkt. 1 at 7 ¶ 26; Dkt. 31 at 8 ¶ 26. The Court certified a class action on February 27, 2025. Dkt. 62. After class certification (in discovery responses served shortly after the certification order and answered April 17, 2025), ***Ms. Golikov revealed for the first time that her November 14 purchase was made through Walmart's website, pursuant to Terms of Use that include a mandatory arbitration agreement—contrary to her Complaint allegation that she purchased in-store***. *See* Harper Decl. ¶¶ 3–4, Ex. B at 2, Ex. C at 3–4.

The Terms of Use include an agreement to arbitrate with Walmart individually "ALL DISPUTES" that may lawfully be arbitrated. Krsulic Decl. Ex. A at 21. This agreement covers the present dispute based on Ms. Golikov's purchase of allegedly deceptively labeled avocado oil from Walmart's website. Courts across the country have compelled arbitration based on these same Terms of Use. *See, e.g.*, *Maynez v. Walmart*, 479 F. Supp. 3d 890, 893 (C.D. Cal. 2020); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275–76 (M.D. Tenn. 2020) (co-defendant Walmart's motion); *Rogolino v. Walmart Inc.*, 2025 WL 396453, at *3 (S.D. Fla. Feb. 4, 2025); *Brown v. Walmart Inc.*, 2025 WL 400729, at *1–2 (W.D. Ark. Jan. 31, 2025).

If Ms. Golikov objects to arbitration, the Terms of Use include a delegation clause reserving for the Arbitrator any threshold question of arbitrability. Ms. Golikov should therefore be required to arbitrate her claims individually against Walmart as she promised.

Walmart moves for an order compelling arbitration and staying this case.

1

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## II. FACTUAL BACKGROUND

### A. Ms. Golikov Sues Walmart Based on a Purported In-Store Purchase.

Ms. Golikov filed this lawsuit on September 24, 2024. Dkt. 1. In both her Class Action Complaint and First Amended Class Action Complaint (FAC), she alleges she purchased Walmart's Great Value Avocado Oil on November 14, 2021, "from a Walmart store." Dkt. 1 at 7 ¶ 26; Dkt. 31 at 8 ¶ 26. Ms. Golikov claims the Great Value Avocado Oil label misleads because other oils allegedly adulterate it. *See* Dkt. 31. On that basis, she alleges seven causes of action for violations of California's False Advertising Law (FAL), Consumer Legal Remedies Act (CLRA), and Unfair Competition Law (UCL); breaches of express and implied warranties and quasi-contract; and negligent and intentional misrepresentation. *Id.* at 11–19.

### B. The Court Certifies Two Related Classes.

On February 27, 2025, the Court granted Ms. Golikov's Motion for Class Certification. Dkt. 62. Ms. Golikov moved to certify a class of those who "purchased Great Value Avocado Oil" "while in the state of California." Dkt. 36 at 4. This Court certified: (a) a Rule 23(b)(2) class seeking potential injunctive relief regarding the product label, *see* Dkt. 62 at 8–9, and (b) a Rule 23(b)(3) class seeking potential damages, *see id.* at 9–12. The same day, the Court also granted in part and denied in part Walmart's Motion to Dismiss. Dkt. 63.

At the time, based on Ms. Golikov's representations that she purchased "from a Walmart store," Walmart argued in its opposition that the existence of the arbitration agreement defeated predominance given the differently situated in-store and online purchasers. *See* Dkt. 44 at 13–14. Walmart's Answer further noted class members may have made online purchases subject to arbitration. Dkt. 64 at 22.

2

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0060

**C.    Walmart Learns Ms. Golikov Purchased the Product Online.**

Walmart immediately served interrogatories (on March 18, 2025) inquiring into Ms. Golikov's purchase of Great Value Avocado Oil.  Harper Decl. ¶ 2 & Ex. A.

On April 17, 2025, when Walmart received Ms. Golikov's responses to its first set of interrogatories (propounded March 18, 2025), Walmart learned Ms. Golikov made her purchase on Walmart's website.  *See* Harper Decl. ¶ 3 & Ex. B.  Ms. Golikov revealed she used a Walmart.com "online account on November 14, 2021 to purchase Walmart Great Value Avocado Oil." *Id.* Ex. B at 16.  This disclosure contradicted her prior allegations that she purchased the oil "from a Walmart store" on November 14, 2021.  *See* Dkt. 1 at 7 ¶ 26; Dkt. 31 at 8 ¶ 26.  Walmart also asked Ms. Golikov to identify account information used for purchases on Walmart.com during the past six years, to which she responded with an email address and phone number she admits she used to create the account on Walmart.com.  Harper Decl. Ex. B at 2.  Additional responses (served on April 28, 2025) further confirmed her November 14 purchase was made online.  Harper Decl. Ex. C at 3–4 (asserting also that Ms. Golikov "was not in the practice of maintaining receipts" so she does not know when she visited a Walmart store).

**D.    Ms. Golikov Agreed to Walmart's Terms of Use.**

Based on the information provided in her interrogatory responses, Walmart determined Ms. Golikov repeatedly used the Walmart.com website for the purchase of Great Value Avocado Oil—not from a Walmart store as claimed in her complaints.  *See* Sahay Decl. ¶ 3.  Ms. Golikov made 11 online purchases of Great Value Avocado Oil, among at least 53 online purchases overall since March 27, 2020—for each of which Ms. Golikov separately agreed to Walmart.com's Terms of Use, which "govern [customers'] access to and use of all" Walmart's websites, including www.walmart.com.  Sahay Decl. ¶¶ 4–11; Krsulic Decl. ¶ 3 & Ex. A at 1.

3

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Those Terms of Use include binding arbitration provisions that apply here, as demonstrated by (1) clear notice and (2) unambiguous acceptance of the terms.

### 1.      Walmart.com Provided Clear Notice.

Ms. Golikov's 11 online purchases of Great Value Avocado Oil (and 53 total online purchases overall) meant she agreed to Walmart.com's Terms of Use at least as many times, including an agreement to arbitrate these claims. The Walmart.com purchase process provided Ms. Golikov the option to select the Great Value Avocado Oil (and any other online purchases) through one of two materially identical variants of a blue "Place Order" button. Sahay Decl. ¶¶ 4–11.[1] To execute her purchase, Ms. Golikov was presented with, required to read, and then pressed the "Place Order" button, examples of which appear below, *id.* ¶¶ 5, 9:



Immediately adjacent to the "Place Order" button, the screen advises in offset text standing out from the background in different colored font:

By placing this order, you agree to our <u>Privacy Policy</u> and <u>Terms of Use</u>.

_____

[1] Two types of transactions can occur on the site, and both are subject to the Terms of Use: clicking "Buy Now" to purchase a single item or using "Check Out" to purchase all items in a customer's shopping cart. Both require clicking the same blue "Place Order" button with the directly adjacent notice of the Terms of Use to complete the transaction. Sahay Decl. ¶¶ 4–11.

_____          4

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Id.* The underlined words "Privacy Policy" and "Terms of Use" are hyperlinked to their entire text. *Id*. ¶¶ 6, 10. Ms. Golikov was presented conspicuously and directly adjacent to the Place Order button with hyperlinks to Walmart's Privacy Policy and Terms—a notice that applied each of the at least 53 times she purchased products on Walmart.com, including the 11 times she purchased Great Value Avocado Oil on it.

### 2. Ms. Golikov Unequivocally Assented.

Ms. Golikov also unequivocally and unavoidably accepted the Terms of Use. As the blue "Place Order" button and immediately adjacent text make clear, Ms. Golikov read and agreed that "placing this order" via the Walmart.com website confirmed her intent to "agree to our Privacy Policy and Terms of Use," both of which were hyperlinked and underlined. *See* Sahay Decl. ¶¶ 6, 10. And the notification makes clear that placement of the order results in acceptance of the terms. The language makes unambiguously clear that Ms. Golikov was accepting the Terms of Use by "placing this order," which matches exactly the execution function of the "Place Order" button that Ms. Golikov pressed no fewer than 11 times for her Great Value Avocado Oil purchases.

In all instances in which Ms. Golikov now admits she purchased Great Value Avocado Oil—including the November 14, 2021, purchase on which she bases her claims in this lawsuit—she could have completed the transaction *if and only if* she assented through "Place Order," and the notification leaves no ambiguity whatsoever that the "Place Order" meant anything but placing the purchase order and accepting the Terms of Use.

### E. The Terms of Use Require Arbitration of Disputes.

The hyperlinked Terms of Use require, and Ms. Golikov agreed to, Walmart.com's then-applicable terms of use in making her purchase on

5

WALMART'S MOTION TO COMPEL ARBITRATION

RA0063

November 14, 2021—then, the May 28, 2021 Terms of Use. Krsulic Decl. ¶ 3 & Ex. A.[2]

The Terms of Use begin with this prominent, all-capital warning before the Introduction heading:

> **IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES**. THIS MEANS THAT YOU AND THE WALMART ENTITIES ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

Krsulic Decl. Ex. A at 1 (emphasis added). The arbitration provision appears under the heading "Disputes & Arbitration; Applicable Law." *Id.* at 24. That section again advises the reader upfront: "PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT." *Id.*

The Terms of Use require individual arbitration of all legally cognizable disputes, including every claim Ms. Golikov purports to bring here. The Terms of Use state:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, **ALL DISPUTES ARISING OUT OF OR RELATED TO**

---

[2] Walmart quotes from the version of the Terms of Use that applied during this pleaded purchase. All versions of the Terms of Use during Ms. Golikov's use of the site to purchase Great Value Avocado Oil, however, were materially identical as to the arbitration agreement. *See* Krsulic Decl. ¶ 4 & Ex. B (collection of Terms of Use effective December 4, 2020, and March 11, 2021).

6

WALMART'S MOTION TO COMPEL ARBITRATION

RA0064

**THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION** BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY.  YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

*Id.* (emphasis added).

The Federal Arbitration Act (FAA) applies under the May 28, 2021 agreement.  *Id.* at 25 ("These Terms of Use will be governed by and construed under the laws of the United States (including federal arbitration law)[.]").

The May 28, 2021 Terms of Use also provide for JAMS to administer the arbitration under "the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014." *Id.* at 24.  JAMS Streamlined Rule 8(b) in May 2021 stated that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."  Harper Decl. ¶ 5 & Ex. D at 5.  The modern Streamlined Rule 8(b) is copied verbatim from the Terms that have been in effect in 2021. *Id.* ¶ 6 & Ex. E at 6–7.

7

WALMART'S MOTION TO COMPEL ARBITRATION

RA0065

Upon receipt of Ms. Golikov's admission that she actually purchased the product via Walmart.com and not in a store, Walmart followed with this motion to compel arbitration.

## III.    ARGUMENT

### A.    The Court Should Compel Ms. Golikov to Arbitrate Her Claims.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The goal was "to ensure the enforcement of arbitration agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011). An "emphatic federal policy . . . favor[s] . . . arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The FAA applies to contracts like the one here "evidencing a transaction involving commerce." 9 U.S.C. § 2. Products and services sold under contract through "a virtual marketplace" fall under the FAA's auspices. *See Duval v. Costco Wholesale Corp.*, 2023 WL 3852694, at *1–2 (N.D. Cal. June 5, 2023) (collecting cases). The parties' contract itself states that federal arbitration law applies. *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (applying FAA's procedural rules based on choice-of-law clause).

***"The court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."*** *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis added); *see Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (similar). When both elements exist, the FAA "leaves no

8

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985), and citing 9 U.S.C. §§ 2, 4).

Both elements are satisfied, and the Court should compel Ms. Golikov to arbitrate her claims against Walmart.

### 1.    Ms. Golikov Agreed to Arbitrate Her Claims.

In determining whether the parties have agreed to arbitrate, the Court should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). In particular, a court should look to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman v. Pac. Seafood Grp.,* 822 F.3d 1011, 1018 (9th Cir. 2016). California law applies under the parties' agreement. Krsulic Decl. Ex. A at 22.

Courts have classified various types of possible online agreements according to their enforceability. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). First, "browsewrap agreement[s]" purport to bind users just because they browse a website. *Id.* Second, "clickwrap agreement[s]" "require[] users to click on an 'I agree' box" after being presented with the terms and conditions. *Id.* Third, the one relevant here, is a "sign-in wrap agreement," in which users to click a button to advance near text akin to "By continuing, I agree to the terms of service." *See id.* Walmart offers, and Ms. Golikov consented to, a sign-in wrap agreement.

Sign-in wrap agreements are enforceable when they give proper "inquiry notice." *Keebaugh*, 100 F.4th at 1014. To give such notice, (1) "the website [must] provide[] reasonably conspicuous notice of the terms to which the consumer will be bound," and (2) "the consumer [must] take[] some action, such as clicking a button

9

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* In other words, the website must give reasonably conspicuous notice, and the user must unambiguously manifest assent. *E.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 475, 477 (9th Cir. 2024) (clicking a "Place Order" button unambiguously manifested assent because website had statement, "By submitting your order you . . . agree to our privacy policy and terms of use"); *Oberstein*, 60 F.4th at 517 (finding reasonably conspicuous notice and unambiguous manifestation of assent in substantially identical circumstances).

Walmart and Ms. Golikov easily satisfy both requirements.

***Reasonably Conspicuous Notice.*** First, in making her November 14, 2021 purchase of Great Value Avocado Oil on Walmart's website (along with the other 10 online purchases of this product), Walmart provided and Ms. Golikov received reasonably conspicuous notice of the Terms of Use. *See Keebaugh*, 100 F.4th at 1014. As detailed above, directly adjacent to the purchase button, Ms. Golikov was informed of the consequences of choosing to place her order: "By placing this order, you agree to our Privacy Policy and Terms of Service." The underlined words are hyperlinked to allow customers to review the full text of the terms. Sahay Decl. ¶¶ 6, 10. Walmart's purchase button and its close-neighboring Acknowledgement Language are "uncluttered," allowing the notice to stand out. *See Nail v. Lens.com, Inc.*, 2024 WL 3723912, at *3 (C.D. Cal. June 20, 2024). The Acknowledgement Language font is in a different color from the purchase button immediately above or below it, and it is also different from the plain white background. Sahay Decl. ¶¶ 5, 9. Walmart capitalizes the phrase Terms of Use, calling attention to it, and it underlines it—the "customary design element[] denoting the existence of a hyperlink." *Nail*, 2024 WL 3723912, at *3–4 (quoting *Keebaugh*, 100 F.4th at 1021). Any reasonable user would understand that clicking a hyperlink would take her to the full text of the Terms. *E.g.*, *Anderson*, 490 F. Supp. 3d at 1275 (Walmart's "Terms of Use were not hidden from the consumer,

10

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and they required assent and confrontation" because "hyperlink was prominently displayed directly above the 'Place Order' button"). Such conspicuous notice confirmed to Ms. Golikov that her clicking the purchase button manifested her assent to the Terms of Use.

*Unambiguous Manifestation of Assent.* Second, by clicking "Purchase Order" on November 14, 2021, along with her 10 other online purchases of Great Value Avocado Oil, Ms. Golikov unambiguously manifested her asset to the Terms of Use. The notice language and execution button leave no doubt: "By placing this order," Ms. Golikov agrees to the Terms of Use; and Ms. Golikov pressed "Place Order," the result of which demonstrated her unambiguous decisions to buy the product and assent to the Terms of Use. She assented to the Terms of Use as much as she bought the product. The Ninth Circuit has repeatedly endorsed sign-in wrap agreements similar to Walmart's. *See Oberstein*, 60 F.4th at 515–16 (affirming order compelling arbitration where, as here, "to place an order, a user must click on the "Place Order" button, directly above which is language stating: 'By continuing past this page and clicking "Place Order", you agree to our Terms of Use'"); *Keebaugh*, 100 F.4th at 1014, 1020 (sign-in wrap stating "By tapping 'Play,' I agree to the Terms of Service"); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) ("each time he clicked the 'Place Order' button . . ., [ ] directly above the button, the website displayed the phrase, 'By clicking "Place Order," you agree to our Terms of Use'").[3]

_____

[3] *See also Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (reversing denial of motion to compel arbitration where user was "required to click a 'Sign In' button, directly under which the following language appeared: *'By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement'"); accord Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient" to establish assent); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014).

11

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

To remove any doubt, courts across the country have repeatedly upheld Walmart's Terms of Use for claims based on the same sign-in wrap process described here. *See Maynez*, 479 F. Supp. 3d at 893 (compelling arbitration where plaintiff made online purchase and brought UCL, FAL, and CLRA claims alleging inaccurate pricing); *Anderson*, 490 F. Supp. 3d at 1275–76 (granting Walmart's motion to compel arbitration based on Terms of Use; "the agreement is of the type that has regularly been upheld by courts"); *Rogolino*, 2025 WL 396453, at *3 (concluding Terms of Use were "sufficiently conspicuous to place Plaintiff, and other members of the putative class, on inquiry notice"); *Brown*, 2025 WL 400729, at *1–2 (finding Terms of Use applied and sending plaintiff's argument about exception to the agreement to the arbitrator under the delegation clause).

In short, Ms. Golikov "was provided with notice of the Terms of Use at the time of her purchase, she was informed that" by placing her order "she would be agreeing to those terms, and she then placed her order, affirmatively consenting to the Terms of Use and Arbitration Provision." *Maynez*, 479 F. Supp. 3d at 898. The Acknowledgement Notice states, "By placing this order, you agree . . .," and the button states "Place order," which matches the Acknowledgement Notice's language. Sahay Decl. ¶¶ 5, 9. She proceeded to make her purchases after receiving this notice and thus unambiguously manifested her assent to the Terms of Use.

**2.    This Dispute Falls Within the Scope of the Terms of Use.**

The Terms of Use encompass Ms. Golikov's present claims against Walmart based on her purchase of the avocado oil on Walmart's website. In particular, the Terms of Use "govern [customers'] access to and use of" Walmart's websites, including www.walmart.com, and apply to "ALL DISPUTES . . . RELATED TO . . . ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART." Krsulic Decl. Ex. A at 21. The Ninth Circuit recognizes such arbitration provisions encompassing "[a]ny dispute, controversy[,] or claim" reach "broad and far" in scope, *Chiron Corp.,* 207 F.3d at 1131, and parties "routinely

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0070

use[]" such clauses "to secure the broadest possible arbitration coverage," *Britton v. Co-Op Banking Grp.,* 4 F.3d 742, 745 (9th Cir. 1993); *see also Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *3 (C.D. Cal. Nov. 9, 2020) (approving similar "exceedingly broad" provision).

Ms. Golikov's claims plainly "aris[e] out of" and "relate[] to" her "relationship" with Walmart—indeed, all the claims are premised on her purchase of the allegedly adulterated Great Value Avocado Oil on Walmart's website. *See* Krsulic Decl. Ex. A at 21; Dkt. 31 at 8 ¶ 26 (alleging purchase of oil on November 14, 2021); Harper Decl. Ex. B at 2 (confirming November 14, 2021 purchase was made online); Harper Decl. Ex. C at 3–4 (same). The purchases are within the scope of the broad arise-out-of and related-to language as interpreted by the Ninth Circuit. Ms. Golikov agreed, in all 11 of her online purchases of Great Value Avocado Oil, to arbitrate any dispute regarding those purchases.

And, if any doubt exists, it should "be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

All of Ms. Golikov's claims belong in arbitration.

**B.     The Parties Delegated Any Issues Regarding Arbitrability.**

Any arguments Ms. Golikov may present as to scope, enforceability, or applicability of the arbitration provision must be decided by the arbitrator, not the Court, as the parties agreed.

As the Ninth Circuit recognizes, "gateway issues"—over the validity and enforceability of arbitration provisions—"can be expressly delegated to the arbitrator where the parties clearly and unmistakably [delegate arbitrability to an arbitrator]." *Brennan,* 796 F.3d at 1130. In such a situation, "a court may not override the contract," "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

13

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick*, 93 F.4th at 481; *accord Slaten v. Dick's Sporting Goods, Inc.*, 2024 WL 1136399, at *5 (C.D. Cal. Feb. 2, 2024). That is true because, as discussed, the JAMS Rules delegate to the arbitrator the authority to decide "disputes over the formation, existence, validity, interpretation or scope of the" arbitration agreement. Harper Decl. Ex. D at 5, Ex. E at 6–7.

Because Walmart's relevant Terms of Use incorporate JAMS's rules, the parties have delegated to the arbitrator all "gateway" questions regarding arbitrability. *See Patrick*, 93 F.4th at 481. The same is true under Walmart's current Terms of Use, which delegate arbitrability decisions to the American Arbitration Association (AAA). Krsulic Decl. ¶ 5 & Ex. C; *see Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) (incorporating AAA rules is clear and unmistakable evidence of delegation).

The Court should therefore compel arbitration for further consideration by the arbitrator of the applicability of the Terms of Use to any individual dispute.

**C.    This Action Should Be Stayed Pending Arbitration.**

The FAA states that, once a court is satisfied a suit should be moved into arbitration, it "shall . . . stay the trial of the action until . . . arbitration has been had." 9 U.S.C. § 3. "That plain statutory text requires a court to stay the proceeding" pending the arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Because Ms. Golikov's claims against Walmart fall within the scope of the parties' arbitration agreement, the Court should stay this action.

//

//

//

//

//

14

WALMART'S MOTION TO COMPEL ARBITRATION

## IV.    CONCLUSION

Walmart respectfully requests that the Court enter an order compelling Ms. Golikov to arbitrate her claims individually and staying this action pending completion of the arbitration.

DATED:  May 9, 2025                    DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper
Jacob M. Harper

*Attorneys for Defendant*
*Walmart Inc.*

WALMART'S MOTION TO COMPEL ARBITRATION

15

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0073

## CERTIFICATION

The undersigned counsel of record for Walmart Inc. certifies that this brief contains 4,359 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

/s/ Jacob M. Harper

Jacob M. Harper

WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0074

# EXHIBIT G

UNITED STATES DISTRICT COURT                                    JS6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | June 10, 2025 |
|----------|------------------------|------|----------------|
| Title | *Edie Golikov v. Walmart Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|------------------------|------------------------------------------------|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**  **(IN CHAMBERS) Order Re: Motion to Compel Arbitration and Stay Proceedings [DE 66]**

## I.    INTRODUCTION

On December 30, 2024, Edie Golikov ("Plaintiff") filed her First Amended Complaint ("FAC") against Walmart Inc. ("Defendant"), asserting claims for: (1) Violation of California's False Advertising Law; (2) Violation of California's Consumer Legal Remedies Act; (3) Violation of California's Unfair Competition Law; (4) Breach of Express Warranty; (5) Negligent Misrepresentation; (6) Intentional Misrepresentation; and (7) Quasi-Contract (ECF No. 31.)

Presently before the Court is Defendant's Motion to Compel Arbitration and Stay Proceedings. (ECF No. 66.) For the following reasons, the Court **GRANTS** the Motion.

## II.    FACTUAL BACKGROUND

Defendant sells Great Value Avocado Oil, which reads "Refined Avocado Oil" on the front label and lists avocado oil as the sole ingredient. But according to Plaintiff, the oil is adulterated with other, less desirable oils, making the label false and misleading.

In the FAC, Plaintiff alleged that she purchased the avocado oil "from a Walmart store" on November 14, 2021. (FAC ¶¶ 6, 26.) However, in an April 17, 2025 reply to Defendant's interrogatory, Plaintiff revealed that she had actually purchased that avocado oil from Defendant's website. (Harper Decl., Ex. B at 2, ECF. No. 66-3.)

When a user makes a purchase from Defendant's website, they are prompted with a "Place Order" button. (Sahay Decl. ¶¶ 4–11., ECF. No. 66-7.) Immediately adjacent to the button, text reads "By placing this order, you agree to our Privacy Policy and Terms of Use." (*Id*. ¶¶ 5, 9.) The underlined words are hyperlinked to Defendant's Privacy Policy and Terms. (*Id*. ¶¶ 6, 10.) Thus, by clicking the button, Plaintiff assented to Defendant's terms, including provision 20, which reads:

RA0076

UNITED STATES DISTRICT COURT                          JS6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | June 10, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart Inc.* | | |

EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION. The arbitration will be administered by Judicial Arbitration Mediation Services, Inc. ("JAMS") pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the "JAMS Rules") and as modified by this agreement to arbitrate.

(Krsulic Decl., Ex. A § 20, ECF No. 66-9.)

Section 8(b) of the JAMS Streamlined Arbitration Rules & Procedures states:

Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.

(Harper Decl., Ex. D § 8(b), ECF No. 66-5.)

### III.  **JUDICIAL STANDARD**

Under the Federal Arbitration Act ("FAA"), courts are required "to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure . . . to perform the same' is not at issue)." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 4). The role of the court is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA establishes federal policy that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*

RA0077

UNITED STATES DISTRICT COURT                                    JS6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | June 10, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart Inc.* | | |

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Once an arbitration agreement is found to be valid, enforceable, and applicable, the court shall stay the action pending the outcome of the arbitration or dismiss the action. 9 U.S.C. § 3; *Sparkling v. Hoddman Constr. Co. Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

## IV.    DISCUSSION

Defendant asks that the current action be compelled to arbitration pursuant to the "sign-in wrap" arbitration agreement with Plaintiff. Plaintiff does not deny the existence of the arbitration agreement, nor does she deny her assent to the agreement when she made her online purchase. Rather, Plaintiff argues that the agreement does not apply to the in-store purchases she made which are not alleged in the FAC. In the alternative, Plaintiff argues that Defendant waived its right to compel arbitration. Plaintiff's arguments are unavailing.

### A.    Whether the Pleaded Purchase is Subject to the Arbitration Agreement

Plaintiff first argues that she purchased avocado oil in-person at physical stores, and the arbitration agreement does not apply to those purchases. Defendant disagrees, arguing that any dispute over the scope of the agreement must be delegated to the arbitrator. Defendant also argues that Plaintiff's claims arise out of her November 14, 2021 online purchase of avocado oil, rendering the purported in-store purchases irrelevant. The Court agrees with Defendant's second argument.

The facts *plead in the operative complaint* are those which the claims arise out of; this is a basic legal principle. In the FAC, Plaintiff consistently refers to her November 14, 2021 purchase of avocado oil. She does not mention or assert any claims based on any other purchases. And as Plaintiff now admits, this avocado oil was purchased online and is thus subject to the arbitration clause and class action waiver. Plaintiff cannot retroactively base her claims on a different purchase that was never mentioned in the FAC.

### B.    Whether Defendant Waived its Right to Compel Arbitration

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Parties opposing arbitration bear the burden of establishing waiver, which requires proving both "(1) knowledge of an existing right to compel arbitration" and "(2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023). "A determination of whether 'the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.'" *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Id.*

RA0078

UNITED STATES DISTRICT COURT                                    JS6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | June 10, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart Inc.* | | |

Plaintiff argues that Defendant waived its right to compel arbitration because it (1) could have reasonably interpreted Plaintiff's allegation that she purchased the avocado oil "from a Walmart store" as having suggested an online purchase, (FAC ¶¶ 6, 26), (2) could have used Plaintiff's name and address from the FAC to search its account database and determine that Plaintiff's purchase was made online, and (3) acted inconsistently with this known right by filing a motion to dismiss, engaging in discovery, and drafting a joint stipulation to structure the litigation. Defendant disagrees, arguing that the phrase "a Walmart store" does not provide reasonable notice that the purchase was made online, that Plaintiff's database arguments would impose an unreasonable duty on Defendant to fact-check Plaintiff's allegations, and that Defendant did not act inconsistently, because it moved to compel shortly after it learned that it had a right to do so. The Court agrees with Defendant.

First, Defendant did not know it had a right to compel arbitration until Plaintiff responded to its interrogatory on April 17, 2025. Plaintiff alleged in the FAC that she purchased avocado oil "from a Walmart store." (*Id.*) She did not indicate that she had purchased the avocado oil online. To be sure, Plaintiff argues that her phrasing could and should have been reasonably interpreted to include online purchases; Defendant's website is simply an "[online] Walmart store." But this is unreasonable. The phrase "from a store" ordinarily suggests a physical store, not an online one. To the extent that Plaintiff's phrasing could be interpreted to include online purchases, the allegation was vague and insufficient to provide Defendant with reasonable notice that the purchase took place online.

Second, there is no duty for Defendant to investigate whether Plaintiff made the purchase online, much less to cross-reference the purchase date in the FAC with those on the account, at least at this early stage of litigation. Plaintiff cites no convincing authority on this position. And absent such an authority, it would appear reasonable for Defendant to presume that opposing counsel is not misrepresenting the facts.

Third, each of the actions Plaintiff labels as inconsistent with the right to compel arbitration occurred *before* Defendant had reasonable notice of its right to compel arbitration. As discussed above, Defendant did not know of its right until Plaintiff's reply to its interrogatory on April 17, 2025. Plaintiff does not assert any actions inconsistent with the right of arbitration after this date. Indeed, Plaintiff herself even acknowledged that Defendant became "focused on its attempts to stay this action or move it to arbitration" after finding out the purchase was online. (Lyon Decl. ¶ 3, ECF No. 71-2.)

Until April 17, 2025, Defendant had no knowledge of its right to compel arbitration. After that date, Defendant acted consistently with that right and commenced no unnecessary litigation. Therefore, Defendant did not waive its right to compel arbitration. Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration.

RA0079

UNITED STATES DISTRICT COURT                                     JS6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | June 10, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart Inc.* | | |

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **STAYS** the action pending the outcome of the arbitration.

Additionally, the Court **DENIES** the parties' Joint Stipulation to Stay Class Notice (ECF No. 78) as **MOOT**.

All pending dates and hearings are vacated and taken off-calendar. The Court hereby ORDERS this matter removed from the Court's active caseload pending the outcome of arbitration proceedings and/or further order of this Court. Counsel are ordered to jointly file a status report every 90 days from the date of this order and within 14 days from the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                         JRE/sf

---

RA0080

# EXHIBIT H

RA0081

JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  jamesmoon@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
JOSEPH ELIE-MEYERS (State Bar No. 325183)
  josepheliemeyers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
WALMART INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 2:24-CV-08211-RGK-MAR<br><br>Assigned to Honorable R. Gary Klausner<br><br>**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION TO CLARIFY, OR TO DECERTIFY CLASSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   July 28, 2025<br>Time:   9:00 a.m.<br>Ctrm.:  850<br><br>[*Declaration Jacob Harper and Proposed Order filed concurrently*]<br><br>Action Filed: September 24, 2024 |

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

**TO THE COURT, PLAINTIFF, AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 28, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable R. Gary Klausner of the above-titled Court, located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, defendant Walmart Inc. (Walmart) will and hereby does move this Court for an order (1) clarifying its June 10, 2025 Order Re: Motion to Compel Arbitration and Stay Proceedings (Dkt. 81) (Order), pursuant to Federal Rule of Civil Procedure (Rule) 60(a); or (2) decertifying the previously certified classes, pursuant to Rule 23(c).

Walmart requests clarification to confirm that the previously certified classes were decertified pursuant to the Order given that the Court ordered the only named plaintiff and class representative in this action to individually arbitrate her claims based on the parties' arbitration clause and class action waiver. The Order also denied the parties' joint stipulation to stay class notice as moot and removed all pending dates and hearings from the calendar.

In the alternative, if the Court did not intend for the Order to decide the status of the classes, Walmart hereby moves to decertify the classes based on the new Order, which negates the various requirements of Federal Rule of Civil Procedure 23 that Ms. Golikov has a continuing burden to show remain satisfied even after an initial certification order.

Absent dismissal, clarification, or decertification, the headless classes will remain in limbo. An order now will also moot Walmart's pending Rule 23(f) petition to the Ninth Circuit regarding its substantive challenges to class certification.

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

2

RA0083

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Jacob Harper and exhibits thereto, and any other evidence or argument which the Court may consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 17 and 20, 2025.  Harper Decl. ¶ 6.

DATED:  June 30, 2025                              DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper
    Jacob M. Harper

*Attorneys for Defendant*
*Walmart Inc.*

---

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

3

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0084

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................... 9

II.   SUMMARY OF RELIEF REQUESTED ..................................................... 10

III.  FACTUAL BACKGROUND ...................................................................... 12

    A.   Ms. Golikov Sues Walmart Based on an In-Store Purchase. ............. 12

    B.   The Court Certifies Two Related Classes. ......................................... 12

    C.   Walmart Learns Ms. Golikov Purchased the Product Online. ............ 12

    D.   Ms. Golikov and Others May Be Bound by Walmart's Terms. ......... 13

    E.   Walmart Moves to Enforce the Terms of Use. .................................. 14

IV.   ARGUMENT ............................................................................................. 14

    A.   The Court Should Clarify its Order (Rule 60). .................................. 14

    B.   The Classes Should Be Decertified (Rule 23). .................................. 16

        1.   Ms. Golikov Is Atypical and Inadequate. ................................. 17

        2.   Class Counsel Is Inadequate to Represent the Class. ............... 18

        3.   Numerosity Is Not Satisfied. .................................................... 21

        4.   Commonality and Predominance Are Not Satisfied. ............... 21

        5.   Superiority Is Not Satisfied. ..................................................... 24

V.    CONCLUSION .......................................................................................... 25

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0085

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrews v. Ring LLC,*
   2020 WL 6253319 (C.D. Cal. Sept. 17, 2020) (Klausner, J.) ...........................16

*Archer v. Carnival Corp.,*
   2021 WL 4798695 (C.D. Cal. May 14, 2021) (Klausner, J.)........................9, 22

*Avilez v. Pinkerton Gov't Servs., Inc.,*
   596 F. App'x 579 (9th Cir. 2015)................................................................8, 16

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015)..........................................................................22

*Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.,*
   2012 WL 5199458 (N.D. Cal. Oct. 22, 2012)...................................................23

*Conde v. Open Door Mktg., LLC,*
   223 F. Supp. 3d 949 (N.D. Cal. 2017)...............................................................16

*Conde v. Sensa,*
   2018 WL 4297056 (S.D. Cal. Sept. 10, 2018) .......................................21, 22, 23

*Coneff v. AT&T Corp.,*
   673 F.3d 1155 (9th Cir. 2012)...........................................................................19

*Del Campo v. Mealing,*
   2011 U.S. Dist. LEXIS 158019 (N.D. Cal. Sept. 29, 2011)..............................19

*ESC-Toy Ltd. v. Sony Interactive Ent. LLC,*
   2024 WL 1335079 (N.D. Cal. Mar. 27, 2024) ..................................................19

*Estrella v. Freedom Fin. Network, LLC,*
   2012 WL 214856 (N.D. Cal. Jan. 24, 2012) ..................................................8, 17

*Franco v. City of W. Covina,*
   2019 WL 8161159 (C.D. Cal. Nov. 14, 2019) ...................................................13

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982) ..........................................................................................15

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

5

RA0086

*Kihn v. Bill Graham Archives LLC*,
  2022 WL 18935 (9th Cir. Jan. 3, 2022)......................................................................21

*Kingsepp v. Wesleyan Univ.*,
  142 F.R.D. 597 (S.D.N.Y. 1992)...............................................................................19

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017)...................................................................................15

*Leuenhagen v. Carnival Corp.*,
  2021 WL 12311039 (C.D. Cal. Oct. 27, 2021) (Klausner, J.) .....................9, 22

*Lim v. Helio, LLC*,
  2012 WL 12884439 (C.D. Cal. Apr. 18, 2012)...............................................20, 24

*Macedonia Distrib., Inc. v. S-L Distrib. Co., LLC*,
  2020 WL 610702 (C.D. Cal. Feb. 7, 2020) ..............................................................16

*Marlo v. United Postal Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ......................................................................................15

*Nutraceutical Corp. v. Lambert*,
  586 U.S. 188 (2019) ......................................................................................................15

*Pablo v. ServiceMaster Glob. Holdings, Inc.*,
  2011 WL 3476473 (N.D. Cal. Aug. 9, 2011)...................................................23, 24

*Parrish v. Gordon Lane Healthcare, LLC*,
  2023 WL 7107267 (C.D. Cal. Sept. 26, 2023)........................................................20

*Parrish v. Gordon Lane Healthcare, LLC*,
  2024 WL 4875326 (C.D. Cal. Sept. 9, 2024)......................................................8, 23

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024).......................................................................................23

*Quinlan v. Macy's Corp. Servs., Inc.*,
  2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) ......................................................16

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  2007 WL 9706548 (C.D. Cal. Nov. 14, 2007) ........................................................14

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ......................................................................................19

6

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

RA0087

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................... 15

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ............................................................................ 22

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................... 19

*Sweet v. Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005) .............................................................. 19

*Tan v. Grubhub, Inc.*,
  2016 WL 4721439 (N.D. Cal. July 19, 2016) .................................. 16, 17, 23, 24

*Tattersalls, Ltd. v. DeHaven*,
  745 F.3d 1294 (9th Cir. 2014) .................................................................. 14

*UnifySCC v. Cody*,
  2025 WL 1474757 (N.D. Cal. May 21, 2025) ............................................ 15

*Van v. LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................... 20, 21, 23

*White v. Experian Info. Sols.*,
  993 F. Supp. 2d 1154 (C.D. Cal. 2014) ............................................... 17, 18

*Yellow Rose Prods., Inc. v. Pandora Media, LLC*,
  2023 WL 6932560 (C.D. Cal. Sept. 29, 2023) ........................................... 14

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .................................................................. 23

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0088

**Rules**

Federal Rule of Civil Procedure
23 .......................................................................................................9, 11, 15, 17
23(a)........................................................................................................15, 20
23(a)(1) ........................................................................................................10
23(a)(2) ........................................................................................................20
23(a)(4) ...................................................................................................10, 16
23(b)........................................................................................................10, 15
23(b)(2) ..............................................................................................14, 20, 21
23(b)(3) ...................................................................................................*passim*
23(f) .......................................................................................................*passim*
60 ...........................................................................................................13, 14
60(a).....................................................................................................9, 13, 14

8

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0089

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On June 10, 2025, the Court granted defendant Walmart Inc. (Walmart)'s Motion to Compel Arbitration because plaintiff Edie Golikov purchased the avocado oil product at issue from Walmart.com, not in a brick-and-mortar "store" as she and her attorneys previously misrepresented.  As the Court ruled, this means Walmart.com's Terms of Use, including both an individual arbitration agreement and a class action waiver, bind Ms. Golikov.  *See* Dkt. 81 (Order) at 1–2.

Ms. Golikov's days as a class representative are over.

Those of the classes are numbered.

With the sole named plaintiff and class representative required to arbitrate her claims individually and subject to a class action waiver, the certified classes as a whole lack any viable class representative.  The class action aspect of this litigation has effectively disintegrated, an outcome recognized by numerous other courts in similar situations.  *E.g.*, *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (vacating class certification that included class members subject to class action waiver and finding class representative inadequate and atypical); *Parrish v. Gordon Lane Healthcare, LLC*, 2024 WL 4875326, at *1 (C.D. Cal. Sept. 9, 2024) (court "could not certify a class that included members who both had and had not waived their class action rights by signing an arbitration agreement"); *Estrella v. Freedom Fin. Network, LLC*, 2012 WL 214856, at *5 (N.D. Cal. Jan. 24, 2012) (decertification required when all class representatives agreed to arbitrate).  Indeed, the Court's Order implied as much when it held "moot" the then-pending stipulation to delay class notice, and vacated all remaining deadlines in this class action.  Order at 5.

Had Ms. Golikov's counsel simply disclosed the possible arbitration issue in a complaint with more candor (they knew about the issue before the case was filed), these classes would never have been certified, the Court and parties would not sit in

9

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0090

this unusual position, and this case may never have been filed.  As it stands, however, this action remains in procedural limbo, with a class waiver and arbitration agreement disqualifying the sole class representative and tainting the certified classes.  The Court should take action to remedy the situation.

Walmart respectfully moves the Court for one of two orders:  (1) clarification that the Order dissolved the previously certified classes; or (2) formal decertification of the classes in this action.  Any such order now would also moot Walmart's Rule 23(f) petition to the Ninth Circuit regarding its substantive challenges to class certification, which still remains pending given the still certified classes.

## II.    SUMMARY OF RELIEF REQUESTED

***Request 1:  Clarification.***  First, Walmart requests that the Court clarify the necessary implication of the Order:  that the previously certified classes are no longer viable based on the new factual revelations, and the Order therefore *sub silentio* dissolved the classes.  The Court is empowered to clarify orders to reflect their implications under Federal Rule of Civil Procedure 60(a).[1]

***Request 2:  In the Alternative, Decertification.***  Second, in the alternative, if the Court did not intend implicitly to decide the status of the classes, Walmart hereby moves to decertify the classes based on the new Order, which negates the various Rule 23 requirements Ms. Golikov must prove remain satisfied even after certification:

- *Typicality and Adequacy of Ms. Golikov:*  Ms. Golikov's agreement to arbitrate individually and waive her right to participate in a class action negates the prior finding that her claims are "typical of the claims or defenses of the class," and

---

[1] The Order's findings regarding Ms. Golikov's late-disclosed arbitration agreement and class waiver also suggest dismissal in whole may be appropriate for lack of jurisdiction. *See, e.g.*, *Archer v. Carnival Corp.*, 2021 WL 4798695 at *4 (C.D. Cal. May 14, 2021) (Klausner, J.) ("because Plaintiff[] signed valid and enforceable class action waivers, CAFA was not and could never be a proper basis for jurisdiction"); *accord Leuenhagen v. Carnival Corp.*, 2021 WL 12311039, at *2 (C.D. Cal. Oct. 27, 2021) (Klausner, J.).

10

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

precludes typicality and adequacy under Rule 23(a)(3) and 23(a)(4).  This alone warrants decertification.

- *Inadequacy of Class Counsel:*  The Court, the parties, and the classes are in the current position because of class counsel's confusing and misleading pleadings in which they obscured the arbitration issues through their too-cute-by-half definition of "store."  Class counsel knew or should have known about the online purchase issue before this litigation began, but disclosed it only after certification.  The apparent motivation derives from class counsel's desire to litigate (and try to obtain substantial attorneys' fees in a class action context) rather than arbitrate individually.  Class counsel cannot meet their duty of undivided loyalty to Ms. Golikov and any arbitration-bound class members when their financial interests militate in favor of class litigation (and thus favor the interests of class members who did not waive class adjudication).  Class counsel's conduct and potential conflicts mean that they cannot "fairly and adequately protect the interests" of all class members in violation of Rule 23(a)(4).

- *Numerosity:*  Given the existence of an arbitration agreement that applies to an unknown number of absent class members, Ms. Golikov and the class no longer satisfy even the low burden of showing the "class is so numerous that joinder of all members is impracticable," violating Rule 23(a)(1).

- *Commonality/Predominance:*  Neither class can establish the requisite commonality and predominance requirements.  Any purported class proceeding will require individualized analyses of which class members may be subject to the arbitration agreement and class action waiver in Walmart.com's Terms of Use, and this kind of highly individualized analysis will "predominate over any questions affecting only individual members," as required to maintain any Rule 23(b) class.

- *Superiority:*  The class action mechanism is not a superior method of adjudication of a Rule 23(b) classes given the practical difficulties of sorting out every purported class members' ability to litigate.

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Substitution of a new plaintiff will not save the claims.* Ms. Golikov's Counsel has suggested that a substitute plaintiff may be added to this case. Walmart disputes she could even do so at this stage. But even if she could, many of the Rule 23 deficiencies raised by the Order—class counsel conflicts and inadequacy, numerosity, predominance, superiority—are not saved by a new substitute plaintiff.

Walmart respectfully requests the Court (1) clarify that the Order decertified the classes, or (2) decertify them now.

## III.    FACTUAL BACKGROUND

### A.    Ms. Golikov Sues Walmart Based on an In-Store Purchase.

Ms. Golikov filed this lawsuit on September 24, 2024. Dkt. 1 (Compl.). In both her Class Action Complaint and First Amended Class Action Complaint (FAC), she alleges she purchased Walmart's Great Value Avocado Oil on November 14, 2021, "from a Walmart store." Compl. ¶ 26; Dkt. 31 (FAC) at 8 ¶ 26. Ms. Golikov claims the oil is mislabeled because other oils allegedly adulterate it.

### B.    The Court Certifies Two Related Classes.

On February 27, 2025, the Court granted Ms. Golikov's Motion for Class Certification. Dkt. 62. This Court certified: (a) a Rule 23(b)(2) class seeking potential injunctive relief regarding the product label, and (b) a Rule 23(b)(3) class seeking potential damages. *Id.* Walmart filed a Rule 23(f) petition seeking leave to appeal the certification order on March 13, 2025. No. 25-1685 (9th Cir.). The petition remains pending.

### C.    Walmart Learns Ms. Golikov Purchased the Product Online.

On March 18, 2025, Walmart served interrogatories inquiring into Ms. Golikov's purchase of the oil. Harper Decl. ¶ 2 & Ex. A. In responses served on April 17, 2025, Ms. Golikov revealed for the first time that she made her purchase on Walmart's website. *See* Harper Decl. ¶ 3 & Ex. B. Ms. Golikov revealed she used a Walmart.com "online account on November 14, 2021 to purchase [the oil]." *Id.* Ex. B at 16. This disclosure contradicted her prior

12

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0093

allegations that she purchased the oil "from a Walmart store" on November 14, 2021.  Compl. ¶ 26; FAC ¶ 26.  Class counsel later produced in discovery an invoice printed on September 19, 2024—days before this action was filed on September 24, 2024—showing the sole pleaded purchase of avocado oil was made online on Walmart.com.  *See* Harper Decl. ¶ 5 & Ex. D.

### D.  Ms. Golikov and Others May Be Bound by Walmart's Terms.

Based on the information provided in her interrogatory responses, Walmart confirmed Ms. Golikov repeatedly used the Walmart.com website for the purchase of Great Value Avocado Oil—not from a Walmart store as claimed in her complaints.  *See* Dkt. 66-7 (Sahay Decl.) ¶ 3.  Ms. Golikov made 11 online purchases of Great Value Avocado Oil, among at least 53 online purchases overall since March 27, 2020—for each of which Ms. Golikov separately agreed to Walmart.com's Terms of Use.  *Id.* ¶¶ 4–11; Dkt. 66-8 (Krsulic Decl.) ¶ 3 & Dkt. 66-9 (Ex. A) at 1.

As explained in the declarations submitted in support of Walmart's motion to compel arbitration, Walmart.com's Terms of Use require individual arbitration of all legally cognizable disputes.  *See* Krsulic Decl. ¶ 3 & Ex. A (individual arbitration provision and class action waiver); *see also id.* ¶¶ 4–5, Dkt. 66-10 (Ex. B), Dkt. 66-11 (Ex. C) (versions from 2021 and present).  Walmart.com customers agree to the Terms of Use when they purchase a product on Walmart's website.  For instance, customers may assent by selecting a blue "Place Order" button during the checkout process.  Sahay Decl. ¶¶ 4–11.  Adjacent to the "Place Order" button, the customer is presented with the following notice:  "By placing this order, you agree to our Privacy Policy and Terms of Use," and the underlined terms are hyperlinks to the full agreements.  *Id.* ¶¶ 5–6, 9–10.

Walmart customers may also agree to various other arbitration agreements in connection with other Walmart programs.  Krsulic Decl. ¶¶ 3–5 & Ex A at 13; Ex. B at 13, 39; Ex. C. at 12.  For instance, Walmart offers a Walmart Pay feature within

13

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

its mobile app, which allows customers to make purchases at physical Walmart stores, whether after buying them on the app remotely or in-store while shopping in lieu of cash or a credit card. *Id.* Like with Walmart.com purchases, the customer is required to agree to Walmart's Terms of Use when using Walmart Pay. *Id.*

### E.    Walmart Moves to Enforce the Terms of Use.

Following the revelation that Ms. Golikov made her pleaded purchase on Walmart.com, Walmart moved to enforce the arbitration agreement and class action waiver. *See* Dkt. 66. The Court granted Walmart's Motion to Compel Arbitration on June 10, 2025. The Court found that Ms. Golikov's online purchase—the only purchase pleaded in the First Amended Complaint—is subject to the arbitration agreement and class action waiver contained in the Terms of Use, that Ms. Golikov's allegations were not reasonably interpretable as alleging an in-store purchase, and Walmart was entitled to rely on Ms. Golikov's Counsel "not misrepresenting the facts." Order at 1–4. The Order further denied the parties' joint stipulation to stay class notice (Dkt. 78) as moot and removed all pending dates and hearings from the calendar. *See id.* at 5.[2]

## IV.    ARGUMENT

### A.    The Court Should Clarify its Order (Rule 60).

First, Walmart requests clarification of the Order under Rule 60(a) as to whether the order decertified the classes.

Rule 60(a) allows the Court to address an "oversight or omission" in a "judgment, order, or other part of the record." The rule "may be invoked to 'make a[n order] reflect the actual intentions and necessary implications of the court's decision,'" and the rule further "permits 'clarification and explanation . . . even in the absence of ambiguity.'" *Franco v. City of W. Covina*, 2019 WL 8161159, at *1–

---

[2] On June 13, 2025, Walmart notified the Ninth Circuit of the arbitration order in connection with the pending Rule 23(f) petition. Dkt. 12.1 ("If and when the district court confirms that the class cannot remain certified, Walmart intends to voluntarily dismiss its 23(f) petition.").

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2 (C.D. Cal. Nov. 14, 2019) (citations omitted). Rule 60 permits courts to make clarifications and corrections "in prior orders; the Ninth Circuit has construed this rule broadly to allow courts to clarify previous orders 'to reflect the necessary implications of the original order, provided that the clarification adheres to 'the intent behind the original judgment.'" *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, 2023 WL 6932560, at *2 (C.D. Cal. Sept. 29, 2023) (citation omitted); *see also Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297–98 (9th Cir. 2014) (approving district court use of Rule 60(a) to clarify prior orders); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 2007 WL 9706548, at *2 (C.D. Cal. Nov. 14, 2007) (clarification under Rule 60(a) permissible even where notice of appeal filed (citation omitted)).

The Order implies the classes have been decertified by automatic operation of law. The Order states Ms. Golikov—the sole named plaintiff and class representative—agreed to arbitrate and waive her right to bring a class action, and plainly cannot represent this class (or litigate in court at all). Indeed, the Order also denied as moot the parties' joint stipulation to stay class notice, vacated all pending dates and hearings and removed them from the calendar, and removed the matter from the Court's active caseload. *See* Order at 5. Although the Order implies the class claims have disappeared, it does not explicitly say what is to happen to the certified classes.

The Court should now confirm the prior class are decertified. Absent further action, it is unclear, for example, what absent class members are meant to do in this litigation, which is stayed without any deadlines or plan for class notice. It is also unclear whether the pending Rule 23(f) appeal as to the certified classes is necessary at all. The certified classes will remain in limbo without a class representative unless the Court addresses these issues.

Walmart therefore respectfully requests that the Court clarify that, through its Order, the Rule 23(b)(2) and Rule 23(b)(3) classes have been decertified—as a

RA0096

necessary implication of Ms. Golikov being required to individually arbitrate her claims against Walmart.  Doing so will also moot the Rule 23(f) petition.

**B.     The Classes Should Be Decertified (Rule 23).**

If the Court did not intend to decertify the classes through its Order, Walmart respectfully suggests the Court should do so now.  Decertifying the classes falls well within the Court's authority, and the current posture of the litigation confirms the classes merit decertification.

"A district court may decertify a class at any time," *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009), in the light of subsequent developments in the litigation, *see Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  "In considering a motion to decertify, 'a court must reevaluate whether the class continues to meet the requirements of Rule 23,'" including "the four requirements of Rule 23(a)" (numerosity, commonality, typicality, and adequacy) and "at least one of the three different types of classes set forth in Rule 23(b)."  *UnifySCC v. Cody*, 2025 WL 1474757, at *3 (N.D. Cal. May 21, 2025) (citations omitted). ***Ms. Golikov, as "[t]he party seeking to maintain class certification[,] bears the burden of demonstrating that the Rule 23 requirements are satisfied, even on a motion to decertify."*** *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (emphasis added) (citing, *inter alia*, *Marlo v. United Postal Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011)), *rev'd on other grounds by Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019).

Here, the Court's Order compels decertification.  The Order establishes that this case is unsuited to class adjudication because Ms. Golikov and an unknown number of other class members are bound by arbitration agreements and class action waivers that forbid their participation in this action.  Thus, it is no longer possible for the certified classes in this case to meet the requirements of Rule 23.

---

16

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 1.   Ms. Golikov Is Atypical and Inadequate.

As the Court ruled in its Order, Ms. Golikov—the sole named plaintiff and class representative—must arbitrate her claims against Walmart and has waived her right to participate in a class action.  She also cannot serve as class representative.

"Rule 23(a)(3) requires that 'the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *Tan v. Grubhub, Inc.*, 2016 WL 4721439, at *2 (N.D. Cal. July 19, 2016) (modifications in original).  Rule 23(a)(4) imposes a similar requirement "that the class representative will 'fairly and adequately protect the interests of the class.'" *Id.*  "[T]he typicality and adequacy inquiries tend to significantly overlap[.]" *Id.* (citation omitted).

Ms. Golikov is subject to arbitration and a class action waiver, making her incapable of representing any class members that are not.  Her claims are, by definition, atypical of *any* litigation class because they must be arbitrated individually and cannot be part of a class action.  And she is inadequate to represent those that do not have arbitration agreements.

Case law is legion that a class representative is atypical and inadequate when he or she is differently situated from class members on issues of arbitrability and class waivers.  *See Avilez*, 596 F. App'x at 579 (vacating class certification that included class members subject to class action waiver and finding class representative not subject to same waiver inadequate and atypical); *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 960 (N.D. Cal. 2017) (named plaintiffs atypical because not bound by arbitration unlike some of class); *Quinlan v. Macy's Corp. Servs., Inc.*, 2013 WL 11091572, at *3 (C.D. Cal. Aug. 22, 2013) (no typicality where plaintiff asserted claims that class members may have to arbitrate); *Macedonia Distrib., Inc. v. S-L Distrib. Co., LLC*, 2020 WL 610702, at *6 (C.D. Cal. Feb. 7, 2020) (collecting cases finding "typicality and adequacy of representation lacking where the lead plaintiff is not subject to the same arbitration provisions as the putative class."); *Andrews v. Ring LLC*, 2020 WL 6253319, at *3–

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0098

4 (C.D. Cal. Sept. 17, 2020) (denying class certification where plaintiff atypical and inadequate for not being bound to arbitration unlike bulk of the proposed class) (Klausner, J.).

Indeed, the arbitrability of the claims of the class representatives is sufficient on its own to decertify the class. In *Estrella*, 2012 WL 214856, at *5, the district court agreed with the defendants moving to decertify the class "that [class] certification is no longer warranted because the class representatives are obligated to arbitrate their claims." *Estrella*, 2012 WL 214856, at *5 (internal citations omitted). The court observed "the class [wa]s bereft of representatives, and therefore can no longer meet the requirements of Rule 23," and thereby granted the motion to decertify the class. *Id.* Here, Ms. Golikov's claims have been compelled to arbitration, and no viable class representative remains.

### 2. Class Counsel Is Inadequate to Represent the Class.

Class counsel's conduct in this case demonstrates they will not adequately protect the class's interests.

Class counsel is adequate where "counsel [does not] have any conflicts of interest with other class members" and "will . . . prosecute the action vigorously on behalf of the class[.]" *Tan*, 2016 WL 4271439, at *2 (citations omitted). "[A]dequacy of representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the likelihood that the suit is collusive.'" *Id.* (citation omitted) "[A] lawyer's unethical conduct, both before and during the litigation in question, is relevant to determining whether counsel is adequate under Rule 23." *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1170 (C.D. Cal. 2014) (collecting cases). Even "unethical conduct that does not directly harm the class or create an immediate conflict can also render counsel inadequate. . . '[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification.'" *Id.* at 1171

18

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

(citation omitted).  A "'serious doubt' about the adequacy of counsel exists 'when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case.'" *Id.* (citation omitted).  Inadequacy "often turns on counsel's integrity and candor." *Id.* (collecting cases).

Class counsel's "confusion" from the complaint (if not utter lack of candor) raises a serious fundamental questions going forward:  How can the parties or the Court trust class counsel to represent *an entire class* adequately if they failed to state accurately a core allegation *for a single individual*?  The procedural idiosyncrasies giving rise to this Motion are attributable to class counsel's "misrepresenting the facts" at the core of this class action (Order at 4):

- From the start of the case, counsel represented that Ms. Golikov purchased the avocado oil on November 14, 2021, "from a Walmart store."  Compl. ¶ 26; FAC ¶ 26.

- It was not until April 17, 2025—after the classes were certified based on the allegations of an in-store transaction—that Ms. Golikov's attorneys revealed in discovery that the purchase was made from Walmart.com.  *See* Dkt. 66-3 at 2.

- This obfuscation was not based on facts unknown to class counsel: class counsel produced in discovery an invoice printed on September 19, 2024—days before this action was filed on September 24, 2024—showing the sole pleaded purchase of avocado oil was made online on Walmart.com.  *See* Harper Decl. ¶ 5 & Ex. D.

Class counsel attempted to excuse its misstatements, but the Court rejected Ms. Golikov's attorneys' excuses.  As stated in the Order, the representation that Ms. Golikov bought the avocado oil "from a Walmart store" is not reasonably understood to include an online purchase.  Order at 4 ("Plaintiff argues that her phrasing could and should have been reasonably interpreted to include online purchases; Defendant's website is simply an '[online] Walmart store.'  But this is

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0100

unreasonable."). As the Court further observed, "it would appear reasonable for Defendant to presume that opposing counsel is not misrepresenting the facts," *id.*, but that is exactly what happened here—resulting in costly class-action litigation that class counsel knew or should have known from the start was barred by an arbitration agreement. *See Sweet v. Pfizer*, 232 F.R.D. 360, 371 (C.D. Cal. 2005) (deeming counsel inadequate and discussing *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602–603 (S.D.N.Y. 1992) where counsel's "pleadings 'obscured the issues'"); *ESC-Toy Ltd. v. Sony Interactive Ent. LLC*, 2024 WL 1335079, at *12–13 (N.D. Cal. Mar. 27, 2024) (finding breaches of duty of candor as a basis for disqualification).

Class counsel's adequacy is further thrown into doubt by the potential conflicts between counsel's clients. On the one hand, class counsel owes continuing duties of loyalty and zealous advocacy to their client Ms. Golikov and to an unknown number of class members who also agreed to arbitrate. On the other hand, class counsel owes the same duties to an unknown number of class members who have *not* agreed to arbitrate (if any). Class counsel must avoid even the "appearance of divided loyalties" involving the classes, *Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012) (citation omitted), yet the divergent economic incentives class counsel face between their arbitration-bound client and others create apparent if not actual substantial conflicts, *e.g.*, *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012) (acknowledging disincentives to individual arbitration as "the amounts [of the claims] are too small to be worth the trouble" (citation omitted)); *see also Staton v. Boeing Co.*, 327 F.3d 938, 970–72 & n.22 (9th Cir. 2003) (considering "class counsel's interest in fees"); *Del Campo v. Mealing*, 2011 U.S. Dist. LEXIS 158019 (N.D. Cal. Sept. 29, 2011) (disqualifying class counsel on basis of order finding conflict of interest due to representation of multiple classes in separate cases).

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

Class counsel has not given any indication of seeking to arbitrate on behalf of Ms. Golikov or anyone else, and class members required to arbitrate may reasonably question their attorneys' incentives to do so.

### 3.    Numerosity Is Not Satisfied.

The Order also effectively nullifies the basic requirement of numerosity.

"A party seeking class certification . . . must be prepared to prove that there are *in fact* sufficiently numerous parties . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  To date, the only evidence that Ms. Golikov has provided in support of numerosity is that Walmart has 280 stores in California and sells avocado oil in stores.  *See* Dkt. 51 at 7–8.  Even if the Court assumed that was sufficient before, circumstances have changed:  Ms. Golikov has put forward no evidence whatsoever about how many class members purchased avocado oil from stores, as opposed to online, or have agreed to the Walmart.com Terms of Use on other respects, where they may have agreed to arbitrate their disputes and waive participation in a class action.  This defeats numerosity.  *See, e.g., Parrish v. Gordon Lane Healthcare, LLC*, 2023 WL 7107267, at *3, *6–7 (C.D. Cal. Sept. 26, 2023) (numerosity not established given most class members signed arbitration agreements); *Lim v. Helio, LLC*, 2012 WL 12884439, at *2 (C.D. Cal. Apr. 18, 2012) (evidence of arbitration agreements raised issue of proof of numerosity).

### 4.    Commonality and Predominance Are Not Satisfied.

Individualized adjudication will be required for every single class member to determine who is bound by the Walmart.com Terms of Use.  This precludes commonality and predominance.

The commonality and predominance requirements apply to both the Rule 23(b)(2) and Rule 23(b)(3) classes certified in this case.  As an initial matter, Rule 23(a)'s commonality requirement applies to both classes and requires "questions of law or fact common to the class" to certify a class.  Fed. R. Civ. P. 23(a)(2).  Likewise, Rule 23(b)(3) requires that "the questions of law or fact common to class

21

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0102

members predominate over any questions affecting only individual members." The same predominance requirement is a "self-evident" element under Rule 23(b)(2). *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935, at *3 (9th Cir. Jan. 3, 2022) (reversing class certification where "there [was] an insufficient showing that common questions predominate[d]" for Rule 23(b)(2) class); Fed. R. Civ. P. 23(b)(2) (class action may be maintained if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole").

The central question relevant to commonality and predominance was set forth by the Supreme Court years ago: "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (citation omitted)

As revealed by the Order, there are substantial "[d]issimilarities within the proposed class," which would "impede the generation of common answers," *id.* (citation omitted), i.e., requiring that the Court conduct an individual, case-by-case, class-member-by-class-member analysis. .

• *Which Class Members Agreed to Arbitrate?* For every putative class member, the Court would have to determine whether the individual agreed to the arbitration agreement in Walmart.com's Terms of Use. *See* Order at 1–3; *Conde v. Sensa*, 2018 WL 4297056, at *10–11 (S.D. Cal. Sept. 10, 2018) (no predominance where Court required to determine "which of the class members may be subject to the arbitration provision"). Even as to individuals who purchased the item from an actual physical store, the Terms of Use may still (depending on the individual) govern the relationship between the accountholder and Walmart—including purchases made in a physical Walmart store through the Walmart Pay app (for

---

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

22

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

example, in lieu of cash or credit).  *See* Krsulic Decl. ¶¶ 3–5 & Ex A at 13; Ex. B at 13, 39; Ex. C. at 12.

- *Do Class Waivers Apply?*  Likewise, the Court would need to decide if each putative class member agreed to and is bound by the class action waiver in the Terms of Use, an analysis "highly dependent on context." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015); *Sensa*, 2018 WL 4297056, at \*11 (denying class certification where Court might have to determine whether arbitration and waiver clause "binds all, some, or none of the purchasers" (citation omitted)).

- *Who Has Standing?*  Class members with valid class waivers may not have standing to pursue their claims.  *See supra* n.1 (citing *Archer*, 2021 WL 4798695, at \*4; *Leuenhagen*, 2021 WL 12311039, at \*2).  The individual determinations necessary to evaluate class member standing further precludes predominance.  *See Van v. LLR, Inc.*, 61 F.4th 1053, 1068–69 (9th Cir. 2023) (vacating order granting class certification because predominance not satisfied when class members lacked Article III standing).

Compounding all these arbitration-related individualized issues:  there is a delegation clause, which vest the arbitrator with sole authority to make threshold decisions on disputes of arbitrability.  As explained in the Motion to Compel Arbitration, the Terms of Use include a delegation clause, which requires individualized arbitration over even threshold disputes relating to the arbitration agreement—including, e.g., whether the agreement applies to those individuals who purchased the item both online and at a physical store.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("gateway issues"—over the validity and enforceability of arbitration provisions—"can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably*'" do so (citation omitted) (emphasis in original)).  The Terms of Use include a provision incorporating arbitral

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

23

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0104

rules.  This constitutes a clear and unmistakable delegation clause as a matter of law. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480–81 (9th Cir. 2024).

Plaintiffs simply cannot meet their burden to show that any of these individual issues could be established on a classwide basis through common proof.

Courts considering these same issues routinely find a lack of commonality and/or predominance based on the need to sort out individualized issues relating to arbitration agreements and class action waivers.  *See, e.g.*, *Sensa*, 2018 WL 4297056, at *10–11 (no predominance because "the Court w[ould] be forced to determine which of the class members may be subject to the arbitration provision (*i.e.*, those who purchased online), and those who are not (*i.e.*, all others)"); *Parrish, LLC*, 2024 WL 4875326, at *1 (court "could not certify a class that included members who both had and had not waived their class action rights"); *Pablo v. ServiceMaster Glob. Holdings, Inc.*, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) ("a significant portion of this litigation would be devoted to discovering which class members signed [arbitration] agreements"); *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, 2012 WL 5199458, at *8 (N.D. Cal. Oct. 22, 2012) (no predominance given individual issues about "whether any particular station owner has already . . . agreed not to participate in any lawsuit—class or individual"); *Tan*, 2016 WL 4721439, at *5 (no commonality or predominance).

### 5.   Superiority Is Not Satisfied.

Superiority is also no longer satisfied.  A class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Dukes*, 564 U.S. at 362–63 (accord for 23(b)(2)).  "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (citations omitted).  As explained above, this case will require an individual analysis of every class member to determine which are subject to arbitration

24

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0105

agreements and class action waivers. As courts have found, that destroys superiority—just as much as it precludes predominance. *See Tan*, 2016 WL 4721439, at *5; *Pablo*, 2011 WL 3476473, at *2; *Lim*, 2012 WL 12884439, at *2.

## V.    CONCLUSION

Walmart respectfully requests that the Court enter an order (1) clarifying that the Order decertified the classes; or (2) decertifying the classes.

DATED:  June 30, 2025                    DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper
    Jacob M. Harper

*Attorneys for Defendant Walmart Inc.*

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0106

## CERTIFICATION

The undersigned counsel of record for Walmart Inc. certifies that this brief contains 5,295 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

/s/ Jacob M. Harper

Jacob M. Harper

WALMART'S MOTION TO CLARIFY,
OR TO DECERTIFY CLASSES

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0107

# EXHIBIT I

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | August 12, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Defendant's Motion to Decertify Class [DE 82]**

## I.    INTRODUCTION

On December 30, 2024, Edie Golikov ("Plaintiff") filed her operative First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant"), asserting claims for violations of California's False Advertising Law, Consumer Legal Remedies Act, and Unfair Competition Law, as well as breach of express warranty, negligent misrepresentation, intentional misrepresentation, and quasi-contract. (ECF No. 31.) On February 27, 2025, the Court granted Plaintiff's Motion to Certify Class, with Plaintiff as the sole class representative. (ECF No. 62.) Discovery revealed that Plaintiff was subject to an arbitration agreement and class action waiver, and the Court granted Defendant's Motion to Compel Arbitration and Stay Proceedings. (ECF No. 81.)

Presently before the Court is Defendant's Motion to Decertify Class. (ECF No. 82.) For the following reasons, the Court **GRANTS** the Motion.

## II.    FACTUAL BACKGROUND

In her FAC, Plaintiff alleged that she purchased adulterated avocado oil from "a Walmart store" on November 14, 2021. (FAC ¶¶ 6, 26.) However, in her April 17, 2025 reply to Defendant's interrogatory, Plaintiff admitted that she had actually purchased the avocado oil from Walmart.com on November 14, 2021. (Harper Decl., Ex. B at 2, ECF No. 66-3.) By purchasing the avocado oil from Walmart.com, Plaintiff agreed to Defendant's terms of use, which includes an arbitration agreement and class action waiver. (Sahay Decl. ¶¶ 4–11, ECF No. 66-7.)

## III.    JUDICIAL STANDARD

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th

---

RA0109

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | August 12, 2025 |
|---|---|---|---|---|
| Title | *Edie Golikov v. Walmart, Inc.* | | | |

Cir. 2009) ("A district court may decertify a class at any time."). A party seeking class certification bears the burden of demonstrating compliance with the class action requirements of numerosity, commonality, typicality, and adequate representation of the class interest, even on a motion to decertify a class. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 946–47 (9th Cir. 2011). A court may also consider subsequent developments in the litigation after originally certifying the class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

### IV.    DISCUSSION

On February 27, 2025, the Court granted class certification based on claims that the putative class members had purchased adulterated avocado oil from Defendant's stores. Based on her allegations that she purchased the avocado oil from "a Walmart store" on November 14, 2021, Plaintiff was named the sole class representative. After the class was certified, however, it was revealed that when Plaintiff bought the avocado oil on November 14, 2021, she purchased it on Walmart.com and, in doing so, agreed to arbitration and a class action waiver. In her FAC, Plaintiff does not allege that she purchased avocado oil from Defendant on any other date. Accordingly, on June 10, 2025, the Court compelled Plaintiff to arbitrate her claims.

Presently before the Court is Defendant's Motion to Decertify Class. For the following reasons, the Court finds that Plaintiff never had a valid claim to represent the class in court, and the class should be decertified. Accordingly, the Court **GRANTS** Defendant's Motion.

### A.    Class Requirements

Plaintiff bears the burden of demonstrating compliance with the class action requirements of numerosity, commonality, typicality, and adequate representation of the class interest. *See Marlo*, 639 F.3d at 946–47. Because the Court finds that Plaintiff has not met her burden of demonstrating typicality, the Court does not address the other three requirements.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Accordingly, when the named plaintiff is not subject to the same arbitration provisions as the unnamed plaintiffs, the typicality requirement fails. *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 Fed. App'x 579, 579 (9th Cir. 2015).

In Plaintiff's Motion to Certify Class, she proposed that she would represent a class of unnamed plaintiffs who had purchased avocado oil from Defendant's stores. While there are presumably unnamed plaintiffs who purchased the avocado oil from brick-and-mortar stores, there is no allegation that Plaintiff is one of them. As explained above, Plaintiff alleged only that she purchased avocado oil on November 14, 2021. But as it turned out, this purchase was made online, pursuant to an arbitration agreement and class action waiver. As such, Plaintiff does not appear to belong to the certified class.

RA0110

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | August 12, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart, Inc.* | | |

And further, even if Plaintiff did make other, in-store purchases of the avocado oil that might fall outside of that agreement and might qualify her as part of the class, she neglected to make any allegations about or assert any claims based on those purchases. Thus, Plaintiff does not fall within the certified class and therefore does not have any claims or defenses typical of the class.

Because Plaintiff, as the sole class representative, is atypical as to the unnamed plaintiffs, the Court finds that the class never should have been certified. The Court next considers whether another class representative may be substituted for Plaintiff.

### B.   Substitution

When a district court requires class representatives to arbitrate their claims, it should also decertify the class. *Estrella v. Freedom Fin. Network LLC*, 2012 WL 214856, at *4–5 (N.D. Cal. Jan. 24, 2012).

Defendant argues that because the Court previously compelled Plaintiff to arbitration, the Court should now decertify the class. Plaintiff disagrees, arguing that pursuant to *Sosna v. Iowa* and its progeny, substitution is proper because Plaintiff's individual claims were merely rendered moot. 419 U.S. 393, 402 (1975) (allowing substitution because a controversy still exists "between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot"); *see also Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747 (1976); *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977); *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974 (9th Cir. 2007).

Plaintiff misses the mark yet again. *Sosna* and its progeny only apply when the named plaintiff had a valid claim to begin with. *See Sosna*, 419 U.S. at 402 ("There must . . . be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23."); *see also Franks*, 424 U.S. at 753 (declaring that there had to have been a case or controversy for the class certification to have been proper); *E. Tex. Motor Freight Sys. Inc.*, 431 U.S. at 406 n.12 (allowing substitution only because the initial certification was "proper and decertification not appropriate"); *Bates*, 511 F.3d at 987 (holding that because the named plaintiff "had standing at the time of certification, which is the snapshot in time for determining initial standing," the class action was not moot, even if the named plaintiff's case was moot). That is not the case here, where Plaintiff was always bound by an arbitration agreement and class action waiver, and simply hid that fact from the Court until after the class had been certified.

Because from the onset of the litigation Plaintiff had been subject to the arbitration agreement and class action waiver, Plaintiff never had a valid claim arising out of her November 14, 2021 purchase of avocado oil. She was never eligible to represent the class before this Court, meaning the class was not duly certified. Accordingly, the class must be decertified.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | August 12, 2025 |
|---|---|---|---|
| Title | *Edie Golikov v. Walmart, Inc.* | | |

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Decertify Class.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                        JRE/gz

RA0112

# EXHIBIT J

JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  jamesmoon@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
JOSEPH ELIE-MEYERS (State Bar No. 325183)
  josepheliemeyers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
WALMART INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 2:24-CV-08211-RGK-MAR<br><br>Assigned to Honorable R. Gary Klausner<br><br>**DEFENDANT WALMART INC.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    November 3, 2025<br>Time:   9:00 a.m.<br>Ctrm.:  850<br><br>Action Filed: September 24, 2024 |

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0114

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 3, 2025 or as soon thereafter as the matter may be heard before the Honorable R. Gary Klausner of the above-titled Court, located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, defendant Walmart Inc. (Walmart) will and hereby does move this Court for an order finding that sanctions in the form of attorney's fees is warranted against plaintiff Edie Golikov; and her counsel, Dovel & Luner LLP, including partners Richard Lyon and Christin Cho. Per practice in the Ninth Circuit, Walmart first moves for an order that sanctions is warranted in the form of attorney's fees, and if and when the Court issues that order, Walmart will submit a supplemental brief setting forth the specific amount of reasonable attorney's fees sought.

Walmart's Motion is made on the grounds that it is entitled to sanctions in the form of attorney's fees (1) pursuant to 28 U.S.C. § 1927 against Mr. Lyon and Ms. Cho, jointly and severally for unreasonably and vexatiously multiplying proceedings in bad faith; and (2) under the Court's inherent authority against Plaintiff Edie Golikov, her counsel Mr. Lyon and Ms. Cho, and counsel's firm Dovel & Luner LLP, jointly and severally, based on their bad faith. Sanctions under both 28 U.S.C. § 1927 and the Court's inherent authority are justified by the same actions: Counsel concealed the dispositive fact that Plaintiff made her single alleged purchase of the Great Value Avocado Oil online through Walmart.com (rather than in a store, as falsely alleged), and in doing so entered into a binding arbitration agreement and class action waiver. Ms. Golikov and her counsel unreasonably and vexatiously multiplied the proceedings by their concealment, as the case should have never proceeded beyond an initial complaint. Walmart seeks approximately $545,000 in fees to cover the unnecessary litigation costs imposed on Walmart by Plaintiff and her counsel as a result of hiding that her alleged November 14, 2021 purchase was online, including the costs of discovery; opposing class certification;

---

i

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0115

petitioning for review of the class certification order pursuant to Rule 23(f); moving to dismiss the complaints; and moving to decertify the improvidently certified class.

Walmart thus seeks an order finding that sanctions in the form of attorney's fees is warranted, and directing Walmart to provide a supplemental brief setting forth the specific reasonable attorney's fees.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jacob M. Harper, all other pleadings and papers on file in this action, any oral argument at the hearing on the Motion, and any further matters of which this Court may take judicial notice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place between August 28, 2025 and September 28, 2025, as detailed in the concurrently-filed Declaration of Jacob M. Harper.

DATED:  September 29, 2025

DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper
    Jacob M. Harper

*Attorneys for Defendant*
*Walmart Inc.*

ii

WALMART'S MOTION FOR SANCTIONS

RA0116

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 3

    A.   Ms. Golikov Sues Walmart Based on Allegations of In-Store Purchase, Despite Knowing Her Purchase Was Made Online. ............................ 3

    B.   The Court and Walmart Rely on Ms. Golikov's "From a Walmart Store" Pleading to Their Detriment. ...................................................... 4

        1.   The Court Issues Orders Requiring Litigation. .......................... 4

        2.   Walmart Incurs Significant Costs Pursuing Litigation for Her Purchase "From a Store." ...................................................... 5

    C.   Based on Ms. Golikov's Late Disclosure, the Court Compels Arbitration and Decertifies the Class. ................................................... 8

        1.   The Court Grants Walmart's Motion to Compel Arbitration. ................................................................................... 8

        2.   The Court Grants Walmart's Motion to Decertify the Class. .............................................................................................. 9

III. THE COURT SHOULD AWARD ATTORNEY'S FEES ......................... 9

    A.   Legal Standard. ..................................................................................... 10

    B.   Sanctions Are Warranted Under § 1927 and the Court's Inherent Power. ..................................................................................................... 10

        1.   Plaintiff Acted In Bad Faith. ..................................................... 11

        2.   Plaintiff Unreasonably and Vexatiously Multiplied Proceedings. ............................................................................... 17

    C.   Walmart is Entitled to Fees For All Unnecessary Litigation Expenses. .............................................................................................. 18

WALMART'S MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0117

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AECOM Energy & Constr., Inc. v. Topolewski*,
  2022 WL 1469501 (C.D. Cal. May 9, 2022), *aff'd*, 2023 WL 6058825 (9th Cir. Sept. 18, 2023)...........................................................................................3

*AECOM Energy v. Constr., Inc. v. Topolewski*,
  2022 WL 595937 (C.D. Cal. Feb. 25, 2022) ......................................................3

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002), *abrogated on other grounds by Fort Bend Cnty v. Davis*, 587 U.S. 541 (2019).......................................................................11

*Blixseth v.Yellowstone Mountain Club, LLC*,
  854 F.3d 626 (9th Cir. 2017) ...........................................................................10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...........................................................................................10

*Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*,
  2005 WL 1528703 (N.D. Cal. June 29, 2005) ..................................................12

*Cinquini v. Donohue*,
  1996 WL 79822 (N.D. Cal. Feb. 8, 1996)..........................................................11

*Edwards v. Vemma Nutrition*,
  835 F. App'x 174 (9th Cir. 2020)......................................................................16

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ......................................................................11, 14

*Gonick v. Drexel Burnham Lambert, Inc.*,
  711 F. Supp. 981 (N.D. Cal. 1988)....................................................................15

*Hardeman v. Monsanto Co.*,
  833 F. App'x 92 (9th Cir. 2020).........................................................................14

*Harter v. Iowa Grain Co.*,
  202 F.3d 273 (7th Cir. 1998) .............................................................................16

*Hunt v. Moore Bros., Inc.*,
  861 F.3d 655 (7th Cir. 2017) .............................................................................15

iv

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0118

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
  2025 WL 980796 (N.D. Cal. Mar. 31, 2025) ................................................... 18

*Lahiri v. Universal Music & Video Distrib. Corp.*,
  606 F.3d 1216 (9th Cir. 2010) ..................................................................... 10, 12

*Lake v. Gates*,
  130 F.4th 1064 (9th Cir. 2025) ........................................................................ 10

*Lu v. United States*,
  921 F.3d 850 (9th Cir. 2019) ........................................................................... 18

*Maynez v. Walmart, Inc.*,
  479 F. Supp. 3d 890 (C.D. Cal. 2020) .............................................................. 15

*Multiband Corp. v. Block*,
  2012 WL 1843261 (E.D. Mich. May 21, 2012) ................................................ 16

*New Alaska Dev. Corp. v. Guetschow*,
  869 F.2d 1298 (9th Cir. 1989) ......................................................................... 14

*Parrott v. Corley*,
  266 F. App'x 412 (6th Cir. 2008) ..................................................................... 16

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ......................................................................... 14

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995) ...................................................................... 12, 13

*Van Scoy v. Shell Oil Co.*,
  11 F. App'x 847 (9th Cir. 2001) ....................................................................... 12

*W. Coast Theater Corp. v. City of Portland*,
  897 F.2d 1519 (9th Cir. 1990) ......................................................................... 14

**Statutes**

28 U.S.C. § 1927 ............................................................................................*passim*

**Rules**

C.D. Cal. Loc. R. 7-3 ................................................................................... 5, 8, 9

C.D. Cal. Loc. R. 37-2 ................................................................................. 7, 17

v

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Fed. R. Civ. P. 23(b)(2) .........................................................................................6

Fed. R. Civ. P. 23(b)(3) .........................................................................................6

Fed. R. Civ. P. 23(f).................................................................................5, 6, 17, 18

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0120

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

For nearly seven months, plaintiff Edie Golikov and her counsel (Christin Cho and Richard Lyon of Dovel & Luner LLP) misled the Court and defendant Walmart Inc. about a critical and dispositive fact:  Ms. Golikov made her sole alleged purchase of Great Value Avocado Oil not in a Walmart store as they alleged, but on Walmart.com.  Despite printing out an invoice unequivocally establishing her purchase was made online (and doing so just days before filing her complaint), Ms. Golikov and her counsel repeatedly and falsely alleged that she made this purchase in a Walmart store, while—as this Court found—they "hid th[e] fact" that the purchase was made online "from the Court [and Walmart] until after the class had been certified" months later, Dkt. 92. at 3.  In doing so, Ms. Golikov and her counsel were able to sidestep a class waiver and arbitration agreement that should have foreclosed this class action—and *would* have, as this Court eventually found— before it began in earnest.

The misrepresentation succeeded—at least at first.  Instead of moving to compel arbitration while the case was in its infancy (and eliminating class litigation from the start), Walmart was forced to defend this case as (falsely) pleaded:  a full-blown class action before this Court.  This unreasonably and vexatiously extended litigation that should have been cut short at the pleading stage, because in purchasing the Great Value Avocado Oil on Walmart.com, Ms. Golikov also entered into a binding arbitration agreement and class action waiver that would have barred essentially all subsequent litigation in this case.

Sanctions are warranted and necessary for Ms. Golikov and her counsel's blatant misconduct, which imposed significant litigation costs on Walmart.  And they are plainly authorized under 28 U.S.C. § 1927 and the Court's inherent authority, which allow the Court to award sanctions for precisely the misconduct present here:  litigating with knowledge or reckless disregard of dispositive facts

1

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0121

frivolously or for an improper purpose, and unreasonably and vexatiously multiplying proceedings.

At all times during this litigation—and at least five days before filing the opening Complaint when they printed out the receipt confirming her alleged purchase was online—Ms. Golikov and her counsel knew or recklessly disregarded that she made her purchase online. They cannot credibly claim this is a mere oversight, as counsel hold themselves out as "excellent lawyer[s] [] with the highest skill levels" who "isolate, dissect, and analyze" every "premise" in their filings—including their repeated, false premise that the November 14, 2021 purchase was made from a store.[1] They concealed these facts for months, instead alleging she purchased in a Walmart store, to gain a tactical advantage and prolong litigation in this court, including by pursuing class claims and seeking individual and class-wide discovery that Ms. Golikov had waived any right to obtain.

Indeed, they did not reveal this fact until *after* overcoming a motion to dismiss, obtaining class certification based on false pretenses, and engaging in significant discovery—and forcing Walmart to litigate the same. Further, in response to Walmart's motion to compel, Ms. Golikov and her counsel did not dispute that she agreed to the arbitration agreement, or that it was enforceable; instead, they tried to take further advantage of their wrongdoing by claiming Walmart delayed during the period she concealed her arbitration agreement from Walmart and the Court. But as the Court found in compelling her claims to arbitration, Ms. Golikov "was always bound by an arbitration agreement and class action wavier, and simply hid that fact from the Court until after the class had been certified." Dkt. 92 at 3.

Once Ms. Golikov's purchase came to light, the Court correctly and expeditiously unwound the rulings it had made in her favor on the basis of her

---

[1] https://www.dovel.com/; https://www.dovel.com/how-we-win/?deep-analysis; https://www.dovel.com/our-team/

2

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

misrepresentations, by compelling arbitration, staying the action, and decertifying the class.  Dkts. 81, 92.  In doing so, the Court held that Ms. Golikov "never had a valid claim" and "was never eligible to represent" the plaintiff class before this Court, Dkt. 92 at 3, confirming that essentially all of the litigation costs she imposed on Walmart were unnecessary.  The final step is to make Walmart whole for the costs that Ms. Golikov and her counsel imposed by their misconduct.  The Court should award sanctions against Ms. Golikov and her counsel under § 1927 and its inherent power.[2]

## II.    FACTUAL BACKGROUND

**A.    Ms. Golikov Sues Walmart Based on Allegations of In-Store Purchase, Despite Knowing Her Purchase Was Made Online.**

Ms. Golikov filed this lawsuit on September 24, 2024.  Dkt. 1 (Compl.).  In her initial Complaint, she alleged that "[o]n November 14, 2021, Plaintiff Edie Golikov purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Tarzana, California."  Compl. ¶¶ 6, 26.  The Complaint was signed by her attorney, Christin Cho of Dovel & Luner LLP.  *Id.* at 18.  On December 30, 2024, Ms. Golikov filed her First Amended Complaint, which also alleged that on November 14, 2021, she purchased a bottle of Great Value Refined Avocado Oil "from a Walmart store while living in Tarzana, California."  Dkt. 31 ¶¶ 6, 26 (FAC).  The FAC was signed by Ms. Golikov's counsel, Richard Lyon, also of Dovel & Luner LLP.  *Id.* at 20.

---

[2] Per standard practice in the Ninth Circuit, Walmart moves for an order finding sanctions are warranted, and if and when the Court issues such order, will "provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs." *AECOM Energy v. Constr., Inc. v. Topolewski*, 2022 WL 595937, at *14 (C.D. Cal. Feb. 25, 2022) (finding monetary sanctions warranted under inherent authority, and ordering supplemental briefing as to fee amount); *AECOM Energy & Constr., Inc. v. Topolewski*, 2022 WL 1469501 (C.D. Cal. May 9, 2022), *aff'd*, 2023 WL 6058825 (9th Cir. Sept. 18, 2023) (awarding attorney's fees after supplemental briefing).

---

3

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

On March 18, 2025, Walmart served interrogatories regarding Ms. Golikov's purchase of the Avocado Oil. Harper Decl. ¶ 2 & Ex. A. In her April 17, 2025 response to Walmart's interrogatories, Ms. Golikov revealed for the first time that she used a Walmart.com "online account on November 14, 2021 to purchase [the oil]" from the Walmart website, and not from a Walmart store, as she had alleged. Dkt. 81 at 1; Harper Decl. ¶ 3 & Ex. B at 16.

She later produced, in response to Walmart's requests for production, an invoice printed on September 19, 2024—five days before the opening Complaint was filed on September 24, 2024—showing the sole pleaded purchase of avocado oil was made online on Walmart.com, and not in a Walmart store. *See* Harper Decl. ¶ 5 & Ex. D.

**B.    The Court and Walmart Rely on Ms. Golikov's "From a Walmart Store" Pleading to Their Detriment.**

**1.    The Court Issues Orders Requiring Litigation.**

Relying on Ms. Golikov's allegation that she purchased avocado oil "from a Walmart store," the Court issued multiple orders that required Walmart to undertake significant litigation.

*First*, the Court denied Walmart's motion to dismiss, allowing Ms. Golikov's claims to proceed notwithstanding the false premise that her pleaded purchase occurred in-store. Dkt. 63. With full knowledge that claims arising from her online purchase were subject to arbitration, Ms. Golikov and her counsel nevertheless required Walmart to research and draft a motion to dismiss, research a response to her opposition, and prepare a reply brief—efforts that consumed substantial attorney time and resources despite the fact that the case did not belong in court at all.

*Second*, the Court certified both an injunctive-relief class and a damages class, naming Ms. Golikov the sole representative "[b]ased on her allegations that she purchased the avocado oil from 'a Walmart store.'" Dkt. 62; Dkt. 92 at 2. With full knowledge that her only pleaded purchase was made online, and she had agreed

4

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

to a class action waiver, Ms. Golikov nevertheless sought and obtained appointment as the sole representative of classes defined around in-store purchases, Dkt. 92 at 2, forcing Walmart to incur the expense of opposing certification despite her claims being atypical from the outset.  Walmart also pursued an interlocutory appeal under Rule 23(f).

### 2. Walmart Incurs Significant Costs Pursuing Litigation for Her Purchase "From a Store."

The Court's orders and Walmart's reliance on Ms. Golikov's false assertions resulted in significant unnecessary litigation and costs.

#### a. *Motion to Dismiss*

Walmart was required to defend against Ms. Golikov's claims by filing a motion to dismiss.  Dkt. 24.  Preparing this motion required Walmart to research the legal sufficiency of Ms. Golikov's allegations, draft and file the opening and reply briefs, and confer with Ms. Golikov's counsel pursuant to Local Rule 7-3—all under the false premise that her purchase occurred in-store, rather than online, and therefore was not subject to dispositive defenses such as arbitration or a class action waiver.  Before the Court ruled, however, Ms. Golikov filed a First Amended Complaint, and the Court denied as moot Walmart's motion.  Dkt. 34.

Walmart then was forced to repeat the process of conferring, analyzing, and responding to Ms. Golikov's new pleading by filing a renewed motion to dismiss.  Dkt. 37.  The Court ultimately denied the renewed motion in large part, allowing Ms. Golikov's claims to continue.  Dkt. 63.

#### b. *Opposing Class Certification*

Ms. Golikov moved for class certification January 8, 2025, despite being bound by an arbitration agreement and class action waiver.  Dkt. 33, 36.  Walmart was required to confer with her counsel pursuant to Local Rule 7-3, and then to prepare and file an opposition.  Dkt. 53.  Walmart reviewed and analyzed the motion and supporting documents, prepared for and attempted to depose witnesses,

5

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0125

marshalled evidence demonstrating the individualized issues that defeated certification, researched and drafted the opposition brief.  Harper Decl. ¶ 8.  The Court granted the motion on February 27, 2025, certifying two classes: (a) a Rule 23(b)(2) injunctive relief class, and (b) a Rule 23(b)(3) damages class.  Dkt. 62.  The Court named Ms. Golikov as the sole class representative "[b]ased on her allegations that she purchased the avocado oil from 'a Walmart store.'"  Dkt. 92 at 2.

Walmart also incurred significant costs in preparing and filing a petition for interlocutory review of the Court's class certification order under Rule 23(f) in the Ninth Circuit on March 13, 2025.  No. 25-1685 (9th Cir.); Harper Decl. ¶ 8.  Walmart later voluntarily dismissed the Rule 23(f) petition after this Court decertified the plaintiff classes.

### c.    *Costs Of Discovery*

On February 10, 2025, the Court issued a Scheduling Order, Dkt. 57, requiring Walmart to respond to the amended pleadings by March 30 and the parties to complete fact and expert discovery by June 24.  Walmart was thus required to expend significant resources engaging in discovery to prepare for summary judgment, trial, and to seek decertification of the class.

Walmart expended substantial time and resources, including interrupting its business operations, to respond to Ms. Golikov's individual and class discovery.  Walmart:

- Drafted objections and responses to Ms. Golikov's January 2 requests for production and interrogatories.  Harper Decl. ¶ 9(a).
- Interviewed approximately a dozen custodians to identify responsive records and information for Ms. Golikov's requests.  *Id.* ¶ 9(b).
- Collected records from approximately a dozen custodians, as well as non-custodial records, and processed those records to a review database.  *Id.* ¶ 9(c).

6

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

- Had a dedicated team of attorneys review thousands of records to identify responsive documents to Ms. Golikov's requests. *Id.* ¶ 9(d).
- Conferred with Ms. Golikov's counsel in writing and by phone regarding Walmart's written discovery responses, and prepared supplemental discovery responses. *Id.* ¶ 9(e).
- Negotiated a stipulated protective order. *Id.* ¶ 9(f).
- Conferred on and prepared a motion to quash Ms. Golikov's improper Rule 30(b)(6) notice (not filed due to the order compelling arbitration). *Id.* ¶ 9(g).

Walmart also undertook affirmative discovery of the claims, its defenses, and class certification—nearly all of which was met with baseless objections. Walmart:

- Noticed Ms. Golikov's deposition on three occasions: January 10, March 28, and May 23. Harper Decl. ¶ 10(a). She never sat for deposition. *Id.*
- Drafted and served a first set of requests for production on Ms. Golikov on January 23. *Id.* ¶ 10(b).
- Moved to compel. While Ms. Golikov represented in her responses that she would provide the documents requested in Walmart's first set of document requests, she never did, forcing Walmart to engage in significant conferral efforts, and then research and draft a lengthy (over 100 pages) Joint Stipulation to compel the records pursuant to Local Rule 37-2. Dkt. 71; Harper Decl. ¶ 10(c).
- Served three subpoenas on Ms. Golikov's counsel, Mr. Rick Lyon, including document and deposition subpoenas, regarding his expert testimony in support of the class certification motion. Harper Decl. ¶ 10(d).

7

WALMART'S MOTION FOR SANCTIONS

RA0127

- Served a first set of interrogatories on Ms. Golikov on March 18, and a second set of interrogatories and document requests on March 28. *Id.* ¶ 2, 10(e).

- Drafted document requests and served deposition subpoenas in January 2025 on the two experts Ms. Golikov relied upon for class certification, Thomas Maronick and Ceutical Labs/Courtland Imel. *Id.* ¶ 10(f). They failed to appear at the noticed depositions. *Id.*

**C.    Based on Ms. Golikov's Late Disclosure, the Court Compels Arbitration and Decertifies the Class.**

**1.    The Court Grants Walmart's Motion to Compel Arbitration.**

After Ms. Golikov disclosed that the November 14, 2021 purchase on which she based her claim was in fact made on the Walmart website—not from a Walmart store as alleged—Walmart confirmed that Ms. Golikov had used the Walmart.com website for at least 11 purchases of Great Value Avocado Oil. *See* Dkt. 66-7 ¶ 3. Each time, Ms. Golikov agreed to Walmart.com's Terms of Use. *Id.* ¶¶ 4–11; Dkt. 66-8 ¶ 3 & Dkt. 66-9 at 1.

Walmart promptly moved to enforce the Terms' arbitration agreement and class action waiver. *See* Dkt. 66. Consistent with Local Rule 7-3, Walmart conferred with Ms. Golikov's counsel prior to filing its motion, and advised that Ms. Golikov's online purchase rendered her claims subject to arbitration and barred her from proceeding as part of a class action. Harper Decl. ¶ 6. Ms. Golikov and her counsel nevertheless opposed Walmart's motion, principally arguing that Walmart had waived its right to compel arbitration, relying on the time period during which Ms. Golikov and her counsel hid her online purchase. Dkt. 69 at 4–7.

The Court granted Walmart's Motion to Compel Arbitration on June 10, 2025. Dkt. 81. The Court held that Ms. Golikov's online purchase—the only purchase pleaded in the First Amended Complaint—is subject to the arbitration agreement and class action waiver contained in the Terms of Use, that Ms.

8

WALMART'S MOTION FOR SANCTIONS

RA0128

Golikov's allegations were not reasonably interpretable as alleging an in-store purchase, and Walmart was entitled to rely on Ms. Golikov's counsel "not misrepresenting the facts." *Id.* at 1–4.

### 2. The Court Grants Walmart's Motion to Decertify the Class.

Based on the Court's order compelling arbitration and vacating all pending proceedings, Walmart moved for clarification that the class had been decertified—or, in the alternative, for decertification—because Ms. Golikov's only pleaded purchase was online and thus subject to arbitration and a class action waiver. Dkt. 82. Consistent with Local Rule 7-3, Walmart again conferred with Ms. Golikov's counsel before filing, and explained that her concealment of her online purchase meant she never had a viable claim to pursue on behalf of a class. *Id*. at 3; Dkt. 82-1 ¶ 7. Ms. Golikov and her counsel again opposed. Dkt. 86.

The Court granted Walmart's motion on August 12, 2025. Dkt. 92. The Court ruled that because Ms. Golikov's sole alleged purchase actually occurred on Walmart.com, she was not part of the certified class. *Id*. at 2–3. The Court further held that because Ms. Golikov, the sole class representative, "never had a valid claim arising out of her November 14, 2021 purchase of avocado oil" to begin with she therefore "was never eligible to represent the Class before this Court." *Id*. at 3.

The Court also denied Ms. Golikov's request to substitute a new named plaintiff, holding she "was always bound by an arbitration agreement and class action waiver, and simply hid that fact from the Court until after the class had been certified." *Id.* at 3.

### III. THE COURT SHOULD AWARD ATTORNEY'S FEES

28 U.S.C. § 1927 and the Court's inherent authority authorize the award of attorney's fees to Walmart here, where Ms. Golikov and her counsel falsely pleaded and concealed a critical fact that significantly multiplied proceedings. As this Court has recognized, Ms. Golikov was all times during this litigation "bound by an arbitration agreement and class action waiver." Dkt. 92 at 3. She thus "*never* had a

9

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0129

valid claim arising out of her November 14, 2021 purchase of avocado oil" and "was *never* eligible to represent the Class before this Court." *Id.* (emphasis added). By hiding that her alleged purchase was online—despite having printed a receipt days before filing the opening Complaint showing the pleaded purchase was online and thus subject to arbitration—Ms. Golikov and her counsel set in motion and maintained expensive and costly litigation that could and should have been avoided by arbitration. Fees are warranted for this knowing or reckless misrepresentation, which dramatically multiplied proceedings at significant cost to Walmart.

**A.    Legal Standard.**

Courts have discretion under both § 1927 and their inherent power to assess attorney's fees as sanctions for litigation misconduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (addressing "court's inherent power" to award fees for attorney and party misconduct); *Blixseth v.Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017) (§ 1927 deters attorney misconduct and its purpose is "to compensate victims of [an] attorney's malfeasance").

Under § 1927, "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Courts impose § 1927 sanctions where counsel unreasonably and vexatiously multiplied the proceedings by conduct was undertaken in bad faith. *Lake v. Gates*, 130 F.4th 1064, 1070–71 (9th Cir. 2025). Similarly, courts impose sanctions under their inherent authority upon a finding of bad faith or conduct "tantamount to bad faith." *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1218–19 (9th Cir. 2010).

**B.    Sanctions Are Warranted Under § 1927 and the Court's Inherent Power.**

Ms. Golikov and her counsel's conduct qualifies for sanctions under both § 1927 and the Court's inherent authority. First, they acted in bad faith by (a) knowingly or recklessly making frivolous arguments in disregard of dispositive

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0130

facts and/or (b) doing so for the improper purpose of prolonging proceedings and gaining a tactical advantage, with the benefit of avoiding arbitration and evading a class action waiver.  Second, they unreasonably and vexatiously multiplied proceedings under § 1927 by forcing Walmart to needlessly litigate for months, which also required this Court to needlessly issue (and then unwind) multiple orders.  While both bad faith and multiplication of proceedings are required for § 1927 sanctions, the Court need only find bad faith to issue sanctions under its inherent authority.  The evidence exceeds these standards here.

### 1. Plaintiff Acted In Bad Faith.

First, there is little question that Ms. Golikov and her counsel acted in bad faith.  For sanctions under both § 1927 and the Court's inherent authority, "bad faith" is satisfied when counsel (a) knowingly or recklessly raises a frivolous argument *or* (b) makes a meritorious claims for an improper purpose.  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), *abrogated on other grounds by Fort Bend Cnty v. Davis*, 587 U.S. 541 (2019) (reckless introduction of inadmissible evidence tantamount to bad faith justifying sanctions under § 1927 and inherent power).  "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Fink v. Gomez,* 239 F.3d 989, 993–94 (9th Cir. 2001) (reckless misstatements of law and fact, combined with an improper purpose, sanctionable under court's inherent power).  Further, bad faith "may be inferred from a totally baseless course of conduct."  *Cinquini v. Donohue,* 1996 WL 79822, at *8 (N.D. Cal. Feb. 8, 1996).

Here, as detailed below, Ms. Golikov and her counsel's conduct demonstrates bad faith in two ways: (1) they knowingly and frivolously pleaded that her sole alleged purchase was made from a Walmart store, concealing that her purchase was made online and thus subject to arbitration and class waiver; and (2) they made the allegations and representations with an improper purpose.

---

11

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**a.**   *Ms. Golikov and counsel acted with reckless disregard of dispositive facts*

This Court already found that Ms. Golikov "was always bound by an arbitration agreement and class action wavier, and simply hid that fact from the Court until after the class had been certified." Dkt. 92 at 3.  That finding alone is enough to find Ms. Golikov and her counsel acted in bad faith and award sanctions.

"When an attorney knowingly or recklessly misrepresents facts to a court, sanctions are appropriate under § 1927." *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, 2005 WL 1528703, at *2 (N.D. Cal. June 29, 2005).  The Ninth Circuit has consistently affirmed sanctions where attorneys pursued claims despite facts or agreements that foreclosed relief.  *See Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1995) (reversing where sanctions warranted for maintaining suit after confirmation of a bankruptcy plan that extinguished claims); *Lahiri*, 606 F.3d at 1222 (affirming sanctions where attorney mischaracterized agreements and pursued meritless copyright claim despite having no valid copyright interest in the work at issue); *Van Scoy v. Shell Oil Co.*, 11 F. App'x 847, 852 (9th Cir. 2001) (sanctions warranted where counsel filed motions despite claims being barred by res judicata and collateral estoppel).

Ms. Golikov and her counsel recklessly and repeatedly misrepresented the key, material fact that her single alleged purchase was from a Walmart store—hiding that her purchase was online and her claims were thus subject to arbitration and a class waiver.  Indeed, Ms. Golikov and her counsel cannot credibly dispute that they knew **before** filing the initial complaint that her alleged purchase was made from Walmart.com and not a store.  Just five days before filing the initial complaint, on September 19, 2024, they printed an invoice showing the sole pleaded purchase of avocado oil was made on Walmart.com, and not in a Walmart store.  *See* Harper Decl. ¶ 5 & Ex. D.  Ms. Golikov's counsel, Mr. Lyon and Ms. Cho, both partners at Dovel & Luner, cannot credibly claim this was an oversight, or they were unaware

12

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0132

of the true facts and evidence—their firm promises its lawyers are "the best of the best," an "elite 'special forces' teams of attorneys,"[3] who "isolate, dissect, and analyze" each "litigation task" "from drafting the complaint … to trial"[4]; they "have only excellent lawyers" and "require[] that each task and each decision come from an excellent lawyer [] with the highest skill levels."[5] *See Trulis*, 107 F.3d at 692 ("These violations did not arise from a sole practitioner's inexperience, but are the product of lawyers practicing at large, well-equipped law firms."). Both Ms. Cho and Mr. Lyon graduated from top-tier law schools and have practiced for over 20 years.[6] This record leaves only one reasonable inference: Ms. Golikov and her counsel *knowingly* (or, at a minimum, recklessly) made the false allegation that she made her November 14, 2021 purchase from a Walmart "store," and not Walmart.com, in the opening Complaint, and then repeated them in the FAC (among other filings). Compl. ¶¶ 6, 26; FAC ¶¶ 6, 26.

Ms. Golikov and her counsel continued to "hid[e]" this fact from Walmart and the Court even as they moved to certify two California-wide classes with Ms. Golikov as the sole class representative. Dkt. 36. Indeed, Ms. Golikov did not properly meet and confer in advance of her motion for class certification. Dkt. 44 at 3. Further, none of Ms. Golikov's witnesses, including Ms. Golikov herself, appeared for any noticed deposition. Harper Decl. ¶ 10.a, d, f. This further delayed Walmart's discovery of the false allegations underlying Ms. Golikov's claims, as a deposition would likely have uncovered the dispositive fact of her online purchases. It was not until April 17, 2025—over a month after class certification was granted— that Ms. Golikov finally revealed her purchase was made on Walmart.com.

---

[3] https://www.dovel.com/

[4] https://www.dovel.com/how-we-win/?deep-analysis

[5] https://www.dovel.com/our-team/

[6] https://www.dovel.com/our-team/christin-cho/; https://www.dovel.com/our-team/rick-lyon/

---

13

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0133

Falsely pleading an in-store purchase and then hiding that fact until after this Court had granted the desired relief—the denial of Walmart's motion to dismiss and certification of two classes—is sufficient to find bad faith under § 1927 and under this Court's inherent authority. *See W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (affirming sanctions where counsel "recklessly proceeded with the litigation despite a complete lack of factual support" and delayed responses to discovery requests).

### b. *Ms. Golikov and counsel acted for an improper purpose*

Even if Ms. Golikov and her counsel's misrepresentations were not frivolous (they were), they were made with an improper purpose. As a result of these misrepresentations, Ms. Golikov was able to prolong proceedings and gain tactical advantages, by (a) proceeding in litigation before this Court despite a binding arbitration agreement; (b) certifying a class despite a binding class-action waiver; and (c) seeking broad discovery, including class discovery, to which Ms. Golikov would not have been entitled in arbitration and was precluded by class waiver. This misconduct is therefore sanctionable. *See Fink*, 239 F.3d at 993–94 (reckless but non-frivolous misstatements of fact are sanctionable "when coupled with an improper purpose").

An improper purpose includes, among other tactics, harassing an opponent or tactics "undertaken with the intent to increase expenses," *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989), or "an attempt to influence or manipulate proceedings," *Fink*, 239 F.3d at 994. Improper purpose may be inferred from counsel's actions. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 (9th Cir. 1990) ("A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose."); *Hardeman v. Monsanto Co.*, 833 F. App'x 92, 93–94 (9th Cir. 2020) (district court did not abuse its discretion by inferring bad faith from party's recklessness coupled with violations of pretrial orders).

14

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Here, the proof is in the pudding: Ms. Golikov and her counsel made blatant misrepresentations that directly resulted in imposing significant and unnecessary costs on Walmart, in addition to gaining a clear tactical advantages:

*First*, Ms. Golikov sought to conceal her online purchase, with the obvious benefit of evading arbitration and litigating in her preferred forum. Ms. Golikov's own filings after her false allegations came to light confirm as much. In opposing arbitration, Ms. Golikov did not dispute, and thus conceded, she accepted a valid arbitration agreement and class action waiver in the Walmart.com Terms of Use. Dkt. 69. Instead, she argued Walmart waived its right to arbitrate by litigating the claim *during the period she hid her online purchase*. *Id*. In other words, Ms. Golikov attempted to gain a direct advantage from her misrepresentation, by relying on the delay she manufactured by hiding her online purchase.[7]

Federal courts have found that such unfounded attempts to evade clearly enforceable and applicable arbitration agreements warrant sanctions.[8] *See Gonick v. Drexel Burnham Lambert, Inc.*, 711 F. Supp. 981, 987 (N.D. Cal. 1988) (imposing fees where it was "settled law" that plaintiffs' claims were subject to arbitration and noting that "the absence of case authority or other authorities … is indicative that a party's position is not well-founded in law or adequately researched"); *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 660–61 (7th Cir. 2017) (affirming § 1927 sanctions where counsel opposed arbitration with "objectively baseless" arguments given plaintiff's assent to a binding arbitration agreement); *Multiband Corp. v. Block*, 2012 WL 1843261, at *10 (E.D. Mich. May 21, 2012) (imposing sanctions (under Rule 11) where opposition to arbitration was "objectively unreasonable" and

---

[7] Even after she was compelled to arbitration, Ms. Golikov's counsel again attempted to leverage her false allegations, arguing that she should benefit from the Court's improvident class certification order by being allowed to continue to represent the certified class or substitute a new class representative. Dkt. 86 at 2–7.

[8] Courts in this District have held that Walmart's online arbitration agreement is valid and enforceable. *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 900 (C.D. Cal. 2020) (compelling arbitration based on online purchase).

15

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

ignored plain contract terms agreeing to arbitration). This Court should find the same here.

*Second*, Ms. Golikov and her counsel's concealment of her online purchase also had the obvious benefit of allowing her to evade her class waiver, opening the door to a class action, which offers far greater monetary relief and leverage for Ms. Golikov and her counsel than individual claims.

*Third*, Ms. Golikov's false pleadings allowed her to gain another advantage she would not otherwise have been entitled to: seeking extensive discovery, including class discovery, that is not available in individual arbitration, which offers limited discovery. Yet in this litigation, having evaded arbitration and her class waiver through her misrepresentations, Ms. Golikov served extensive and costly class discovery, including written discovery, a Rule 30(b)(6) notice on Walmart, and a third-party subpoena, to which she would not have been entitled if bringing individual claims in arbitration. *Supra* Sec. II(B)(2)(c).

Courts grant sanctions where parties proceed with litigation in bad faith despite being bound by arbitration agreements, as Ms. Golikov and her counsel have done here. *Edwards v. Vemma Nutrition*, 835 F. App'x 174, 176 (9th Cir. 2020) (affirming § 1927 sanctions against plaintiff for, *inter alia*, filing complaint naming dismissed defendant because such claims were barred by arbitration clause); *Parrott v. Corley*, 266 F. App'x 412, 415 (6th Cir. 2008) (affirming § 1927 sanctions where plaintiff's counsel unreasonably multiplied the proceedings by contesting Defendant's motion to compel arbitration and simultaneously pursuing a motion for preliminary injunction on claims it should have known were arbitrable); *Harter v. Iowa Grain Co.*, 202 F.3d 273 (7th Cir. 1998) (mem.) (affirming § 1927 sanctions where plaintiff brought claim despite arbitration agreement, and filed three motions to reconsider order compelling arbitration). The same ruling is warranted here.

16

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## 2. Plaintiff Unreasonably and Vexatiously Multiplied Proceedings.

Without question, Ms. Golikov and her counsel unreasonably and vexatiously multiplied proceedings, imposing significant unnecessary costs on Walmart. Almost every step of this litigation after filing the Complaint was unnecessary and would have been avoided but for their misconduct.

Their concealment of Ms. Golikov's online purchase forced Walmart to expend substantial resources litigating claims and a class certification motion that were never viable. Ms. Golikov did not disclose until April 17, 2025 that her only pleaded purchase occurred on Walmart.com. By the time Walmart could compel arbitration, it was unable to avoid engaging in extensive and unnecessary motion practice and discovery: moving to dismiss the FAC; opposing class certification; responding to Ms. Golikov's discovery requests regarding her individual and class claims, including conferring on her claimed discovery disputes and preparing supplemental discovery responses; propounding multiple sets of discovery requests on Ms. Golikov, conferring on her discovery deficiencies, and filing a lengthy Local Rule 37-2 Joint Stipulation to compel discovery, Dkt. 71; noticing Ms. Golikov's deposition three times; drafting and serving subpoenas on Ms. Golikov's experts; interviewing approximately a dozen Walmart custodians to identify relevant discovery; collecting and processing records from its custodians and non-custodial sources; reviewing thousands of records for production; conferring on and drafting a motion to quash Ms. Golikov's improper Rule 30(b)(6) deposition notice; and filing a petition for interlocutory review under Rule 23(f). Harper Decl. ¶¶ 9–10. Even after the Court compelled arbitration and stayed proceedings, Ms. Golikov and her counsel continued to prolong proceedings by opposing decertification.

These efforts required Walmart to incur more than $545,000 in fees that would have been unnecessary had Plaintiff been candid from the outset about her purchase. Indeed, after Ms. Golikov revealed her purchase was made online, the

17

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0137

entire lawsuit quickly unraveled, as the Court quickly and correctly compelled her to arbitration, stayed proceedings, and decertified the class—essentially undoing all the unnecessary rulings Ms. Golikov and her counsel unreasonably and needlessly forced here.

**C.      Walmart is Entitled to Fees For All Unnecessary Litigation Expenses.**

Walmart seeks fees for all unnecessary litigation costs after the filing of the FAC.  Ninth Circuit courts award such fees as sanctions where, as here, a plaintiff initiates and maintains lawsuit in bad faith and in reckless disregard of dispositive facts. *See Lu v. United States,* 921 F.3d 850, 860–61 (9th Cir. 2019) (under the court's inherent authority, "if a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may [] make a blanket award" and shift all fees); *Koji IP, LLC v. Renesas Elecs. Am., Inc.,* 2025 WL 980796, at *17 (N.D. Cal. Mar. 31, 2025) (fee award under 28 U.S.C. § 1927 covers fees incurred after responding to complaint).

Walmart intends to seek no less than $545,000 in attorney's fees, representing the fees incurred in moving to dismiss the FAC; opposing class certification; preparing a petition for interlocutory review under Rule 23(f); engaging in extensive discovery practice and briefing; and moving to decertify the plaintiff classes.  If the Court determines fees are an appropriate sanction, Walmart will submit briefing on the amount of reasonable attorney's fees requested.

Dated:  September 29, 2025                                   DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper

*Attorneys for Defendant*
*Walmart Inc.*

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0138

## CERTIFICATION

The undersigned counsel of record for Walmart Inc. certifies that this brief contains 5,595 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.


                                        _____/s/ Jacob M. Harper_____
                                             Jacob M. Harper

WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0139

# EXHIBIT K

RA0140

JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  jamesmoon@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
JOSEPH ELIE-MEYERS (State Bar No. 325183)
  josepheliemeyers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
WALMART INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 2:24-CV-08211-RGK-MAR<br><br>Assigned to Honorable R. Gary Klausner<br><br>**DECLARATION OF JACOB M. HARPER IN SUPPORT OF DEFENDANT WALMART INC.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**<br><br>Date:    November 3, 2025<br>Time:   9:00 a.m.<br>Ctrm.:  850<br><br>[*Notice of Motion and Motion for Sanctions; Memorandum of Points and Authorities; and Proposed Order filed concurrently*]<br><br>Action Filed: September 24, 2024 |

DECLARATION OF JACOB M. HARPER IN SUPPORT OF
WALMART'S MOTION FOR SANCTIONS

RA0141

## DECLARATION OF JACOB M. HARPER

I, Jacob M. Harper, declare and state as follows:

1.      I am a partner with the law firm of Davis Wright Tremaine LLP, counsel for defendant Walmart Inc. (Walmart) in this matter.  I make this declaration in support of Walmart's Motion for Sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.  I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify to them.

2.      On March 18, 2025, my office (on Walmart's behalf) served Ms. Golikov through counsel with Walmart's first set of interrogatories.  Attached as **Exhibit A** is a true and correct copy of Walmart's as-served interrogatories.

3.      On April 17, 2025, Ms. Golikov's counsel served my office (for Walmart) her responses to Walmart's first set of interrogatories, which revealed for the first time that she used a Walmart.com "online account on November 14, 2021 to purchase [the oil]" from the Walmart website, and not from a Walmart store, as she had alleged.  Attached as **Exhibit B** is a true and correct copy of Ms. Golikov's verified responses.

4.      On March 28, 2025, my office (on Walmart's behalf) served Ms. Golikov through counsel with Walmart's second set of interrogatories.  On April 28, 2025, Ms. Golikov's counsel served my office (for Walmart) her responses to Walmart's second set of interrogatories.  Attached as **Exhibit C** is a true and correct copy of Ms. Golikov's verified responses.

5.      On May 2, 2025, Ms. Golikov produced documents to my office (for Walmart) showing the sole pleaded purchase of avocado oil was made online on Walmart.com, and not in a Walmart store.  Attached as **Exhibit D** is a true and correct copy of a page from that production bearing Bates number GOLIKOV000002.

2

DECLARATION OF JACOB M. HARPER IN SUPPORT OF
WALMART'S MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

6.      Upon Ms. Golikov's disclosure that she had concealed the online nature of the purchase at issue, Walmart's counsel promptly moved to enforce the arbitration agreement and class action waiver.  Consistent with Local Rule 7-3, I met and conferred with Ms. Golikov's counsel Rick Lyon before filing the Motion to Compel Arbitration, and expressly advised that Ms. Golikov's online purchase rendered her claims subject to individual arbitration and barred her from proceeding as part of a class action.  Ms. Golikov and her counsel nevertheless opposed Walmart's motion, which the Court ultimately granted.

7.      Based on the Court's order compelling arbitration and vacating all pending proceedings, Walmart moved for clarification that the class had been decertified—or, in the alternative, for decertification. Consistent with Local Rule 7-3, I again met and conferred with Ms. Golikov's counsel Rick Lyon before filing, and explained that Ms. Golikov's concealment of her online purchase meant she never had a viable claim to pursue on behalf of a class.  Ms. Golikov again opposed Walmart's motion, which the Court ultimately granted.

8.      Relying on representations by Ms. Golikov and her attorneys, my colleagues and I (at Walmart's direction) expended time responding to her Motion for Class Certification, including reviewing and analyzing the motion and supporting documents, preparing for and attempting to depose witnesses, and marshalling evidence demonstrating the individualized issues that defeated certification.  Walmart also incurred significant costs in having my office prepare and file a petition for interlocutory review of the Court's class certification order under Rule 23(f) in the Ninth Circuit on March 13, 2025.

9.      Relying on representations by Ms. Golikov and her attorneys, Walmart ,my colleagues and I (on behalf of Walmart) expended substantial time and resources, including interrupting Walmart's business operations, to respond to Ms. Golikov's individual and class discovery.  These expenditures include requiring my

3

RA0143

office and Walmart's own personnel to engage in the following to meet the case's requirements and the Court's deadlines with diligence:

    a. Drafting objections and responses to Ms. Golikov's January 2 requests for production and interrogatories.

    b. Interviewing approximately a dozen custodians to identify responsive records and information for Ms. Golikov's requests.

    c. Collecting records from approximately a dozen custodians, as well as non-custodial records, and processing those records to a review database.

    d. Tasking a dedicated team of attorneys to review thousands of records to identify responsive documents to Ms. Golikov's requests.

    e. Conferring with Ms. Golikov's counsel through correspondence and by phone regarding Walmart's written discovery responses, and preparing supplemental discovery responses.

    f. Negotiating a stipulated protective order.

    g. Conferring on and preparing a motion to quash Ms. Golikov's improper Rule 30(b)(6) notice (not filed due to order compelling arbitration).

10. Walmart also undertook affirmative discovery of the claims, its defenses, and class certification—nearly all of which was met with baseless objections. Walmart:

    a. Noticed Ms. Golikov's deposition on three occasions: January 10, March 28, and May 23. She never sat for any deposition.

    b. Drafted and served a first set of requests for production on Ms. Golikov on January 23.

    c. Moved to compel. While Ms. Golikov represented in her responses that she would provide the documents requested in Walmart's first set of document requests, she never did, forcing Walmart to engage in significant conferral efforts, and then research and draft a lengthy (over

DECLARATION OF JACOB M. HARPER IN SUPPORT OF
WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0144

100 pages) Joint Stipulation to compel the records pursuant to Local Rule 37-2.

    d.  Served three subpoenas (Jan. 10, March 28, May 23) on plaintiff's counsel, Mr. Rick Lyon, including document and deposition subpoenas, regarding his expert testimony in support of the class certification motion.

    e.  Served a first set of interrogatories on Ms. Golikov on March 18, and a second set of interrogatories and document requests on March 28.

    f.  Drafted document requests and served deposition subpoenas in January 2025 on the two experts Ms. Golikov relied upon for class certification, Thomas Maronick and Ceutical Labs/Courtland Imel. They failed to appear at the noticed depositions.

11.    Conferral about the post-decertification proceedings of this case began between me and Ms. Golikov's counsel, Rick Lyon, on August 28, 2025. Between September 18 and September 28, I conferred with Rick Lyon specifically about Walmart's intended motion for sanctions (including through emails and voicemails to Mr. Lyon on approximately September 18, 19, and 22; and multiple live telephone calls September 23, 24, and 25). During these communications, I detailed and we discussed the bases for Walmart's forthcoming motion for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority. I explained, and we discussed, that Walmart would seek fees based on Ms. Golikov and her counsel's bad faith in repeatedly asserting false allegation that her November 14, 2021 purchase was from a Walmart store, and her and her counsel's concealment of the fact that the purchase was actually made online. I explained our view that their misconduct vexatiously and unreasonably multiplied the proceedings, and that Walmart would seek sanctions in the form of a fee award to recover the fees Walmart's counsel incurred as a result of their misconduct, which we estimated to be at least $545,000. Despite our good faith efforts to resolve the motion, the parties could not come to an

5

DECLARATION OF JACOB M. HARPER IN SUPPORT OF
WALMART'S MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

agreement.  Mr. Lyon advised that Ms. Golikov and his firm would oppose the Motion, and he asked that we notice the motion for the maximum available time available under the rules—35 days—to allow him an extra week to file an opposition, to which I agreed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 29th day of September, 2025, at Edinburgh, Scotland, in the United Kingdom.

_/s/ Jacob M. Harper_____
Jacob M. Harper

DECLARATION OF JACOB M. HARPER IN SUPPORT OF
WALMART'S MOTION FOR SANCTIONS

6

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RA0146

# EXHIBIT L

RA0147

# EXHIBIT C

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAED40E

Richard Lyon (Cal Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>v.<br><br>WALMART INC.,<br><br>     *Defendant.* | Case No. 2:24-cv-08211-RGK-MAR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT WALMART INC.'S SECOND SET OF INTERROGATORIES** |

Plaintiff's Responses to Walmart's
Interrogatories, Set Two

Case No. 2:24-cv-08211-RGK-MAR

RA0149

Docusign Envelope ID: A42D30E2-DC56-4B35-8F41-B613EFAED40E

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Edie Golikov ("Plaintiff") provides the following objections and responses to Defendant's second set of interrogatories.

Plaintiff responds based on information currently known and available to Plaintiff and her counsel as of the date of these objections and responses. Plaintiff may amend or supplement these responses as additional discovery is taken, facts are learned, research is completed, and arguments are made.

By answering an interrogatory, Plaintiff does not concede that the information given is properly discoverable or admissible. Plaintiff reserves the right to object to the introduction of responses into evidence for any purpose.

### General Objections

Plaintiff objects to the extent that any interrogatory requests information that is protected from discovery under the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privilege or other immunity. Plaintiff will not provide privileged information.

Certain definitions, when incorporated into the interrogatories below, render the requests overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff objects specifically to the breadth of such interrogatories below and states the scope to which Plaintiff will respond.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with any instructions that exceed those requirements.

Plaintiff's Responses to Walmart's          1          Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAED40E

## Objections and Responses to Each Interrogatory

**INTERROGATORY NO. 5:** Identify all of YOUR accounts on social media platforms, including but not limited to Facebook, X (formerly Twitter), Bluesky, Instagram, TikTok, Snapchat, YouTube, tumblr, Reddit, Discord, Threads, LinkedIn, Quora, and Twitch, by disclosing YOUR user name, the email address used to open or maintain the account, and account number or other account identifier.

**Response to 5:** Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as overbroad and seeking information that is not relevant to any party's claims or defenses.  Plaintiff agrees to meet and confer to better understand the relevance of this Interrogatory.

**INTERROGATORY NO. 6:** DESCRIBE all actions, lawsuits, arbitrations, bankruptcies, mediations, insolvency proceedings, other adjudicatory or legal proceedings (including any class actions or class action settlements in which YOU were a named plaintiff or class member), or regulatory enforcement actions or investigations to which YOU are or have been a party at any time, including the matter name, identifying number, parties to the matter, jurisdiction or forum, the nature of the dispute, the claims asserted, whether the matter was a class action, YOUR role in the matter, whether YOU testified in the matter, whether the matter has been resolved, and how the matter resolved.

**Response to 6:** Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as overbroad and seeking information that is not relevant to any party's claims or defenses.  Except as objected to, Plaintiff responds as follows: Plaintiff was named as a plaintiff and provided testimony by deposition in *Bennett et al. v. Quest Diagnostics, Inc.*, Case No. 2:17-cv-01590-ES-MAH (D.N.J.). By agreement of the parties, the matter was voluntarily dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(2) on August 21, 2023.

Plaintiff's Responses to Walmart's                2        Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

RA0151

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAED40E

Case 2:24-cv-08211-RGK-MAR    Document 94-4    Filed 09/29/25    Page 5 of 14    Page ID #:2133

**INTERROGATORY NO. 7:** DESCRIBE each purchase YOU made of any PRODUCTS during the RELEVANT TIME PERIOD, including the date, product name, UPC, size, how many bottles, the payment method YOU used, the label statements YOU read and relied upon in making the purchase, any information YOU considered material to YOUR purchase decisions, from which store YOU purchased the PRODUCT, how much YOU paid, whether the purchase was online, through curbside pickup, or through a personal shopper (e.g., Instacart), whether anyone was with YOU when YOU made the purchase, and any other details of YOUR purchase.

**Response to 7:** Plaintiff incorporates the General Objections recited above as if fully stated here. Except as objected to, Plaintiff responds as follows: Plaintiff purchased Walmart Great Value Avocado Oil multiple times a year for years (including between 2021 and 2024) primarily in person at Walmart stores, including the Walmart store in West Hills, California (near her Tarzana home). Plaintiff is also aware of using an online Walmart account on one occasion (on November 14, 2021) to purchase a 25.5 fl. oz, bottle of Walmart Great Value Avocado Oil for $8.23. To the best of her recollection, for each of her in-store purchases, Plaintiff purchased a 25.5 fl. oz. bottle Walmart Great Value Avocado Oil. Plaintiff was not in the practice of maintaining receipts and therefore cannot provide exact information regarding cost for her in-store purchases. Each time Plaintiff purchased the product, the package prominently stated "Avocado Oil." And she read and relied on this statement, and believed she was purchasing pure unadulterated avocado oil. Since becoming aware that Walmart Great Value Avocado Oil is adulterated, Plaintiff stopped purchasing avocado oil from Walmart. Instead, Plaintiff now purchases avocado oil from Whole Foods. Plaintiff does not use any other oils to cook food.

**INTERROGATORY NO. 8:** IDENTIFY any purchase YOU made of any avocado oil product(s) during the RELEVANT TIME PERIOD, including the date, product name, UPC, size, packaging, how many packages YOU purchased, the payment method YOU used, how much YOU paid, from which store YOU purchased the product(s),

Plaintiff's Responses to Walmart's                    3          Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

RA0152

whether the purchase was online, through curbside pickup, or through a personal shopper (e.g., Instacart), whether anyone was with YOU when YOU made the purchase, and any other details of YOUR purchase.

**Response to 8:** Plaintiff incorporates the General Objections recited above as if fully stated here.  Except as objected to, Plaintiff responds as follows: Plaintiff purchased Walmart Great Value Avocado Oil multiple times a year for years (including between 2021 and 2024) primarily in person at Walmart stores, including the Walmart store in West Hills, California (near her Tarzana home). Plaintiff is also aware of using an online Walmart account on one occasion (on November 14, 2021) to purchase a 25.5 fl. oz, bottle of Walmart Great Value Avocado Oil for $8.23.  To the best of her recollection, for each of her in-store purchases, Plaintiff purchased a 25.5 fl. oz. bottle Walmart Great Value Avocado Oil.  Plaintiff was not in the practice of maintaining receipts and therefore cannot provide exact information regarding cost for her in-store purchases. Each time Plaintiff purchased the product, the package prominently stated "Avocado Oil."  And she read and relied on this statement, and believed she was purchasing pure unadulterated avocado oil.  Since becoming aware that Walmart Great Value Avocado Oil is adulterated, Plaintiff stopped purchasing avocado oil from Walmart.  Instead, Plaintiff now purchases avocado oil from Whole Foods.  Plaintiff does not use any other oils to cook food.

**INTERROGATORY NO. 9:** IDENTIFY any purchase YOU made of any non-avocado cooking oil product(s) during the RELEVANT TIME PERIOD, including the date, product name, UPC, size, packaging, how many packages YOU purchased, the payment method YOU used, how much YOU paid, from which store YOU purchased the product(s), whether the purchase was online, through curbside pickup, or through a personal shopper (e.g., Instacart), whether anyone was with YOU when YOU made the purchase, and any other details of YOUR purchase.

Plaintiff's Responses to Walmart's     4     Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

**Response to 9:** Plaintiff incorporates the General Objections recited above as if fully stated here. Except as objected to, Plaintiff responds as follows: Plaintiff does not use any oils other than avocado oil to cook food.

**INTERROGATORY NO. 10:**

DESCRIBE the circumstances under which YOU first became aware that avocado oil products may be adulterated with other cooking oils, including the date YOU became aware, who or what source informed YOU, and how YOU made that discovery.

**Response to 10:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request to the extent it asks Plaintiff to disclose communications with counsel or other privileged information. Plaintiff will not provide privileged information. Subject to these objections, Plaintiff will provide the detail that Plaintiff can reasonably recall.

Except as objected to, Plaintiff responds as follows: Plaintiff learned that avocado oil products may be adulterated with other cooking oils online in the summer of 2024, shortly before seeking and consulting with counsel for this case.

**INTERROGATORY NO. 11:**

DESCRIBE the circumstances under which YOU first became aware that the PRODUCT may be adulterated with other cooking oils, including the date YOU became aware, who or what source informed YOU, and how YOU made that discovery.

**Response to 11:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request to the extent it asks Plaintiff to disclose communications with counsel or other privileged information. Plaintiff will not provide privileged information. Subject to these objections, Plaintiff will provide the detail that Plaintiff can reasonably recall.

Plaintiff's Responses to Walmart's Interrogatories, Set Two          5          Case No. 2:24-cv-08211-RGK-MAR

Except as objected to, Plaintiff responds as follows: Plaintiff learned that the Product may be adulterated with other cooking oils online in the summer of 2024, shortly before seeking and consulting with counsel for this case.

**INTERROGATORY NO. 12:**

DESCRIBE all monetary and other relief YOU seek to recover from DEFENDANT in this action on YOUR own behalf, including the amount of and basis for any damages, restitution, and attorney's fees and costs, including all documents that support the calculations and amount of such recovery; and the specific injunctive or other equitable relief YOU seek.

**Response to 12:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as premature insofar as it depends on information that has not yet been provided by Defendant in discovery, and on expert analysis of that data that has not yet been performed.

Except as objected to, Plaintiff responds as follows: The monetary and other relief that Plaintiff seeks is set forth in the operable Complaint in this action. A calculation of the amount of any monetary relief depends on data in the possession of Defendant that has not yet been produced in discovery.

**INTERROGATORY NO. 13:**

DESCRIBE all monetary and other relief YOU seek to recover from DEFENDANT in this action on the certified classes' behalf, including the amount of and basis for any damages, restitution, and attorney's fees and costs, including all documents that support the calculations and amount of such recovery; and the specific injunctive or other equitable relief sought.

**Response to 13:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as premature insofar as it depends on information that has

Plaintiff's Responses to Walmart's        6        Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

not yet been provided by Defendant in discovery, and on expert analysis of that data that has not yet been performed.

Except as objected to, Plaintiff responds as follows: The monetary and other relief that Plaintiff seeks is set forth in the operable Complaint in this action. A calculation of the amount of any monetary relief depends on data in the possession of Defendant that has not yet been produced in discovery.

**INTERROGATORY NO. 14:**

Identify by name, email address, home address, and telephone number each person who has communicated with YOU or YOUR attorneys regarding the PRODUCT or any allegation contained in your COMPLAINT and DESCRIBE the substance of the COMMUNICATION.

**Response to 14:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request to the extent it asks Plaintiff to disclose communications with counsel or other privileged information. Plaintiff will not provide privileged information. Subject to these objections, Plaintiff states that she has not had any non-privileged communications regarding the Product or the allegations in the Complaint.

**INTERROGATORY NO. 15:**

IDENTIFY any individuals that YOU believe are members of the classes certified in the Court's February 27, 2025 Order granting Motion for Class Certification, including their name, email address, home address, and relationship to YOU.

**Response to 15:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Subject to these objections, Plaintiff states that the certified class includes all persons who, while in the state of California and within the applicable statute of limitations period, purchased Great Value Avocado Oil.  Plaintiff is unaware of the specific identities of such persons other than herself.

Plaintiff's Responses to Walmart's          7          Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAEB40E

**INTERROGATORY NO. 16:**

If YOU have been charged or convicted of a crime within the last ten years, DESCRIBE the charge or conviction, including but not limited to the court in which YOU were charged or convicted, the date of the charge or conviction, and the conduct giving rise to the charge or conviction.

**Response to 16:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as seeking information that is not relevant to any party's claims or defenses, including for periods of time not relevant here.

Except as objected to, Plaintiff responds as follows: Plaintiff has not been charged or convicted of a crime.

**INTERROGATORY NO. 17:**

DESCRIBE in detail all facts and evidence that supports your allegation in paragraph 97 of the COMPLAINT that "When defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations."

**Response to 17:**

Plaintiff objects that contention interrogatories which seek "all facts" are overbroad and unduly burdensome, particularly given that fact discovery is ongoing and that most of the information about Defendant's activities is in their own possession. *See Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741-RS (MEJ), 2017 U.S. Dist. LEXIS 57013 at *9 (N.D. Cal. Apr. 13, 2017); *Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416 CRB (JSC), 2012 U.S. Dist. LEXIS 133375 at *4-5 (N.D. Cal. Sep. 18, 2012); *Hernandez v. Best Buy Co.*, No. 13cv2587-JM(KSC), 2014 U.S. Dist. LEXIS 152117 at *16-17 (S.D. Cal. Oct. 24, 2014) ("Courts 'will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses.'").

Plaintiff's Responses to Walmart's            8            Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAEB40E

Case 2:24-cv-08211-RGK-MAR    Document 94-4    Filed 09/29/25    Page 11 of 14   Page ID #:2139

Except as objected to, Plaintiff responds as follows:  Plaintiff points Defendant to the sources cited by Plaintiff's counsel in the First Amended Complaint. Plaintiff incorporates any forthcoming expert reports into Plaintiff's response to this interrogatory.

**INTERROGATORY NO. 18:**

DESCRIBE in detail the circumstances under which the PRODUCT or PRODUCTS that Ceutical Labs tested—as referenced in the Declaration of Imel Courtland (ECF No. 41-1) and Declaration of Rick Lyon (ECF No. 36-3)—were provided to Ceutical Labs, including when the PRODUCTS were purchased and by whom, the store or webpage from which the PRODUCTS were purchased, every individual and entity that had possession of the PRODUCTS prior to their delivery to Ceutical Labs, when the PRODUCTS were delivered to Ceutical Labs, each instance when the PRODUCT was opened prior to its delivery to Ceutical Laboratories, Inc., every location the PRODUCT was stored after its purchase through the time it was delivered to Ceutical Labs, and all methods of transportation the PRODUCTS have traveled through from their purchase through delivery to Ceutical Labs.

**Response to 18:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request on the grounds that it seeks information protected by the attorney work-product doctrine.  Plaintiff further objects to the request on the grounds that it seeks expert discovery and the window for expert discovery has not yet commenced.

Plaintiff's Responses to Walmart's           9          Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

RA0158

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAEB40E

Dated: April 28, 2025

Respectfully submitted,

By: _/s/  Richard Lyon_

Richard Lyon (Cal Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

_Attorney for Plaintiff_

Plaintiff's Responses to Walmart's
Interrogatories, Set Two

10    Case No. 2:24-cv-08211-RGK-MAR

RA0159

Docusign Envelope ID: A42D30E2-DC56-4B3F-8E41-B613EFAEB40E

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, the foregoing document is being served by e-mail on counsel of record.

/s/ *Richard Lyon*

Richard Lyon

Plaintiff's Responses to Walmart's Interrogatories, Set Two     11     Case No. 2:24-cv-08211-RGK-MAR

RA0160

Docusign Envelope ID: A42D30E2-DC56-4B3F-8F41-B613EFAEB40E

Case 2:24-cv-08211-RGK-MAR    Document 94-4    Filed 09/29/25    Page 14 of 14   Page ID #:2142

## Verification

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct, to the best of my knowledge, as to my personal responses to these interrogatories.

Dated: __4/28/2025__                    Signature:_____

                                        Edie Golikov

Plaintiff's Responses to Walmart's          12          Case No. 2:24-cv-08211-RGK-MAR
Interrogatories, Set Two

RA0161

# EXHIBIT M

RA0162

# EXHIBIT D

*Target* (handwritten)

# Order details

#102000234915620
Placed at 11:30 PM on Oct 9, 2023



**Fix an issue**
Get help with missing or
damaged items and more



**Start a return**
Return to a store or print a free
return label



**Buy it again**
Choose items from this
purchase to buy again



**Get help**
Find relevant help content or
contact us



## Picked up
Order Pickup at Woodland Hills

**Roma Toma...**
$1.39
Qty 1

**Sandwich B...**
$1.39
Qty 1

**Chosen Foods 1...**
$13.79

GOLIKOV000001

RA0164

# Nov 14, 2021 order | Order# 5892143-705357

Print | Have an issue with your order? Get help

 Delivery
## Delivered on Nov 16

Delivery

**1 item**

 Great Value Refined Avocado Oil, 25.5 fl oz    **$8.23**

Qty 1

( Add to cart )

Review item

## More from this order

 Delivery from store
## Delivered on Nov 16

**1 item**

 Great Value Fresh Seal Double Zipper Storage Bags, Gallon, 60 Count    **$2.97**

5.0¢/ea

Qty 1

GOLIKOV000002

RA0165

# EXHIBIT N

RA0166

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>WALMART INC.,<br><br>*Defendant.* | Case No. 2:24-cv-08211-RGK-MAR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**<br><br>Date: November 3, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Complaint filed: September 24, 2024 |

Opposition to Motion for Sanctions                    Case No. 2:24-cv-08211-RGK-MAR

RA0167

## Table of Contents

I.      Introduction. ...........................................................................................1

II.     Walmart has not proved bad faith, a necessary prerequisite for sanctions. ..........2

    A.      The pleading error was a mistake, not bad faith. ......................................3

    B.      There is no evidence indicating bad faith. ................................................4

    C.      There was no reason for Plaintiff to intentionally disguise an online purchase as in-store when she could have just alleged an in-store purchase. ..................................................................................7

    D.      Plaintiff disclosed the online purchase as soon as Walmart asked about it. ........................................................................................8

III.    Walmart has not shown that the pleading error unreasonably and vexatiously multiplied proceedings. ...................................................9

    A.      Section 1927 does not apply to initial pleadings. .....................................9

    B.      If counsel had not made the oversight, the same proceedings would have occurred and Walmart would likely be worse off (not better off). ........................................................................................10

IV.     If the Court awards sanctions, they should be directed only at counsel, not Ms. Golikov. .........................................................................11

V.      Conclusion. ..........................................................................................12

Opposition to Motion for Sanctions              i          Case No. 2:24-cv-08211-RGK-MAR

RA0168

**Table of Authorities**

**Cases**

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016)......................................................................10

*Doyle v. Ill. Cent. R.R.*,
  2009 U.S. Dist. LEXIS 8917 (E.D. Cal. Jan. 29, 2009)............................11

*F.T.C. v. Alaska Land Leasing, Inc.*,
  799 F.2d 507 (9th Cir. 1986)......................................................................11

*Fitzgerald v. Mercedes Benz U.S.*,
  2021 U.S. Dist. LEXIS 171504 (C.D. Cal. Apr. 5, 2021)......................2, 4

*Hawthorne Hangar Operations, L.P. v. Hawthorne Airport*,
  2021 U.S. Dist. LEXIS 177947 (C.D. Cal. July 8, 2021) ............................4

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996).......................................................................2, 9

*Johnson v. Walmart Inc.*,
  57 F.4th 677 (9th Cir. 2023)..........................................................................7

*Primus Auto. Fin. Servs. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997)..........................................................................2

*Schwarz v. Meinberg*,
  2016 U.S. Dist. LEXIS 110247 (C.D. Cal. Aug. 10, 2016)..........................4

*Whelan v. BDR Thermea*,
  2011 U.S. Dist. LEXIS 143129 (N.D. Cal. Dec. 13, 2011) ..........................4

*Wilkins v. Barber*,
  2021 U.S. Dist. LEXIS 207802 (E.D. Cal. Oct. 27, 2021) ...........................4

*Yagman v. Republic Ins.*,
  987 F.2d 622 (9th Cir. 1993).......................................................................2, 4

*Zaldivar v. City of L.A.*,
  780 F.2d 823 (9th Cir. 1986)..........................................................................9

*Zambrano v. Tustin*,

   885 F.2d 1473 (9th Cir. 1989).......................................................................2, 4

**Statutes**

28 U.S.C. § 1927...............................................................................................9, 10

**Rules**

Fed. R. Civ. P. § 15(a)(2)......................................................................................10

## I.     Introduction.

Sanctions are an extraordinary remedy. A court cannot impose them unless it is convinced that counsel acted in bad faith. Walmart seeks over half a million dollars in sanctions for a pleading error. But that error was a mistake, not bad faith.

The pleading error was alleging that on November 14, 2021, Ms. Golikov purchased avocado oil from a Walmart store. It was true that she purchased the oil from Walmart stores (many times during the class period). But the alleged date was for an online purchase (not an in-store purchase). This error happened because a staff member inserted that particular date, and Ms. Cho—the attorney drafting and reviewing the complaint—did not double-check that the purchase on this date was an in-store purchase. It should have been checked. But that was a mistake, not bad faith.

Walmart has no evidence suggesting bad faith. And its accusations that this was a scheme to avoid arbitration do not make sense. It is undisputed that Ms. Golikov made numerous in-store purchases of avocado oil from Walmart's stores during the class period. And under controlling Ninth Circuit precedent, those in-store purchases are not subject to the arbitration provision in Walmart's online Terms of Use. So if the complaint had accurately identified in-store purchases, as intended, the case would have proceeded through the motion to dismiss and class certification all the same. In fact, Walmart would likely be worse off (not better off) because it would still be facing a certified class action.

Plus, it was Plaintiff herself who disclosed the online purchase as soon as Walmart asked about it. Why would she or her counsel intentionally try to hide the online purchase in the complaint but promptly disclose it as soon as Walmart asked? That does not make sense. And if Walmart had simply pulled Plaintiff's purchase records from the information in the complaint, Walmart itself would have discovered the mistake right away. None of this is consistent with an intentional scheme to hide the online purchase. All of this is consistent with an unintentional mistake.

Opposition to Motion for Sanctions          1          Case No. 2:24-cv-08211-RGK-MAR

RA0171

To be sure, mistakes have consequences.  Because of the mistake, the class was decertified and Plaintiff compelled to arbitration.  If the complaint had accurately identified an in-store purchase, the outcome may have been different.  But mistakes—even serious ones—do not justify severe sanctions that require a showing of bad faith.

## II.    Walmart has not proved bad faith, a necessary prerequisite for sanctions.

Sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quotation omitted).  To seek sanctions, Walmart must prove that Plaintiff and her counsel acted in bad faith in alleging that Plaintiff's purchase was in-store.  *Id.* at 436 ("[S]ection 1927 sanctions must be supported by a finding of subjective bad faith.") (quotation omitted); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) ("Courts may not invoke [inherent powers to sanction] without a specific finding of bad faith.") (quotation omitted).  This requirement of bad faith is "especially critical" because Walmart seeks "fee-shifting." *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

Bad faith is a "high threshold." *Id.* at 649.  "Attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment." *Zambrano v. Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989).  Even seriously careless mischaracterizations are insufficient to impose sanctions.  *See, e.g.*, *Yagman*, 987 F.2d at 628-29 (reversing sanctions where there was "no indication in the record before us that Yagman acted in bad faith or intended to mislead the court by his careless characterization of the petition"); *Fitzgerald v. Mercedes Benz U.S.*, 2021 U.S. Dist. LEXIS 171504, at *16 (C.D. Cal. Apr. 5, 2021) (refusing to impose sanctions even for the "serious mistake" of "issuing backdated proofs of service," where this was "likely a result of carelessness or a busy schedule").  Here, Walmart has not met the high threshold of bad faith.

#### A.     The pleading error was a mistake, not bad faith.

It is undisputed that Ms. Golikov made numerous in-store purchases of avocado oil from Walmart stores during the class period.  Dkt. 69-2 (Golikov Decl.) ¶ 2; Harper Decl., Ex. B (interrogatory responses) at 2.  Around the time Plaintiff's counsel was preparing her complaint, it was investigating and filing multiple avocado-oil class actions.  Cho Decl. ¶ 2.  Ms. Cho prepared the complaint with assistance from staff.  *Id.* ¶ 4.  A staff member filled in the November 14, 2021, date for the alleged in-store purchase.  *Id.* ¶ 4.  That particular date was incorrect: it was an online purchase, rather than an in-store purchase.  *Id.* ¶ 4; Dkt. 69-2 (Golikov Decl.) ¶ 2; Harper Decl., Ex. B (interrogatory responses) at 2.

Ms. Cho was aware that Ms. Golikov had made in-store purchases during the class period.  Cho Decl. ¶ 4.  As a result, when she reviewed the complaint, the sentence identifying an in-store purchase—with the November 14, 2021 date—did not jump out as potentially inaccurate.  *Id.* ¶ 4.  So Ms. Cho did not double-check to make sure that the purchase on this date was in-store, and thus did not catch this mistake.  *Id.* ¶ 4.  A careful review should have caught the error, but this was not bad faith.

Plaintiff filed an amended complaint three months later, to address some issues raised in Walmart's motion to dismiss.  Dkt. 31.  Mr. Lyon, who was not involved in preparing the initial complaint, oversaw preparation of the amendments.  Lyon Decl. ¶ 3.  Because none of the amendments had anything to do with the date or location of Ms. Golikov's purchase, Mr. Lyon had no reason to second-guess those allegations.  *Id.* ¶ 3.  Mr. Lyon was focused on making sure that the amendments were accurate and addressed the issues raised in the motion to dismiss, not on double-checking the allegations already in the complaint.  *Id.* ¶ 3.  So, although Mr. Lyon was diligent in ensuring that the amendments were accurate, he did not catch the mistaken allegation from the initial complaint.  *Id.* ¶ 3.

Plaintiff's counsel did not realize that the complaint contained this error until the April 24, 2025 meet-and-confer before Walmart's motion to compel arbitration, when

Walmart brought it up. *Id.* ¶ 4. Before that, though, Plaintiff truthfully stated in discovery that most of her purchases were in-store, but that she made some online purchases, including on November 14, 2021. Harper Decl., Ex. B at 2. And when Defendant moved to compel arbitration, Plaintiff relied on her in-store purchases (as was always intended) rather than the online purchase made on November 14, 2021. Dkt. 69 at 1-4.

As these facts show, the mistake in the complaint resulted from an advertent oversight—not bad faith as Walmart contends. *See, e.g.*, *Whelan v. BDR Thermea*, 2011 U.S. Dist. LEXIS 143129, at *20 (N.D. Cal. Dec. 13, 2011) (finding "no reason to disbelieve that Plaintiff's counsel made an innocent mistake" where "counsel has filed a declaration" explaining the mistake). This "inadvertence" and "mistake" is no basis for sanctions. *Zambrano*, 885 F.2d at 1480; *see, e.g.*, *Yagman*, 987 F.2d at 628-29; *Fitzgerald*, 2021 U.S. Dist. LEXIS 171504, at *16.

**B.    There is no evidence indicating bad faith.**

A motion for sanctions must be supported by actual evidence showing bad faith; conjecture is insufficient. *See, e.g.*, *Hawthorne Hangar Operations, L.P. v. Hawthorne Airport*, 2021 U.S. Dist. LEXIS 177947, at *11 (C.D. Cal. July 8, 2021) (denying motion for sanctions where "the record is devoid of evidence of subjective bad faith"); *Schwarz v. Meinberg*, 2016 U.S. Dist. LEXIS 110247, at *9 (C.D. Cal. Aug. 10, 2016) (denying motion for sanctions where the moving party had "not provided any evidence, other than mere conjecture," that affirmative defenses "were filed for an improper purpose, such as harassment, or were otherwise filed in bad faith"); *Wilkins v. Barber*, 2021 U.S. Dist. LEXIS 207802, at *3-4 (E.D. Cal. Oct. 27, 2021) (denying motion for sanctions where the moving party "submit[ted] nothing other than his conjecture and speculation that counsel [acted] in bad faith or for an improper purpose").

Here, Walmart asserts that "there is little question that Ms. Golikov and her counsel acted in bad faith," but provides no evidence proving this accusation. Mot. 11.

Opposition to Motion for Sanctions          4          Case No. 2:24-cv-08211-RGK-MAR

RA0174

Walmart points to an invoice for the online purchase printed five days before the initial complaint was filed. Mot. 12. But this does not show bad faith. And as explained above, the online purchase was identified as an in-store purchase due to a mistake (not bad faith).

Walmart asserts that Plaintiff's counsel "cannot credibly claim this is an oversight" because their firm's website says the firm has excellent, diligent attorneys. Mot. 12-13. This does not meet the high threshold required for a finding of subjective bad faith. If it did, then every lawyer at a firm with a website would be subject to sanctions for any inadvertent oversight. Lawyers can aspire to excellence and still make mistakes.

Finally, Walmart asserts that Ms. Golikov and her counsel "hid" the pleading error because "Ms. Golikov did not properly meet and confer in advance of her motion for class certification" and did not "appear[] for any noticed deposition." Mot. 13. The Court has already considered and rejected these arguments. *See* Dkt. 62 at 7-8.

As to the depositions, the Court already observed that "Defendant appears to grossly misrepresent the facts" regarding its January deposition notice. *Id.* at 7. Walmart "gave only three business days' notice of Plaintiff's deposition" and "agreed that Plaintiff was not obligated to appear, writing: 'We absolutely understand and appreciate the objections. We will work with [counsel] to try to get a more appropriate schedule.'" *Id.*

Walmart's inaccurate representations continue. To begin, Walmart asserts that Ms. Golikov's depositions were "[n]oticed" on "January 10, March 28, and May 23." Mot. 7; Harper Decl. ¶ 10.a. But those are the dates the deposition notices were served, not the dates on which the depositions were noticed. The depositions were noticed for January 15, April 17, and June 20, respectively. Lyon Decl. ¶ 5, Exs. 2, 3, and 5. As described above, Walmart conceded that Plaintiff's objections to the first notice were valid. *Id.* ¶ 5. The second time, Plaintiff offered four alternative dates for deposition, and Walmart decided not to proceed. *Id.* ¶ 5, Ex. 4 (stating that Ms.

Opposition to Motion for Sanctions          5          Case No. 2:24-cv-08211-RGK-MAR

Golikov is "available April 25, 28, 29, or 30"). And the third time, the deposition was taken off the calendar because the actual notice date—June 20—was after the Court granted Walmart's motion to compel arbitration and stayed all proceedings on June 10. *Id.* ¶ 5; Dkt. 81.

Walmart also inaccurately describes the facts surrounding the deposition notices of Mr. Lyon and two experts. *See* Mot. 7-8, 13; Harper Decl. ¶ 10.d, f. After Mr. Lyon repeatedly informed Walmart that he would move to quash his deposition if Walmart intended to proceed, Walmart informed him that it did not intend to pursue his deposition. Lyon Decl. ¶ 6, Ex. 6 (April 25, 2025, email) ("To confirm our call yesterday, my understanding is that you do not intend to pursue my deposition at this time and there is no need for me to file a motion to quash."). As for the experts, "the parties agreed to revisit [these depositions] after the class certification Order was entered," and Walmart ultimately decided not to pursue these depositions. *Id.* ¶ 6, Ex. 6. In any event, these depositions would have no bearing on the date or location of Ms. Golikov's purchase.

The Court also already rejected Walmart's contention that Ms. Golikov failed to meet and confer in advance of her class-certification motion. Dkt. 62 at 7-8. The Court observed that there was "some dispute over the exact timing and substance of the parties' discussions about the Motion," but "even if no meet and confer took place between January 7 and January 9, it does not appear that Defendant was prejudiced as a result" because "Defendant knew from the outset of the case the grounds that Plaintiff would seek class certification, as she stated them in her original Complaint. And Defendant also knew when the Motion would be filed, as it engaged with discussions with Plaintiff about continuing the class certification deadline." *Id.* at 8 (citation omitted).

Thus, Walmart's accusations that Plaintiff and her counsel hid the error are baseless. Far from hiding the error, Plaintiff and her counsel did the exact opposite: as

Opposition to Motion for Sanctions          6          Case No. 2:24-cv-08211-RGK-MAR

soon as Walmart served discovery asking about Ms. Golikov's purchase, they disclosed the online purchase date.

**C.    There was no reason for Plaintiff to intentionally disguise an online purchase as in-store when she could have just alleged an in-store purchase.**

Another fatal problem with Walmart's accusations of bad faith is that they do not make sense.  Walmart accuses Plaintiff and her counsel of trying to mislead Walmart and the Court by disguising an online purchase as an in-store purchase.  But there was no reason for Plaintiff to do that: Plaintiff and her counsel could have just relied on one of Plaintiff's many in-store purchases, which were not subject to arbitration.

Under controlling Ninth Circuit precedent, Walmart's online Terms of Use do not apply to in-store purchases, even if the consumer has also made purchases online. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-83 (9th Cir. 2023) (rejecting Walmart's attempt to invoke the online arbitration provision for separate, in-store purchases); *see* Dkt. 72 at 8-10 (not disputing this controlling principle of law in reply).  The Ninth Circuit also rejected Walmart's argument (made again in this case) that this was an issue of scope delegated to the arbitrator.  *Johnson*, 57 F.4th at 681 ("We agree with the district court that Johnson contests the existence, not the scope, of an arbitration agreement that would encompass this dispute.").  So Ms. Golikov and her counsel could have just alleged one of her many in-store purchases that was not subject to arbitration.  There was no reason to mislead the Court, and Plaintiff and her counsel did not intend to do so.

Walmart contends that Plaintiff made the allegation to "evad[e] arbitration and litigat[e] in her preferred forum," to "evade her class waiver," and to "seek[] extensive discovery, including class discovery, that is not available in individual arbitration." Mot. 15-16.  But Plaintiff could have achieved all of this simply by truthfully basing her allegations on one of her in-store purchases, which were not subject to arbitration.

Opposition to Motion for Sanctions            7        Case No. 2:24-cv-08211-RGK-MAR

RA0177

In fact, Plaintiff is worse off (and Walmart better off) due to the pleading error. The Court decertified the class because the complaint inaccurately identified only an online purchase. If the complaint had accurately identified Ms. Golikov's in-store purchases, that may not have happened.

For the same reason, Walmart's contention that Plaintiff was trying to "impos[e] significant and unnecessary costs on Walmart" makes no sense. Mot. 15. If the complaint were accurate and identified the in-store purchases, the same costs would be imposed. There was no reason for Plaintiff to lie about the online purchase to impose costs that would result from truthfully alleging the in-store purchases.

**D.    Plaintiff disclosed the online purchase as soon as Walmart asked about it.**

Another fact that confirms that Plaintiff did not intend to mislead is that, when Walmart served discovery requests, Plaintiff promptly disclosed that the November 14, 2021, purchase was online. As Walmart points out, there was clear documentation—including in Walmart's own records—showing the November 14, 2021, purchase was online. Mot. 4; *see* Dkt. 66-7 (Sahay Decl.) at ¶ 3. And when Walmart sent interrogatories, Plaintiff truthfully responded that the November 14, 2021, purchase was online. Harper Decl., Ex. B (interrogatory responses) at 2. Plaintiff and her counsel would not intentionally try to mislead the Court about a fact they knew would need to be disclosed—and was disclosed—as soon as Walmart asked about it.

Also, Walmart could have caught the issue immediately after receiving the complaint if it had done a simple search of its records. Walmart was suspicious from the beginning that Plaintiff had purchased online. In its opposition to class certification (months before receiving Plaintiff's interrogatory responses), it stated that "Golikov herself may be subject to the arbitration agreement" through online purchases. Dkt. 44 at 14. Walmart could have confirmed its suspicion simply by searching its records for Ms. Golikov's online account—as it did in connection with its motion to compel arbitration. *See* Dkt. 66-7 (Sahay Decl.) at ¶¶ 2-3. The identifying

Opposition to Motion for Sanctions          8          Case No. 2:24-cv-08211-RGK-MAR

information in Ms. Golikov's account includes both her name ("Edie Golikov") and where she lived (in "Tarzana, CA"), both of which the complaint disclosed. Dkt. 1 (Complaint) at ¶ 6; Dkt. 69-2 (Golikov Decl.) at ¶ 3. If Walmart had searched its online accounts for an "Edie Golikov" living in "Tarzana, CA," it would have found her online purchases immediately. Instead, it made no attempt to figure this out until the Court ruled against it on key motions (like class certification).

It does not make sense that Plaintiff would try to hide a fact that Walmart could promptly discover by simply searching its purchase records or serving discovery.

\* \* \*

In sum, there is no evidence or persuasive inference of bad faith. It would be an abuse of discretion to conclude that Ms. Golikov and her counsel intentionally shot themselves in the foot and exposed themselves to potential sanctions by intentionally disguising an online purchase as in-store (and then disclosing the in-store receipt as soon as it was requested), when they could have just truthfully alleged one of many in-store purchases.

## III. Walmart has not shown that the pleading error unreasonably and vexatiously multiplied proceedings.

Section 1927 applies only if the bad-faith conduct "unreasonably and vexatiously" "multiplies the proceedings." 28 U.S.C. § 1927. Walmart fails this requirement three different ways.

### A. Section 1927 does not apply to initial pleadings.

The Ninth Circuit has "expressly held that § 1927 cannot be applied to an initial pleading." *Keegan*, 78 F.3d at 435. Only "the *multiplication* of proceedings is punished, thus placing *initial* pleadings beyond [the section's] reach." *Id.* (quoting *Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986)).

Walmart's request for sanctions is based on an allegation in the initial pleading. The purported bad-faith conduct it identifies is that Plaintiff and her counsel "pleaded" that her November 14, 2021, purchase was in-store and "made the allegations and

Opposition to Motion for Sanctions        9        Case No. 2:24-cv-08211-RGK-MAR

representations with an improper purpose." Mot. 11. Under controlling Ninth Circuit precedent, section 1927 does not apply to such conduct.

Although the same allegation appeared in Plaintiff's amended complaint, none of the amendments had anything to do with that allegation. Lyon Decl. ¶ 3, Ex. 1 (redline). So the amended complaint did not "multipl[y] the proceedings" any more than the initial complaint—let alone in bad faith. 28 U.S.C. § 1927.

**B.     If counsel had not made the oversight, the same proceedings would have occurred and Walmart would likely be worse off (not better off).**

To show that the pleading error multiplied the proceedings, Walmart must show that proceedings occurred that, but for the error, would not have occurred. The proceedings that Walmart points to are (a) moving to dismiss the complaint; (b) opposing class certification; and (c) engaging in discovery. Mot. 5-8, 17.

But if Plaintiff's counsel had caught the mistake—and based the complaint on an in-store purchase as intended—then all these same proceedings would have occurred. The only difference would be that Walmart would likely have been unsuccessful in moving to compel arbitration and decertify the class, as certification would have been based on an accurately pleaded in-store purchase. So if Plaintiff's counsel had caught the mistake, Walmart would likely be worse off than it is now: it would likely be facing a full-blown certified class action, rather than an individual arbitration.

The same is true if (for some reason) Plaintiff had based her complaint upon the November 14, 2021, purchase and alleged that it was an online purchase. If Walmart had responded with a motion to compel arbitration, as it contends it would have, Plaintiff could have simply amended the complaint to rely instead on one of her many in-store purchases during the class period. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) ("When justice requires, a district court should 'freely give leave' to amend a complaint.") (quoting Fed. R. Civ. P. § 15(a)(2)).

Opposition to Motion for Sanctions          10          Case No. 2:24-cv-08211-RGK-MAR

And then the litigation would have proceeded exactly as it has, except that the class would still be certified.

Thus, Walmart cannot show that the pleading error multiplied proceedings.

**IV.    If the Court awards sanctions, they should be directed only at counsel, not Ms. Golikov.**

As explained above, it would be beyond the Court's discretion to impose sanctions on any party here, because there was no bad faith.  But it would be especially unwarranted to impose sanctions on Ms. Golikov, who is not responsible for her counsel's mistake.

Walmart does not move for sanctions against Ms. Golikov under section 1927. *See* Mot. i (moving for section 1927 sanctions only against Ms. Cho and Mr. Lyon). Nor could it, because "[s]ection 1927 does not authorize recovery from a party or an employee, but *only* from an attorney or otherwise admitted representative of a party." *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986) (quotation omitted).

As to the Court's inherent powers, it would be an abuse of discretion to use them to impose sanctions on Ms. Golikov.  When exercising inherent powers, courts are "guided by considerations applicable to sanctions under the Federal Rules of Civil Procedure." *Doyle v. Ill. Cent. R.R.*, 2009 U.S. Dist. LEXIS 8917, at *19-20 (E.D. Cal. Jan. 29, 2009).  These considerations include "[t]he nature and quality of the conduct at issue"; "[a]s between attorney and client, who is responsible for the culpable conduct"; "[w]hether there was a pattern of wrongdoing to require a stiffer sanction"; "[t]he sanctioned party's ability to pay"; "[w]hether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice"; and "[t]he existence of mitigating factors." *Id.* at *20.

Here, each of these factors weigh strongly against imposing sanctions on Ms. Golikov.  The nature of the conduct was in drafting a complaint—something handled by attorneys, not clients.  By the same token, it was counsel's responsibility to catch

Opposition to Motion for Sanctions        11        Case No. 2:24-cv-08211-RGK-MAR

inaccuracies in the complaint, not Ms. Golikov's. There was no pattern of wrongdoing (by anyone). The amount Walmart seeks (more than half a million dollars) would be unreasonable to impose on Ms. Golikov, who merely sought to recover for her purchase of avocado oil. As described above, the mistake did not actually prejudice Walmart in any way; it helped Walmart avoid a full-blown class action. And finally, there are mitigating factors in that Ms. Golikov volunteered to serve as a class representative, responded promptly and truthfully to Walmart's discovery, and trusted counsel to adequately represent her interests and litigate this case on her behalf.

Sanctions would be too harsh an outcome for anyone involved, but most of all for Ms. Golikov.

**V.    Conclusion.**

The drastic sanctions that Walmart requests require a showing of bad faith. A mistake—even a serious mistake—is not enough. Here, the evidence and circumstances all point to a mistake, not bad faith. And the actions the Court has already taken—decertifying the class and compelling Plaintiff to arbitration—are more than sufficient to discourage similar pleading mistakes.

Walmart's motion for sanctions should be denied.

Dated: October 10, 2025

Respectfully submitted,

By: /s/ Richard Lyon
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION**

The undersigned, counsel of record for Plaintiff Edie Golikov, certifies that this brief contains 3,908 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

Dated: October 10, 2025                    By: */s/ Richard Lyon*

Richard Lyon

RA0183

# EXHIBIT O

RA0184

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>    *Defendant*. | Case No. 2:24-cv-08211-RGK-MAR<br><br>**DECLARATION OF CHRISTIN CHO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART'S MOTION FOR SANCTIONS**<br><br>Date: November 3, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Complaint filed: September 24, 2024 |

Declaration of Christin Cho          Case No. 2:24-cv-08211-RGK-MAR

RA0185

## DECLARATION OF CHRISTIN CHO

I, Christin Cho, declare and state as follows:

1. I am a member in good standing of the bar of the state of California and a partner in the law firm of Dovel & Luner, LLP. I represent Plaintiff Edie Golikov in the above-referenced matter.

2. In September 2024, I was working on a number of potential avocado oil cases with my team. One of the cases I was working on was this case.

3. I was aware that the Plaintiff, Ms. Golikov, had purchased Great Value avocado oil both online and in-store at Walmart.

4. I prepared the initial complaint for this case, with assistance from my staff. A staff member filled in November 14, 2021, as the date of an in-store purchase. Because I knew that Ms. Golikov had made in-store purchases during the class period, the sentence identifying the November 14, 2021, purchase as in-store did not jump out at me as potentially inaccurate. I did not realize that the November 14 date corresponded to an online purchase, and not an in-store purchase, and did not double-check that fact. The initial complaint was therefore filed with that inadvertent error.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of October, 2025, in Santa Monica, California.

Christin Cho:

Declaration of Christin Cho          1          Case No. 2:24-cv-08211-RGK-MAR

RA0186

# EXHIBIT P

RA0187

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>WALMART INC.,<br><br>    *Defendant.* | Case No. 2:24-cv-08211-RGK-MAR<br><br>**DECLARATION OF RICK LYON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART'S MOTION FOR SANCTIONS**<br><br>Date: November 3, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Complaint filed: September 24, 2024 |

Declaration of Rick Lyon                    Case No. 2:24-cv-08211-RGK-MAR

RA0188

## <u>DECLARATION OF RICK LYON</u>

I, Rick Lyon, declare and state as follows:

1. I am a member in good standing of the bar of the state of California and a partner in the law firm of Dovel & Luner, LLP. I represent Plaintiff Edie Golikov in the above-referenced matter.

2. I first appeared in this case on September 30, 2024. Dkt. 10. Prior to my appearance, I had no involvement with this matter. I was not involved with the pre-filing investigation or the preparation of the initial Complaint, which was filed on September 24, 2024. The pre-filing investigation and initial Complaint were overseen by my partner, Christin Cho, whom I have worked with for over 15 years and whom I believe to be an excellent attorney.

3. After I joined the case, Defendant filed a motion to dismiss the Complaint on December 9, 2024. Dkt. 24. I reviewed Defendant's motion and determined that Defendant's primary argument could be addressed by amending the Complaint. In its motion, Defendant argued that the "allegations that the avocado oil was advertised as 'pure' were 'conclusory.'" *Id*. (quoting *McConnon v. The Kroger Co*., U.S. Dist. LEXIS 110016 (C.D. Cal. June 21, 2024)). I amended the Complaint to address this argument, illustrating the distinction between our case and *McConnon*. I clarified that our allegations focus on "adulteration," not the "purity," of the avocado oil. *See* Exhibit 1 (redline showing changes made in the Amended Complaint), ¶¶ 4-6, 15-21, 23-27. I also added additional detail supporting the allegations of adulteration. *Id*. None of these amendments had anything to do with the date or location of Ms. Golikov's purchase, so I had no reason to revisit, or second-guess, those allegations. Instead, I addressed the issues raised in the motion to dismiss and focused on making sure that the amendments were accurate.

4. During the course of the litigation, I was aware that Ms. Golikov had purchased Walmart's avocado oil both in person at physical Walmart stores and online at Walmart.com. And because of her in-store purchases, I did not believe arbitration

Declaration of Rick Lyon                    1            Case No. 2:24-cv-08211-RGK-MAR

RA0189

could be an issue in this case. I never had reason to go back and check the Complaint or Amended Complaint to confirm that her in-store purchases were specifically identified until the April 24, 2025, meet and confer when counsel for Walmart informed me that they intended to file a motion to compel arbitration. After we met and conferred and I reviewed the Complaint, I still believed we had a good-faith basis to oppose Defendant's motion to compel arbitration—and in fact fully expected to prevail on that motion—for the reasons set forth in our Opposition to the motion (Dkt. 69) and in our Response to Defendant's motion to decertify (Dkt. 86). Also, when I saw that the Complaint referenced a purchase from a "Walmart store," I looked into whether this could plausibly be interpreted as encompassing a purchase from Walmart.com. And I found evidence supporting this interpretation. *See* Dkt. 69 at 5, n.2 (citing CNN article referring to "Walmart's online store" and Walmart's website referring to its "Online Walmart Store"). Although the Court did not adopt our arguments and ruled against us, all of the arguments and submissions were made in good faith.

5.    Defendant argues that it "[n]oticed Ms. Golikov's deposition on three occasions," but she "never sat for deposition." Mot. 7. But the reason Ms. Golikov did not sit for a deposition is because, the first two times, Defendant confirmed it did not intend to proceed with the noticed deposition. And the third time, the deposition was noticed for a date after the Court stayed all proceedings. The Court already acknowledged that the first deposition notice (Exhibit 2) was deficient. When Walmart argued that Ms. Golikov failed to appear for this deposition (like it does again in this motion), the Court held that "Defendant appears to grossly misrepresent the facts." Dkt. 62 (Order) at 7. This is because "Plaintiff objected" to the notice on the basis that "Defendant gave only three business days' notice." *Id*. And "Defendant not only acknowledged these objections, but seemingly agreed that Plaintiff was not obligated to appear, writing: 'We absolutely understand and appreciate the objections. We will work with [counsel] to try to get a more appropriate schedule.'" *Id*. (quoting counsel

Declaration of Rick Lyon        2        Case No. 2:24-cv-08211-RGK-MAR

communications). When the parties attempted to find a more appropriate schedule, and Defendant served its second notice of deposition (Exhibit 3), Defendant changed course and elected not to proceed with Ms. Golikov's deposition. Defendant's second notice, served on March 28, noticed the deposition for April 17. *Id*. Because Ms. Golikov was unavailable on April 17, Plaintiff provided Defendant with four alternative dates. *See* Exhibit 4 (April 10 email) (Ms. Golikov is "available April 25, 28, 29, or 30"). Defendant, however, did not depose Ms. Golikov on these dates; nor did Defendant request alternative dates. When Defendant later determined that it did want to proceed with Ms. Golikov's deposition, it served a third notice on May 23, noticing the deposition for June 20. *See* Exhibit 5. But before that deposition could proceed, the Court granted Defendant's motion to compel arbitration and stayed all proceedings on June 10. Dkt. 81.

6.      Defendant's suggestion that I improperly avoided my own deposition (concerning a class certification declaration I submitted attaching laboratory testing results) is likewise not true. During meet and confers, I repeatedly informed Defendant that, if they intended to proceed with my deposition, I would move to quash. Defendant informed me they did not intend to proceed, and there was no need to file such a motion. *See, e.g.*, Exhibit 6 (April 25 email) ("To confirm our call yesterday, my understanding is that you do not intend to pursue my deposition at this time and there is no need for me to file a motion to quash."). Defendant's reference to the noticed depositions of the class certification experts, Mr. Imel and Mr. Maronick, is similarly misplaced. Because "class certification … ended up being fully briefed prior to the date[s]" noticed for these "deposition[s]" due to "extension requests" being "denied," "the parties agreed to revisit [these depositions] after the class certification Order was entered." Exhibit 4 (April 10 email). And when they did, Defendant elected not to pursue Mr. Imel's deposition further, and Plaintiff offered April 25, 2025 for Mr. Maronick's deposition. *Id*. But Defendant elected not to depose Mr. Maronick on April 25 and did not request alternative dates.

Declaration of Rick Lyon                    3            Case No. 2:24-cv-08211-RGK-MAR

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of October, 2025, in Santa Monica, California.

Rick Lyon:

Declaration of Rick Lyon                          4           Case No. 2:24-cv-08211-RGK-MAR

RA0192